1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

18

JAMON RIVIERA; CURTIS BANTA;
YONKMAN CONSTRUCTION, INC.;
PARAS HOMES, LLC; CONDRON HOMES,
LLC; GARCO CONSTRUCTION, INC.;
ARLINGTON 360, LLC; HUSEBY HOMES,
LLC; SPOKANE HOME BUILDERS
ASSOCIATION; WASHINGTON STATE
ASSOCIATION OF UA PLUMBERS,
PIPEFITTERS AND HVAC/R SERVICE
TECHNICIANS; LOCAL 32 OF UA
PLUMBERS, PIPEFITTERS AND HVAC/R
SERVICE TECHNICIANS; WASHINGTON
AND NORTHERN IDAHO DISTRICT
COUNCIL OF LABORERS; CITIZEN
ACTION DEFENSE FUND; NATIONAL
PROPANE GAS ASSOCIATION; AVISTA
CORPORATION; CASCADE NATURAL
GAS CORPORATION; and NORTHWEST
NATURAL GAS COMPANY,

19

Plaintiffs,

20

v.

21

22

23

24

25

26

27

KJELL ANDERSON, JAY ARNOLD, TODD
BEYREUTHER, JUSTIN BOURGAULT,
DAIMON DOYLE, TOM HANDY,
ANGELA HAUPT, ROGER HEERINGA,
MATTHEW HEPNER, CRAIG HOLT, TYE
MENSER, BENJAMIN OMURA, PETER
RIEKE, KATY SHEEHAN, in their official
capacities as Washington State Building Code
Council Members; and BOB FERGUSON, in
his official capacity as Attorney General of
Washington,

Defendants.

Case No. _____

**COMPLAINT FOR
DECLARATORY AND
INJUNCTIVE RELIEF**

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 1

**INTRODUCTION**

1.      In this action, Plaintiffs Jamon Riviera; Curtis Banta, Yonkman Construction; Inc.; Paras Homes, LLC; Condron Homes, LLC; Garco Construction, Inc; Arlington 360, LLC; Huseby Homes, LLC; Spokane Home Builders Association ("SHBA"), Citizen Action Defense Fund, National Propane Gas Association; Washington State Association of UA Plumbers, Pipefitters and HVAC/R Service Technicians; Local 32 of UA Plumbers, Pipefitters and HVAC/R Service Technicians; Washington and Northern Idaho District Council of Laborers (the "Homeowners, Builders, Suppliers, and Unions"); Avista Corporation; Cascade Natural Gas Corporation; and Northwest Natural Gas Company (the "Utilities"); collectively, the "Coalition"; seek declaratory and injunctive relief under federal law against the Washington State Building Code Councilmembers' adoption of the Washington State Energy Code because it violates the federal Energy Policy and Conservation Act ("EPCA").

2.      The Energy Code violates EPCA by impermissibly regulating the energy use and energy efficiency of EPCA-covered appliances, which is exactly what EPCA preempts.

3.      By regulating EPCA-covered appliances, the Energy Code interferes with consumer and commercial energy choice; jeopardizes jobs; impairs commerce; burdens the appliance manufacturing industry; and increases building and energy costs for Washington residents and businesses.

4.      The Energy Code has already harmed the residents and businesses within the Coalition, as homeowners and builders must now forgo EPCA-covered appliances in light of the Energy Code.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as the Coalition asserts claims under federal law. Jurisdiction is also proper because, under 42 U.S.C. § 6306(c), federal district courts have express jurisdiction over suits brought by any adversely affected person concerning state compliance with EPCA.

6.      This Court has authority to grant declaratory and injunctive relief pursuant to ;

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 2

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

28 U.S.C. §§ 2201 and 2202  and Rules 57 and 65 of the Federal Rules of Civil Procedure.

7.     This Court has personal jurisdiction over all individually named Defendants who are members of the Washington State Building Code Council ("Council"), as they are each domiciled in Washington, and the claims asserted arise out of Defendants' actions as members of the Council, all of which occurred within the state of Washington.

8.     This Court has personal jurisdiction over Washington Attorney General Bob Ferguson, as he is domiciled in Washington, and the claims asserted arise out of his duty to enforce the Energy Code, which occurs within the state of Washington.

9.     Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because, among other things, (i) the actions violating federal law stated in this Complaint impose injury in this District, where certain Coalition members reside, do business, and have a substantial number of customers and would-be customers (individuals, businesses, and others who would be customers if not for the Energy Code), and (ii) the regulatory provisions at issue will be enforced here.

10.    Venue in this Court is also proper under 28 U.S.C. § 1391(b)(1) because all Defendants are sued in their capacities as Washington officials and are therefore residents for the purposes of venue where they perform their duties, which is in Washington, and certain Defendants perform their duties in this District and are therefore residents of this District.

## **PARTIES**

11.    Plaintiff Jamon Riviera is homeowner in and domiciliary of Yakima, Washington. He uses an electric appliance for space heating. His electric heating costs are high, and he would use natural gas for heating if it were available in his neighborhood. The Energy Code makes expansion of gas infrastructure to his neighborhood less likely and effectively deprives him of the ability to choose EPCA-covered appliances for use in his home.

12.    Plaintiff Curtis Banta is a domiciliary of Oak Harbor, Washington. He uses natural gas appliances for space heating and water heating in his family's home. Mr. Banta prefers natural gas appliances to electrical appliances for this purpose. He will be harmed by an increase in the cost of natural gas.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 3

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

13.     Plaintiff Yonkman Construction, Inc. is a Washington corporation based in Oak Harbor, Washington that regularly builds and renovates homes. Its customers often request EPCA-covered natural gas appliances in their homes.

14.     Plaintiff Paras Homes, LLC is a limited liability company based in Spokane, Washington that regularly builds new homes. The increased costs of complying with the Energy Codes damages Paras Homes because it must either choose to reduce its profit margins to keep homes affordable, or choose to pass costs along to homebuyers, thereby increasing the costs of homes and decreasing the volume of sales Paras Homes can make. Paras Homes plans to submit building plans to City of Spokane Valley in connection with construction on approximately 40 lots that a Paras Homes affiliate owns in the City of Spokane Valley. Paras Homes would like to build these homes to include EPCA-covered natural gas water heating and space heating appliances. The Energy Code will impede Paras Homes from building the homes with natural gas appliances, making the homes less attractive to homebuyers than are homes featuring natural gas, which were permitted under prior regulations.

15.     Plaintiff Condron Homes, LLC is a limited liability company based in Spokane, Washington that regularly builds new homes. The increased costs of complying with the Energy Code damages Condron Homes because it must either choose to reduce its profit margins to keep homes affordable, or choose to pass costs along to homebuyers, thereby increasing the costs of homes and decreasing the volume of sales Condron Homes can make.

16.     Plaintiff Garco Construction, Inc. ("Garco") is a Washington corporation based in Spokane. Garco regularly builds commercial buildings and other structures throughout Washington. The increased costs of complying with the Energy Code damages Garco because for certain projects, the revised Energy Code adds risk to the projects due to material procurement delays associated with supply chain shortages of upsized electrical equipment, all of which increase cost and time and ultimately erode profit margins. Garco could choose to increase its price to cover the added risk and pass costs along to buyers and owners, thereby increasing the costs of building to the point that they are possibly unaffordable, thus risking decreasing the volume of its

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 4

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

business.

17.     Plaintiff Arlington 360, LLC is a Washington limited liability company that plans to develop a subdivision within the limits of the City of Arlington. Arlington 360 would like to build homes with natural gas space heating and water heating appliances in the subdivision. The Energy Code will impede Arlington 360 from building the homes with natural gas appliances, making the homes less attractive to homebuyers than are homes featuring natural gas, which were permitted under prior regulations.

18.     Plaintiff Huseby Homes, LLC is a Washington limited liability company based in Woodinville that regularly builds new homes. The increased costs of complying with the Energy Codes damages Huseby Homes because it must either choose to reduce its profit margins to keep homes affordable, or choose to pass costs along to homebuyers, thereby increasing the costs of homes and decreasing the volume of sales Huseby Homes can make.

19.     Plaintiff Spokane Home Builders Association ("SHBA") is a non-profit member organization that since 1947 has been committed to protecting and promoting the housing industry in eastern Washington. SHBA seeks to strengthen eastern Washington communities by advocating for affordable, quality housing. Its approximately 750 members include professional home builders, architects, remodelers, suppliers, and manufacturers operating in eastern Washington.

20.     SHBA's services to the community and its members include developing eastern Washington's workforce by collaborating with schools and industry leaders to offer construction-based curriculum and hands-on training programs for students and adults seeking to learn a trade. SHBA also presents education to its members, including first aid classes and professional development classes. And SHBA presents the annual Fall Festival of Homes to educate the community about homebuilding and renovation and to encourage its members to connect with the community and with each other.

21.     The Energy Code is of immense importance to SHBA's members. SHBA has therefore diverted resources, including the time of its staff, from SHBA's other activities to advocating for repeal of the Energy Code and to educating SHBA members about the Energy

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Code. For example, SHBA coordinated educational events for its members and devoted time and money to providing venues for these events and to informing members about the events. This diversion of resources is caused by the Council, whose adoption of the Energy Code mandates that it be enforced.

22.     The Energy Code increases the costs of constructing homes. This damages SHBA's members because they must either choose to reduce their profit margins to keep homes affordable, or to pass costs along to homebuyers, thereby increasing the costs of homes and decreasing the pool of homebuyers whose demand for homes supports the livelihoods of SHBA's members.

23.     Certain of SHBA's members operate in City of Spokane Valley and regularly submit building plans for approval to the City of Spokane Valley Permit Center. These members will be harmed by the Council's adoption of the Energy Code.

24.     Certain of SHBA's members operate in Asotin County and regularly submit building plans for approval to the Asotin County Building and Planning Department. These members will be harmed by the Council's adoption of the Energy Code.

25.     The Washington State Association of UA Plumbers, Pipefitters and HVAC/R Service Technicians is a labor union, consisting of six Washington membership organizations in both eastern and western Washington. Its locals in both eastern and western Washington represent skilled workers in plumbing, pipefitting, and HVAC trades. Certain of these members who install gas piping and  will have less work opportunities because of the Energy Code.

26.     Local 32 of UA Plumbers, Pipefitters and HVAC/R Service Technicians is a labor union. Among its members are several hundred skilled workers who install gas lines. Certain Local 32 members install pipes in buildings under construction and will see the demand for their work decline because of the Energy Code. Other Local 32 members install natural gas distribution lines, either for a natural gas utility or for contractors that specialize in laying gas piping in new developments. The Energy Code will deprive these union members of work. The Energy Code will therefore not only harm Local 32's members. It will also require Local 32 to divert resources from its usual activities to providing these workers with training to pursue new opportunities

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

within their trade.

27.     The Washington and Northern Idaho District Council of Laborers ("Laborers") is a labor union representing more than 13,000 workers in Washington and northern Idaho. Roughly one quarter of its members work in jobs related to natural gas, including laying main lines, laying distribution pipes, and hooking up gas lines to new buildings. The Laborers' members do jobs such as hand shoveling, driving equipment, and controlling traffic around pipeline projects. The Energy Code will reduce the demand for members' work and cause the Laborers' members to lose jobs. The Energy Code will therefore require the Laborers to divert resources from other activities to provide members training in new jobs.

28.     Plaintiff Citizen Action Defense Fund is a Washington non-profit corporation based in Olympia. It works to protect the economic rights of Washington citizens.

29.     Plaintiff National Propane Gas Association ("NPGA") is a national trade organization representing the U.S. propane industry and approximately 2,400 members, including local Washington companies and co-ops. It has state and regional affiliates across all 50 states. The Energy Code will reduce the number of new buildings built with propane appliances and reduce the business of NPGA's members.

30.     Plaintiff Avista Corporation is a public utility that provides electricity to 402,000 customers and natural gas to 368,000 customers across four northwestern states, including Washington.

31.     Plaintiff Cascade Natural Gas Corporation is a public utility that provides natural gas to over 300,000 customers located in smaller, mostly rural communities across Washington and Oregon.

32.     Plaintiff Northwest Natural Gas Company is a public utility that provides natural gas distribution services to more than 770,000 customers across the Pacific Northwest, including Washington.

33.     The Energy Code has caused harm to the Utilities through the loss of new customers over time, and it will harm the Utilities' existing customers by increasing over time the cost of gas

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1    service per customer.

2        34.    Kjell Anderson, Jay Arnold, Todd Beyreuther, Justin Bourgault, Daimon Doyle,

3    Tom Handy, Angela Haupt, Roger Heeringa, Matthew Hepner, Craig Holt, Tye Menser, Benjamin

4    Omura, Peter Rieke, and Katy Sheehan (collectively, "Council Defendants") are members of the

5    Washington State Building Code Council, the Washington state agency that establishes building

6    code requirements that must be enforced throughout the state and that adopted the Energy Code at

7    issue. Council Defendants are sued in their official capacities.

8        35.    Bob Ferguson is the Attorney General of Washington and is responsible for the

9    Energy Code's enforcement. He is sued in his official capacity.

10                                   **RIPENESS**

11        36.    The claims asserted herein are ripe for review because Plaintiffs challenge the

12   Energy Code's facial validity, thereby raising a legal question. When a question is "predominantly

13   legal," there is generally no need to await further factual development. *Pac. Gas & Elec. Co. v.*

14   *State Energy Res. Conservation and Dev. Comm'n*, 461 U.S. 190, 201 (1983).

15        37.    The Energy Code at issue became effective March 15, 2024.

16                              **FACTUAL ALLEGATIONS**

17   **The Council's Previous Attempt to Prohibit EPCA-Covered Gas Appliances**

18        38.    The Energy Code is the Council's second attempt to at regulating EPCA-covered

19   gas appliances in contravention to Congress' express ban on doing so.

20        39.    In 2022, the Council adopted amendments to the Washington State Energy Code

21   designed to prohibit or substantially limit the use of EPCA-covered gas appliances in many

22   instances.

23        40.    These amendments came in two stages. On April 22, 2022, the Council adopted

24   amendments to the Commercial Provisions of the Energy Code ("Commercial Provisions")

25   restricting the use of EPCA-covered gas appliances in commercial buildings. The amendments as

26   originally adopted had an effective date of July 1, 2023. WSR 22-14-091.

27        41.    On November 11, 2022, Defendants adopted amendments to the Residential

COMPLAINT FOR DECLARATORY AND                        LANE POWELL PC
INJUNCTIVE RELIEF - 8                            1420 FIFTH AVENUE, SUITE 4200
                                                        P.O. BOX 91302
                                                 SEATTLE, WASHINGTON 98111-9402
                                                206.223.7000 FAX: 206.223.7107

Provisions of the Energy Code ("Residential Provisions") restricting the use of EPCA-covered gas appliances in residential buildings. These amendments as originally adopted also had an effective date of July 1, 2023. WSR 23-02-060.

42.     The Commercial Provisions established a "prescriptive compliance" pathway and a "total building performance compliance" pathway. In general, the prescriptive compliance pathway required that each element of a building have a minimum acceptable standard, whereas the performance pathway required modeling the building as a whole to predict energy usage and determine compliance with target figures for site energy use and carbon emissions. Buildings had to comply with one of the two pathways. WSR 22-14-091, Section C401.2.

43.     The Commercial Provisions' prescriptive and total building performance compliance pathways generally banned the use of EPCA-covered gas appliances for heating, ventilation, and air conditioning ("HVAC") systems and water heating systems. WSR 22-14-091, Section C403.1.4 ("HVAC heating energy shall not be provided by . . . fossil fuel combustion appliances."); Section C404.2.1 ("Service hot water shall be provided by an electric air-source heat pump water heating (HPWH) system . . . ."); Table C407.2 (incorporating Section C403.1.4 and Section C404.2.1 into the total building performance pathway's mandatory requirements).

44.     The Residential Provisions also provided a prescriptive compliance pathway and a total building performance compliance pathway. Buildings had to comply with one of the two pathways. WSR 22-17-149, Section R401.2.

45.     The Residential Provisions' prescriptive and total building performance compliance pathways generally banned the use of EPCA-covered gas appliances by requiring that water heating shall be provided by an electric or gas heat pump system. WSR 23-02-060, Section R403.5.7 ("Service hot water in one- and two-family dwellings and multiple single-family dwellings (townhouses) shall be provided by a heat pump system."); Table R405.2(1) (incorporating Section R403.5.7 into the total building performance pathway's mandatory requirements). These provisions banned EPCA-covered gas-fired water heating systems that are not heat pumps, such as conventional tanked gas water heaters, high efficiency condensing tanked

water heaters, and tankless/instant water heaters.

46.     The Residential Provisions' prescriptive compliance pathway likewise generally banned the use of EPCA-covered gas appliances by requiring that space heating shall be provided by an electric or gas heat pump system. WSR 23-02-060, Section R403.13 ("Space heating shall be provided by a heat pump system."). This banned gas-fired space heating systems that are not heat pumps, such as EPCA-covered gas-fired furnaces.

47.     The Washington State Energy Code imposed the above restrictions on EPCA-covered gas appliances in newly constructed buildings; the restrictions also applied to the alterations of or additions to existing buildings. The effective date of the above restrictions was originally going to be July 1, 2023. *See* WSR 22-14-09, WSR 23-02-060.

48.     Although the Council has since repealed the above amendments, they evidence that the Council has an intent to prohibit or substantially restrict EPCA-covered gas appliances—an intent which EPCA plainly preempts.

**Energy Code Amendments After Binding Ninth Circuit *Berkeley* Decision**

49.     On April 17, 2023, the United States Court of Appeals for the Ninth Circuit issued its opinion in *California Restaurant Association v. City of Berkeley*. 65 F.4th 1045 (9th Cir. 2023). The case involved a challenge by a restaurant association to the City of Berkeley's promulgation of an ordinance prohibiting the installation of natural gas piping within all newly constructed buildings. The Ninth Circuit held that EPCA preempts the City of Berkeley's ordinance, which effectively prohibited the use of EPCA-covered gas appliances piping in such buildings. 65 F.4th at 1056. In denying the City of Berkeley's petition for *en banc* review, the Ninth Circuit amended its opinion for clarity, stating, "By its plain text and structure, EPCA's preemption provision also encompasses building codes concerning the energy use of covered products. And thus EPCA preempts Berkeley's building code because it prohibits natural gas piping in new construction buildings from the point of delivery at the gas meter. We thus conclude that EPCA preempts Berkeley's building code's effect against covered products." 89 F.4th 1094, 1098–99 (9th Cir. 2024).

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

50. On May 22, 2023, a lawsuit was filed against the Council and its council members for adopting the 2022 amendments to the Energy Code, alleging that such amendments violated EPCA. *See* Complaint, *Rivera v. Wash. State Bldg. Code Council*, Case No. 1:23-cv-03070 (E.D. Wash.).

51. On June 7, 2023, the Council delayed the effective date of the rules adopted under the Commercial Provisions and Residential Provisions "to evaluate what, if any, changes are necessary to maintain compliance with [EPCA] given the recent 9th circuit court of appeals ruling on the Berkeley, California ordinance." *See* WSR 23-12-101, WSR 23-12-102.

52. On November 28, 2023, the Council voted at a special meeting to amend the Energy Code's Commercial Provisions and Residential Provisions, and established an effective date of March 15, 2024. *See* WSR 24-03-084, WSR 24-03-085 ("2023 Amendments").

53. By enacting the 2023 Amendments, the Council Defendants directed their enforcement by local officials.

54. Despite the Council's attempts to evade EPCA preemption, the amended Energy Code still violates EPCA, as it imposes regulations concerning the energy use and energy efficiency of EPCA-covered appliances that far exceed federal requirements and does not qualify for an exemption from preemption.

**The Washington Energy Code Harms Coalition Members**

55. Coalition members are suffering and will suffer a variety of harms as a result of the Council's adoption of the Energy Code.

56. Homeowners, businesses, and residential and commercial builders will be prohibited from choosing certain EPCA-covered gas appliances due to the Energy Code, and as a result, these groups will be more likely to forego gas service altogether, thus also harming suppliers and service providers.

57. The Energy Code is already causing harm to homeowners, builders, and suppliers who are being forced to make costly changes to their building and infrastructure plans to account for the Energy Code's restrictions concerning EPCA-covered appliances. Such plans can take

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

anywhere from months to years to finalize, meaning that homeowners and builders must often spend substantial resources planning ahead to meet the requirements of building code provisions.

58.     The Energy Code unnecessarily increases the costs of homes and commercial buildings, as well as ownership and maintenance, by eliminating or restricting effective and available energy appliances for heating water and ambient air.

59.     The Energy Code will also impair skilled workers specializing in the installation, maintenance, and repair of gas-powered systems and appliances by depriving them of jobs and their livelihood. Labor organizations representing these workers will lose members.

60.     The Energy Code has caused the Utilities harm through the permanent loss of new customers over time.

61.     Additionally, the Energy Code harms Utilities' existing and future customers by increasing over time the cost of gas service per customer. Absent the Utilities' ability to grow, they will need to maintain the current gas system to ensure safety, reliability, and resiliency based on revenue from their currently existing customers. Costs to maintain the current gas system will be borne by fewer customers, as many customers will not be permitted to replace their heating equipment with EPCA-covered gas appliances in existing construction or to install EPCA-covered gas appliances in new construction.

**The History of Federal Regulation of Appliance Energy Use**

62.     The Energy Code impermissibly regulates the energy use and energy efficiency of gas appliances, which is an area that Congress directed the U.S. Department of Energy ("DOE") to regulate through the adoption of federal energy efficiency standards under EPCA. 42 U.S.C. § 6201 *et seq.*

63.     EPCA was first passed in 1975 to create a comprehensive energy policy to address the serious economic and national security problems associated with our nation's continued reliance on foreign energy resources.

64.     The original EPCA was designed to "(1) maximize domestic production of energy and provide for strategic storage reserves of crude oil, residual fuel oil and refined petroleum

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 12

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

products; (2) . . . minimize the impact of disruptions in energy supplies by providing for emergency standing measures; (3) provide for domestic crude oil prices that will encourage domestic production in a manner consistent with economic recovery; and (4) reduce domestic energy consumption through the operation of specific voluntary and mandatory energy conservation programs." S. Rep. No. 94-516, at 116-17 (1975).

65.     Since 1975, Congress has amended EPCA several times, progressively moving away from a laissez faire approach to appliance efficiency, and towards binding federal energy efficiency standards. Each amendment to EPCA further emphasized the federal government's intent to regulate appliance energy use and efficiency, and further limited states' abilities to set their own standards.

66.     In its original form in 1975, EPCA's provisions regarding consumer appliances focused on requiring labeling of appliances, reasoning that consumers would choose more efficient appliances if they had access to accurate information about efficiency. Thus, the statute required manufacturers to label their appliances and provided that the Secretary of the Federal Energy Administration should utilize energy efficiency standards if the labeling program proved ineffective. The legislative history makes clear Congress's intent at the time: "it is the Committee's hope that voluntary efforts by manufacturers and better consumer information will make energy efficiency standards unnecessary; however, should the labeling program not suffice, energy efficiency standards should be utilized to achieve the goals of the legislation." H.R. Rep. No. 94-340, at 95 (1975).

67.     Originally, EPCA permitted significant state involvement in appliance regulation. It allowed state regulations that differed from the federal regulations if the state regulations were justified by a substantial state or local need, did not interfere with interstate commerce, and were more stringent than the federal standard.

68.     In 1978, Congress passed a range of statutes known as the National Energy Act ("NEA"), which gave the federal government broader authority over energy policy to ensure national security, decrease energy consumption, reduce dependency on energy imports, generate

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 13

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

a strategic petroleum reserve, and broadly develop reliable sources of energy for sustained economic growth. *See* Julia Richardson and Robert Nordhaus, The National Energy Act of 1978, 10 Nat. Res. & Env't 62, 62-63 (1995). President Carter also created the federal DOE in 1977 to coordinate a federal response to the nation's energy problems.

69. One of these 1978 statutes passed as part of NEA was the National Energy Conservation and Policy Act ("NECPA"). NECPA amended the 1975 EPCA. Rather than relying exclusively on labeling, NECPA required DOE to prescribe minimum energy efficiency standards for certain products. NECPA also strengthened the preemption provisions in EPCA, allowing state regulations that were more stringent than federal regulations *only* if the Secretary found there was a significant state or local interest to justify the state's regulation and the regulation would not unduly burden interstate commerce.

70. Despite the NECPA's new requirements, DOE did not initially adopt federal minimum energy standards. Instead, it "initiated a general policy of granting petitions from States requesting waivers from preemption. As a result, a system of separate State appliance standards ha[d] begun to emerge and the trend [was] growing." S. Rep. No. 100-6, at 4 (1987).

71. In 1987, Congress responded by passing the National Appliance Energy Conservation Act ("NAECA"). The purpose of the NAECA amendment was "to reduce the regulatory and economic burdens on the appliance manufacturing industry through the establishment of national energy conservation standards for major residential appliances." S. Rep. No. 100-6, at 1 (1987).

72. As the Senate recognized, varying state standards created "the problem of a growing patchwork of differing state regulations which would increasingly complicate [appliance manufacturers'] design, production and marketing plans." S. Rep. No. 100-6, at 4 (1987). Similarly, the reports about NAECA in the House of Representatives make clear Congress wanted to "end an era of confusion and uncertainty" for the industry and "protect the appliance industry from having to comply with a patchwork of numerous conflicting State requirements." H.R. Rep. No. 100-11, at 24, 30 (1987).

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 14

73.    Thus, NAECA contained "two basic provisions:" "[t]he establishment of Federal standards and the preemption of State standards." S. Rep. No. 100-6, at 2 (1987). "In general, these national standards would preempt all State standards." *Id.*

74.    After NAECA, federal law provided two routes for a state or local jurisdiction to qualify for an exception to EPCA preemption. First, as mentioned above, DOE can grant a waiver of preemption; but while states can seek permission to establish their own standards, "achieving the waiver is difficult." S. Rep. No. 100-6, at 2 (1987). It would require showing an unusual and compelling local interest, and the waiver cannot be granted if the "State regulation is likely to result in the unavailability in the State of a product type or of products of a particular performance class, such as frost-free refrigerators." *Id.*

75.    The second option to avoid preemption concerns consumer appliances, and it applies only to performance-based building codes for new construction. 42 U.S.C. §6297(f). To qualify for this exception, the state code must meet a strict seven-part test, enumerated in 42 U.S.C. § 6297(f)(3). This exception does not apply to renovations. The House Report regarding NAECA explains that this exception was intended to "prevent[] state building codes form being used as a means of setting mandatory State appliance standards in excess of Federal Standards." H.R. Rep. 100-11, at 26. In addition, the flexibility under this exception was "limited" to "ensure that performance-based codes cannot expressly or effectively require the installation of covered products whose efficiencies exceed . . . the applicable Federal standard . . . ." *Id.* Congress intended to allow only "performance-based codes" that "authorize builders to adjust or trade off the efficiencies of the various building components so long as an energy objective is met." S. Rep. No. 100-6, at 10–11. To avoid preemption, among other requirements, a state building code provision must "establish 'credits' for various conservation measures, to provide, to the greatest degree possible, one-for-one equivalency between the energy efficiency of these differing measures and the credits provided for such energy efficiency." *Id.* at 11. The Senate chose this requirement "to assure that the credits for exceeding Federal standards are even-handed and are not unfairly weighted resulting in undue pressure on builders to install covered products exceeding

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1    Federal standards." *Id.*

2        76.    In 1992, Congress amended EPCA once more through the Energy Policy Act of

3    1992. That amendment expanded the federal appliance program to include energy efficiency

4    standards for industrial appliances as well as consumer appliances. Likewise, a pathway was added

5    for a state building code regulation for new construction concerning industrial appliances to be

6    exempt from preemption: the regulation must "not require that the energy efficiency of such

7    product exceed the applicable minimum energy efficiency requirement in amended ASHRAE/IES

8    Standard 90.1." 42 U.S.C. § 6316(b)(2)(B)(i).

9        77.    Thus, in its present form, EPCA covers both consumer and industrial appliances,

10   and it sets federal standards for the energy use and efficiency of those products.

11   **EPCA's Regulation of Consumer and Industrial Appliances**

12       78.    Rather than allowing joint regulation by states and the federal government,

13   Congress has adopted a framework for EPCA in which the federal government sets nationwide

14   standards for the national markets for appliances, with only a very limited role for states. In fact,

15   EPCA expressly preempts state regulation of appliance energy use and efficiency, with only

16   narrow exceptions. The statute sets out specific requirements that must be met to qualify for one

17   of these narrow exceptions. In other words, Congress meant to preempt the entire field of energy

18   use and energy efficiency of covered appliances, leaving DOE to set nationwide standards and

19   establishing detailed conditions that state regulations must meet to avoid preemption.

20       79.    EPCA's energy use and efficiency regulations apply to "covered products." EPCA

21   defines "covered products" for consumers as the types of products listed in Section 6292 of the

22   Act. 42 U.S.C. § 6291(2). Section 6292 in turn lists 19 types of defined covered products, including

23   "water heaters" and "furnaces." *Id.* § 6292(a). Section 6295 sets out the energy conservation

24   standards for these covered products.

25       80.    EPCA defines a "consumer product" as one "(A) which in operation consumes, or

26   is designed to consume, energy . . . and (B) which, to any significant extent, is distributed in

27   commerce for personal use or consumption by individuals[.]" *Id.* § 6291(1). The definition of a

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

consumer product is "without regard to whether such article of such type is in fact distributed in commerce for personal use or consumption by an individual . . . ." *Id.* In other words, products which are regularly sold to individuals may be classified as consumer products, regardless of whether a particular *unit* of the product has been purchased by an individual or by a business.

81.     In general, absent the Energy Code, consumer products can be used in residential or commercial buildings.

82.     The express preemption in EPCA's consumer product regulations states that "effective on the effective date of an energy conservation standard established in or prescribed . . . for any covered product, no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product unless the regulation" falls within certain enumerated exceptions. *Id.* § 6297I.

83.     "Energy use" is defined as "the quantity of energy directly consumed by a consumer product at point of use . . . ." *Id.* § 6291(4). "Energy" is defined as "electricity, or fossil fuels." *Id.* § 6291(3).

84.     Thus, EPCA's consumer standards preempt state regulations concerning the quantity of electricity or fossil fuels consumed by appliances (including water heaters and furnaces) which are regularly sold to individuals.

85.     Similarly, EPCA also governs the energy efficiency and energy use of certain industrial appliances. *Id.* § 6311-17.

86.     In general, absent the Energy Code, industrial appliances can be used in residential or commercial buildings.

87.     Like EPCA's consumer standards, the industrial standards explicitly "supersede any State or local regulation concerning the energy efficiency or energy use of a product for which a standard is prescribed or established" in the federal statute. *Id.* § 6316(b)(2)(A).

88.     "Energy use," for the purposes of the industrial standards, is defined as "the quantity of energy directly consumed by an article of industrial equipment at the point of use. . . ." *Id.* § 6311(4). The definition of "energy" refers back to the definition in the consumer standards

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

in Section 6291: energy is "electricity, or fossil fuels." *Id.* §§ 6311(7), 6291(3).

89.     EPCA also prescribes standards for various types of "industrial equipment," including "commercial package air conditioning and heating equipment," "warm air furnaces," and several types of water heaters. *Id.* § 6311(2)(B). Those products are "industrial" rather than "consumer" if they are "distributed in commerce for industrial or commercial use" to "any significant extent," and do not qualify as consumer products under that portion of the statute. *Id.* § 6311(2)(A).

90.     Thus, EPCA's standards for consumer products and industrial equipment preempt state and local regulations concerning the energy use or energy efficiency of heating equipment, water heaters, and furnaces which are regularly sold for residential, industrial, or commercial use.

**EPCA Preempts the Energy Code**

91.     EPCA preempts the Energy Code, because the Energy Code concerns the energy use and energy efficiency of EPCA-covered gas space and water heating appliances which are regularly sold for residential, commercial, or industrial use.

92.     The intent of both the Residential Provisions and Commercial Provisions states: "This code shall regulate the design and construction of buildings for the effective use and conservation of energy over the useful life of each building." WAC 51-11R-10100, Section R101.3; WAC 51-11C-10100, Section C101.3. However, the Energy Code regulates not only the building structure itself, but also the energy use and energy efficiency of EPCA-covered gas appliances within buildings.

93.     The Homeowners, Builders, Suppliers, and Unions include individuals, companies, and workers that purchase, install, and maintain qualified consumer and/or industrial appliances under EPCA, or provide supply services for these products. The Utilities supply gas to appliances that qualify as consumer and/or industrial appliances under EPCA. By imposing conditions on the use of these EPCA-covered products that exceed or conflict with EPCA's requirements, the Energy Code harms the Coalition members, and Washington residents and businesses.

94.     On information and belief, Washington has not applied for a waiver from EPCA

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 18

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

preemption from the U.S. Secretary of Energy, as would be required for an exemption under 42 U.S.C. § 6297(d). Even if Washington did make such an application, it could not lawfully obtain such a waiver. EPCA prohibits the Secretary from granting a waiver where, as is the case here, "the State regulation is likely to result in the unavailability in the State of any covered product type (or class) of performance characteristics (including reliability), features, sizes, capacities, and volumes that are substantially the same as those generally available in the State at the time of the" waiver. 42 U.S.C. § 6297(d)(4).

**The Energy Code Does Not Qualify for EPCA's Preemption Exemption for Consumer Appliances**

95.     For consumer appliances, a state or local regulation is not preempted if it "is in a building code for new construction" and meets seven specific requirements. 42 U.S.C. § 6297(c)(3), (f)(3). The regulation must meet *all seven* of these requirements to avoid preemption. *Id.*

96.     At the outset, the EPCA provisions providing the possibility of an exemption from preemption for consumer appliances only apply to codes governing new construction. For the provisions of the Energy Code that impose requirements concerning the energy use or energy efficiency of EPCA-covered appliances in existing buildings, EPCA provides no exemption from preemption, and the Energy Code is thus preempted. *See, e.g.,* WAC 51-11C-50300, Section C503.4.6 ("Where a mechanical heating appliance is added or replaced, the added or replaced appliance shall comply with Section C401.3, Section C403.1.4, or with an alternate compliance option in Table C503.4.6."); WAC 51-11C-50300, Section C503.5 ("All new service water heating systems, equipment, and components of existing systems that are altered or replaced shall comply with Section C407 or Sections C404, C408.3, C409.5, and C501.6. Additions or alterations shall not be made to an existing service water heating system that will cause the existing system to become out of compliance."); WAC 51-11R-50200, Section R502.2 ("Any nonconditioned or low-energy space that is altered to become *conditioned* space shall be required to be brought into full compliance with this code.").

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 19

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

97.     Additionally, the Energy Code does not meet all seven requirements listed in Section 6297(f)(3), and thereby fails to avoid preemption. The following provides examples of how the Code fails to meet EPCA's requirements for a state regulation to be exempt from preemption, but these examples are not necessarily comprehensive, as it is the state's burden to prove the Code meets such requirements.

98.     **EPCA Section 6297(f)(3)(D)** requires that baseline building designs be "based on the efficiency level for such covered product which meets but does not exceed" EPCA's energy efficiency standards. 42 U.S.C. § 6297(f)(3)(D).

99.     WAC 51-11R-40551, Table R405.4.2(1) plainly violates EPCA Section 6297(f)(3)(D). Table R405.4.2(1) specifies the standard reference designs under the Energy Code's total building performance pathway for residential buildings. For a residential building's heating system, the table specifies an air source heat pump as the standard reference design. For a residential building's service water heating system, the table specifies a heat pump water heating system as the standard reference design. These baseline building designs exceed the efficiency levels of EPCA-covered products such as gas-fired furnaces or water heaters.

100.     Likewise, WAC 51-11C-80500, Table D602.11 also plainly violates EPCA Section 6297(f)(3)(D). Table D602.11 specifies the standard reference design under the Energy Code's total building performance pathway for commercial buildings. For a commercial building's HVAC system, the table specifies a heat pump as the standard reference design. This baseline building design exceeds the efficiency level of EPCA-covered products such as gas-fired furnaces.

101.     **EPCA Section 6297(f)(3)(C)** requires that the "energy consumption or conservation objective allowed by the code for installing covered products having energy efficiencies exceeding such" EPCA consumer product energy efficiency conservation standards be based "on a one-for-one equivalent energy use or equivalent cost basis." 42 U.S.C. § 6297(f)(3)(C).

102.     WAC 51-11R-40610, Section R406.2 plainly violates EPCA Section 6297(f)(3)(C). Section R406.2 establishes an Energy Equalization Credits table that assigns an

increased number of credits to heat pump and electric resistance appliances over EPCA-covered gas appliances meeting minimum federal efficiency standards. Section 406.2 states that the credits are based on "the equivalent carbon emissions of the options specified," rather than on equivalent energy use or equivalent cost. This fails to base the "energy consumption or conservation objective allowed by the code for installing covered products having energy efficiencies exceeding such" EPCA consumer product energy efficiency conservation standards "on a one-for-one equivalent energy use or equivalent cost basis." *See* 42 U.S.C. § 6297(f)(3)(C).

103.    **EPCA Section 6297(f)(3)(B)** requires that the state code at issue must "not require that the covered product have an energy efficiency exceeding" federal efficiency standards, absent a state waiver. *Id.* § 6297(f)(3)(B). The Energy Code does not meet this requirement, because it prohibits in many instances the use of EPCA-covered gas appliances that meet federal energy efficiency standards.

104.    For example, WAC 51-11C-40314, Section C403.1.4 prohibits the use of EPCA-covered gas appliances for space heating, stating, "HVAC heating energy shall not be provided by electric resistance or fossil fuel combustion appliances." This plainly violates EPCA Section 6297(f)(3)(B). Additionally, WAC 51-11C-40314, Section C403.1.4 is a prescriptive compliance pathway rather than a performance-based pathway, meaning it is not eligible for the exemption to preemption under 42 U.S.C. § 6297(f)(3) in any event, as the exemption only applies to performance-based pathways.

105.    Similarly, WAC 51-11C-40402, Section C404.2.1 prohibits the use of EPCA-covered gas appliances for service water heating, stating, "Service hot water shall be provided by an electric air-source heat pump water heating (HPWH) system meeting the requirements of this section." This likewise violates EPCA Section 6297(f)(3)(B). Additionally, WAC 51-11C-40402, Section C404.2.1 is a prescriptive compliance pathway rather than a performance-based pathway, meaning it is not eligible for the exemption to preemption under 42 U.S.C. § 6297(f)(3) in any event, as the exemption only applies to performance-based pathways.

106.    Furthermore, WAC 51-11C-40402, Section C404.2.1.1 mandates that "[t]he

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

primary heat pump service water heating system shall be sized to deliver no less than 50 percent of the calculated demand for service hot water production during the peak demand period." This prevents EPCA-covered gas appliances from meeting 100 percent of the calculated demand for service hot water production during the peak demand period, which violates EPCA Section 6297(f)(3)(B). Additionally, WAC 51-11C-40402, Section C404.2.1.1 is a prescriptive compliance pathway rather than a performance-based pathway, meaning it is not eligible for the exemption to preemption under 42 U.S.C. § 6297(f)(3) in any event, as the exemption only applies to performance-based pathways.

107. Likewise, WAC 51-11C-40100, Sections C401.3 through C401.3.6 outlines the self-titled "fossil fuel compliance path" under the Energy Code's Commercial Provisions. Even though this pathway proclaims to allow gas appliances, its allocation of energy credits to many EPCA-covered gas appliances is so disparate as to violate EPCA Section 6297(f)(3)(B) because if products at the federal efficiency standard are used, a building owner must make other modifications to the home to increase its energy efficiency. *See Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*, 683 F.3d 1144, 1152 (9th Cir. 2012) (observing that a court granted a preliminary injunction based on EPCA against a building code that *"imposed costs, as a matter of law, on builders who installed certain covered products meeting federal standards, by requiring the builder to install additional products that would compensate for not using a higher efficiency product"*).

108. Lastly, **EPCA Section 6297(f)(3)(A)** requires the code to permit "a builder to meet an energy consumption or conservation objective for a building by selecting items whose combined energy efficiencies meet the objective." 42 U.S.C. § 6297 (f)(3)(A). Relatedly, **EPCA Section 6297(f)(3)(F)** requires that this objective be "specified in terms of an estimated total consumption of energy (which may be calculated from energy loss- or gain-based codes) utilizing an equivalent amount of energy (which may be specified in units of energy or its equivalent cost)." *Id.* § 6297(f)(3)(F). And **EPCA Section 6297(f)(3)(G)** requires the "estimated energy use of any covered product permitted or required in the code, or used in calculating the objective, is

determined using the applicable test procedures prescribed under section 6293 of [EPCA], except that the State may permit the estimated energy use calculation to be adjusted to reflect the conditions of the areas where the code is being applied if such adjustment is based on the use of the applicable test procedures prescribed under section 6293 of [EPCA] or other technically accurate documented procedure." *Id.* § 6297(f)(3)(G).

109. The "fossil fuel compliance path" fails to meet EPCA Sections 6297(f)(3)(A), (F), and (G), including but not limited to because the pathway does not specify an energy consumption or conservation objective, nor does it use specified test procedures to estimate the energy use of covered products used in calculating that objective.

**The Energy Code Does Not Qualify for EPCA's Preemption Exemption for Industrial Appliances**

110. Similar to the consumer product standards, EPCA contains only limited exceptions to the default rule of preemption of state regulations concerning the energy use or efficiency of industrial appliances. 42 U.S.C. § 6316(b)(2)(B). To avoid preemption, a state building code regulation for new construction must "not require that the energy efficiency of such product exceed the applicable minimum energy efficiency requirement in amended ASHRAE/IES Standard 90.1" *Id.* § 6316(b)(2)(B)(i).

111. Like the EPCA preemption exemption for consumer appliances, the preemption exemption for industrial appliances only applies to codes governing new construction. To the extent that the Energy Code attempts to impose requirements concerning the energy use or energy efficiency of EPCA-covered appliances that apply to appliance replacements or alterations of existing buildings, EPCA provides no exemption from preemption, and the Energy Code is thus preempted. *See, e.g.,* WAC 51-11C-50300, Section C503.4.6; WAC 51-11C-50300, Section C503.5.

112. The Energy Code does not meet the requirement for an exemption to preemption under 42 U.S.C. § 6316(b)(2)(B), because in many instances the Energy Code bans EPCA-covered industrial appliances, even when they meet the efficiency standards in ASHRAE/IES Standard

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 23

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

90.1. *See, e.g.,* WAC 51-11C-40314, Section C.403.1.4 (banning EPCA-covered gas appliances for space heating); WAC 51-11C-40402, Section C404.2.1 (banning EPCA-covered gas appliances for primary water heating); WAC 51-11C-40100, Sections C401.3 through C401.3.6 ("fossil fuel compliance path").

**The Preempted Provisions of the Energy Code Are Not Severable**

113.    "To determine whether an invalid portion or aspect of a regulation is severable," Washington courts "ask (1) whether the authorized and unauthorized portions of the regulation are so intertwined that the agency would not have believably promulgated one without the other and (2) whether the invalid portion is so intimately connected with the purpose of the regulation as to make the severed regulation useless to advance the purpose of the statute under which it is promulgated." *Ass'n of Wash. Bus. v. Wash. State Dep't of Ecology*, 455 P.3d 1126, 1135 (Wash. 2020).

114.    Here, the challenged Energy Code provisions are fundamental to the Energy Code as a whole. As such, the preempted provisions of the Energy Code are so intertwined with other provisions of the Code such that the Council would not have believably promulgated the preempted provisions without the other provisions, and the preempted provisions are so intimately connected with the purpose of the Energy Code as to make severed regulation useless to advance the purpose of the statute under which it was promulgated.

## CAUSE OF ACTION

**COUNT ONE: FEDERAL PREEMPTION BY THE ENERGY POLICY AND CONSERVATION ACT**

115.    Plaintiffs re-allege the preceding paragraphs as though set forth fully herein.

116.    The Energy Code concerns the energy use and energy efficiency of appliances in buildings, including consumer and industrial appliances covered by EPCA.

117.    On information and belief, Washington has not applied for a waiver from the U.S. Secretary of Energy to be exempt from EPCA preemption.

118.    The Energy Code requirements for new construction do not fully meet EPCA's

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 24

requirements to be exempt from preemption.

119.    The Energy Code requirements for existing construction are not eligible for an exemption for preemption.

120.    The Energy Code is therefore preempted by the federal EPCA.

121.    There is no set of circumstances under which the Energy Code would be valid.

122.    Therefore, by adopting the Energy Code, thereby directed that it be enforced, the Defendants are committing ongoing violations of federal law.

123.    The preempted Energy Code provisions are not severable under Washington law from the rest of the Energy Code.

124.    Plaintiffs accordingly request that the Court declare that the Energy Code is preempted by EPCA and enjoin Defendants from enforcing the amended Energy Code in its entirety.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief as follows:

1.    For a declaratory judgment, pursuant to 28 U.S.C. § 2201(a) and § 1331, that the Energy Code is preempted by federal law because it concerns the energy use and energy efficiency of appliances covered by EPCA and is therefore void and unenforceable;

2.    For a permanent injunction enjoining the effectiveness of the Energy Code and prohibiting Defendants from maintaining the Energy Code or substantially similar preempted provisions as part of the Washington State Energy Code;

3.    For costs of this suit, including reasonable attorney's fees; and

4.    For such other and further relief as the Court may deem just and proper.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1   DATED: May 15, 2024

2                                        LANE POWELL PC

3                                        By:    s/ Callie A. Castillo
4                                               Callie A. Castillo, WSBA No. 38214

5                                        By:    s/ Devon J. McCurdy
6                                               Devon J. McCurdy, WSBA No. 52663
                                                1420 Fifth Avenue, Suite 4200
7                                               P.O. Box 91302
                                                Seattle, Washington 98111-9402
8                                               Telephone:  206.223.7000
                                                castilloc@lanepowell.com
9                                               mccurdyd@lanepowell.com
                                         *Counsel for the Homeowners, Builders, and Suppliers,*
10                                       *and Unions*

11                                       RANDALL DANSKIN, P.S.

12                                       By:    s/ Brook L. Cunningham
13                                              Brook L. Cunningham, WSBA No. 39270
                                                601 W. First Avenue, Suite 800
14                                              Spokane, WA 99201
                                                Telephone: 509.747.2052
15                                              blc@randalldanskin.com

16                                       BAKER BOTTS L.L.P.
17                                              Megan H. Berge (DC Bar No. 98371) (*pro hac*
                                                *vice pending*)
18                                              Scott Novak (DC Bar No. 1736274) (*pro hac*
                                                *vice pending*)
19                                              700 K Street NW
20                                              Washington, D.C. 20001
                                                Telephone:  202.639.1308
21                                              megan.berge@bakerbotts.com
                                                scott.novak@bakerbotts.com
22                                       *Counsel for the Utilities*

23

24

25

26

27

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF - 26