The Honorable Kymberly K. Evanson

1
2
3
4
5
6

7

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

8

9 | JAMON RIVIERA, et al.,

NO. 2:24-cv-00677-KKE

10 |               Plaintiffs,

DEFENDANTS' MOTION TO DISMISS

11 |      v.

NOTE ON MOTION CALENDAR:
August 30, 2024

12 | KJELL ANDERSON, et al.,

13 |               Defendants.

14                  **I.      INTRODUCTION**

15          This case was not properly brought in federal court and should be dismissed under

16  Federal Rule of Civil Procedure 12(b)(1). It is axiomatic that the Eleventh Amendment prevents

17  private parties from suing a State, including its agencies, in federal court absent waiver or

18  consent. And a case against State officials does not belong in federal court when those officials

19  have no role in enforcing the challenged law. Here, however, Plaintiffs—individuals, businesses,

20  trade associations, and utility companies interested in utilizing natural gas in new residential and

21  commercial construction—filed suit against each individual member of the Washington State

22  Building Code Council (Council), and Washington Attorney General Bob Ferguson, in their

23  official capacities. Plaintiffs argue that the Energy Codes, which encourage (but do not require)

24  the use of heat pumps in new construction, are preempted by the Energy Policy and Conservation

25  Act and Defendants should be enjoined from enforcing them.

26          But Defendants do not enforce the challenged Codes and Plaintiffs' federal lawsuit is

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

barred by the Eleventh Amendment. The Council members and the Attorney General lack authority to enforce the Codes, which means Plaintiffs cannot avail themselves of the narrow exception to the State's Eleventh Amendment immunity under *Ex parte Young*. Instead, Washington law grants enforcement authority over the Codes to local officials, whereas the Council is the body that writes and passes those Codes. A plaintiff who disagrees with a criminal law cannot sue each individual state legislator; criminal laws are enforced by county officials. So too here. Nor does the Attorney General enforce building codes. Although the Attorney General is the chief law enforcement officer of the State, the building codes are one of many areas where the authority to enforce is reserved solely for cities and counties, over which the State has no supervisory or directive power.

This case should also be dismissed for the separate, but related, reason that Plaintiffs lack standing under Article III. Plaintiffs have not alleged actual or imminent injury from the challenged rules; instead, their alleged injuries are speculative and rely more on market trends than any action by the Council or the Attorney General. Moreover, to the extent Plaintiffs allege a likelihood of future injury related to enforcement of the codes themselves, those injuries are not fairly traceable to the Council members' role in enacting the Codes or the Attorney General's general law enforcement authority. Nor would the injunctive or declaratory relief sought here likely redress Plaintiffs' alleged harm; any order by this Court would not be binding on the local officials who actually implement the Codes. Thus, in addition to the Eleventh Amendment immunity bar, Plaintiffs lack standing to bring their claims in federal court. Accordingly, the Court should dismiss this case for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1).

## II.     BACKGROUND

### A.     The State Building Code Council Establishes Minimum Building Code Requirements to Promote the Health, Safety, and Welfare of Washingtonians, and those Requirements are Enforced by Local Officials

As Washington's Legislature has found, "energy efficiency is the cheapest, quickest, and

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

cleanest way to meet rising energy needs, confront climate change, and boost our economy." RCW 19.27A.130. To meet those goals and to ensure the health, safety, and welfare of its residents, Washington, like most other states, has adopted a statewide building code. Washington's code is promulgated by the State Building Code Council, a quasi-legislative agency with members representing a broad range of stakeholder interests. *See* RCW 19.27.031, .070, .074, .020; WAC 51-04-010. The Council establishes the minimum statewide building, residential, mechanical, fire, plumbing, and energy code requirements; relevant here are the Energy Codes. The Council has no enforcement authority; it cannot approve or deny building code applications, nor does it enforce the Codes. Declaration of Dustin Curb in Support of Defendants' Motion to Dismiss at p. 1 ¶ 3 (Curb Decl.).

The Council regularly amends the state building code including the Energy Codes, to accommodate technological advances and to address novel problems. This process begins when the International Code Council (ICC) releases new editions of model codes, and ends with the formal adoption of the state building code as amended by the Council. *See generally* WAC § 51-04-020 (rules for consideration of proposed statewide amendments); Curb Decl. at pp. 2–3 ¶¶ 4–10. This process occurs in a three-year cycle, in line with the release of the ICC model codes. RCW 19.27.074(1)(a), (c). When a new model code is released, anyone with an interest may petition the Council to amend the state building code. WAC § 51-04-020(3), § 51-04-025.

Following its consideration of public petitions for amendments to the rules, the full SBCC votes on which code amendments will move forward. WAC § 51-04-020(3). Any proposals approved by a majority vote are filed with the State Code Reviser and published in the Washington State Register as proposed rules in accordance with the Washington Administrative Procedures Act. WAC § 51-04-020(3)(d); RCW 19.27.074(5)(a). The Council then conducts at least two public hearings for the proposals. *Id.* Following public hearings, the Council may further amend the code in response to public feedback, or may adopt the codes as they are. *See generally* RCW 34.05; WAC § 51-04-020(6)–(7).

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1        Once the Council has voted on and approved codes, Washington law provides that local

2  building code officials in cities, counties, and other local governments are responsible for

3  approving building permit applications and enforcing the Codes. RCW 19.27.050;

4  RCW 35.22.280(24) (listing as a duty of first-class cities regulation of the manner in which

5  buildings are constructed and maintained). Local code officials are granted broad discretion in

6  how they enforce Codes. *See, e.g.*, WAC § 51-11R-10200, R102.1 (noting that Energy Codes

7  "are not intended to prevent" use of any material or prohibit any design or method of construction

8  not specifically prescribed, and that the code official shall have authority to approve alternative

9  material, designs, or methods of construction upon written application if the official is satisfied

10  that the proposed plan "complies with the intent of the code" and the alternative is "not less than

11  equivalent" of that prescribed by the code); WAC § 51-11R-11000, R110.1 (noting that an

12  applicant may appeal decisions made by the code official to a local appeals board "relative to

13  the application and *interpretation*" of the Energy Codes) (emphasis added). Local governments

14  may also adopt and amend the statewide codes (subject to the Council's approval) into their own

15  laws to impose more strict requirements within their jurisdictions. RCW 19.27.040. Thus, local

16  code officials may interpret and enforce the Codes based on their judgment and experience. *See,*

17  *e.g.*, Seattle, Wash., Com. Energy Mun. Code § C102.2 (2018), https://www.seattle.gov/docum

18  ents/Departments/SDCI/Codes/SeattleEnergyCode/2018SECCommercialChapter1.pdf    ("The

19  code official may modify the requirements of this code for individual cases provided" the code

20  official finds there are "practical difficulties" in complying with the Codes, the modification

21  conforms with the "intent and purpose" of the Codes, the modification will provide reasonable

22  level of fire protection and structural integrity, and the modification "maintains or improves the

23  energy efficiency of the building"); Bellingham, Wash., Mun. Constr. Admin. Code § 104.1

24  (2024), https://bellingham.municipal.codes/BMC/17.10.020 ("The Building Official shall have

25  the authority to render interpretations of this code and to adopt policies and procedures in order

26  to clarify the application of its provisions.").

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia. WA 98504-0111
(360) 709-6470

**B.** **The Council Adopts and Amends Rules to Meet the Washington Legislature's Mandate to Improve the Energy Efficiency of New Construction**

The Washington Legislature has set a goal of building zero fossil-fuel greenhouse gas emission homes and buildings by 2031, *see* RCW 19.27A.020(2)(a), and has required the Council to adopt Energy Codes that serve the Legislature's energy consumption goals, *see* RCW 19.27A.160(2). To meet these goals, in late 2022 and early 2023, the Council amended the Energy Codes to generally require, albeit with multiple exceptions, the installation of heat pump heating, ventilation, and air condition (HVAC) appliances and heat pump water heaters in new commercial and residential buildings, effective July 1, 2023. 22-14 Wash. Reg. 091 (July 1, 2022) §§ 403.1.4, 404.2.1; 23-02 Wash. Reg. 060 (Jan. 3, 2023) §§ 403.5.7, 403.13.

The U.S. Court of Appeals for the Ninth Circuit then issued its ruling in *California Restaurant Association v. City of Berkeley*, 65 F.4th 1045 (9th Cir. 2023), *amended on rehearing at* 89 F.4th 1094 (9th Cir. 2024), holding that the Energy Policy and Conservation Act (EPCA) preempted a California city ordinance that generally prohibited installation of natural gas piping in newly constructed buildings. EPCA establishes energy efficiency standards for certain products, and requires the U.S. Department of Energy to review and update the standards for those products periodically. 42 U.S.C. §§ 6292, 6295. In *City of Berkeley*, the Ninth Circuit determined that EPCA's express preemption provision is not limited to state and local rules that directly regulate the energy efficiency or usage of EPCA-covered products, but rather extends to rules indirectly affecting the energy usage of such products. *Id.* at 1048, 1050–56. In striking down the ordinance, the Court noted the narrowness of its ruling:

> "We only hold that EPCA prevents Berkeley from prohibiting new-building owners from 'extending' fuel gas piping within their buildings 'from the point of delivery at the gas meter' by way of a building code . . . . Our holding is very narrow—it doesn't touch on whether the City has any obligation to maintain or expand the availability of a utility's delivery of gas to meters."

*Id.* at 1106.

Following the Ninth Circuit's ruling, the Council decided to delay implementation of its

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1  Energy Code amendments "to evaluate what, if any changes may be necessary . . . to maintain

2  compliance with [EPCA] given the recent Ninth Circuit Court of Appeals ruling[.]" *See* 23-12

3  Wash. Reg. (June 7, 2023) §§ 101, 102, 103, 104, 106, 107, 109, 110; Curb Decl. at p. 3, 4 ¶¶

4  11, 15. The Council then engaged in rulemaking, a process that included receiving significant

5  public comment, to amend the Energy Code in light of the Ninth Circuit's decision. Curb Decl.

6  at pp. 3–4 ¶¶ 12–14; *see* 23-12 Wash. Reg. (May 30, 2023) §§ 041, 042 (preproposal statement

7  of inquiry); 24-03 Wash. Reg. (Jan. 16, 2024) § 085 (commercial energy code amendments);

8  24-03 Wash. Reg. (Jan. 16, 2024) § 084 (residential energy code amendments).

9      The amended Codes went into effect on March 15, 2024, and are currently being enforced

10  by local code officials. Curb Decl. at p. 4 ¶ 16. The Codes encourage, but do not require, heat

11  pump space and water heaters in new residential and commercial construction. The Codes

12  provide multiple performance pathways for using natural gas appliances in new construction that

13  still comply with the Codes. *See* WAC § 51-11R-40621; WAC § 51-11C-40620.

14  **C.    Plaintiffs' Lawsuit**

15      Plaintiffs filed their lawsuit on May 15, 2024, two months after the Energy Codes went

16  into effect, against the individual Council members in their official capacities and against

17  Attorney General Ferguson in his official capacity.[1] Plaintiffs argue that the Energy Codes are

18  preempted by EPCA and that they do not fit into the statutory exemption from preemption.

19  Dkt # 1 at pp. 24–25 ¶¶ 116–122. They seek a declaratory judgment that the Energy Codes are

20

21

22      [1] This lawsuit is only the latest attempt to halt the Energy Codes. A coalition—including some of the Plaintiffs here—previously filed suit in Washington state court, asserting claims under the Washington

23  Administrative Procedures Act, the Regulatory Fairness Act, and the Open Public Meetings Act. *Northwest Regional Council of the Nat'l Construction Alliance v. Washington State Building Code Council*, Case No.

24  23-3-00615-35 (Wash. Supr. Ct.). That case is currently pending, on only the Open Public Meetings Act claim. And as Plaintiffs note in their Complaint, Plaintiffs previously sued the SBCC and its members alleging similar EPCA

25  preemption arguments against the earlier iterations of the Codes in the Eastern District of Washington. *Rivera v. Washington State Building Code Council*, No. 1:23-cv-03070-SAB (E.D. Wash.); Dkt. # 1 ¶ 50. The court there

26  denied a motion for preliminary injunction, *id.* Dkt. # 73, and Plaintiffs voluntarily dismissed their case, *id.* Dkt. # 75.

DEFENDANTS' MOTION TO DISMISS                                    6                    ATTORNEY GENERAL OF WASHINGTON
NO. 2:24-cv-00677-KKE                                                                      Complex Litigation Division
                                                                                           7141 Cleanwater Dr SW
                                                                                           P.O. Box 40111
                                                                                           Olympia, WA 98504-0111
                                                                                           (360) 709-6470

1  preempted and a permanent injunction enjoining the Energy Codes and prohibiting Defendants

2  from maintaining the Codes "or substantially similar preempted provisions" as part of the Codes.

### III.    LEGAL STANDARD

4        Under Fed. R. Civ. P. 12(b)(1), a complaint must be dismissed if its allegations "are

5  insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373

6  F.3d 1035, 1039 (9th Cir. 2004). Federal courts presume that they lack jurisdiction "unless 'the

7  contrary appears affirmatively from the record.'" *Bender v. Williamsport Area Sch. Dist.*, 475

8  U.S. 534, 546 (1986). Thus, the plaintiff bears the burden to establish the court's jurisdiction.

9  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *Stormans, Inc.*

10 *v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009). Eleventh Amendment immunity is

11 "'quasi-jurisdictional[,]'" and may be raised under Rule 12(b)(1). *Pistor v. Garcia*, 791 F.3d

12 1104, 1111 (9th Cir. 2015). Dismissal with prejudice is required when the claims are barred by

13 state sovereign immunity pursuant to the Eleventh Amendment, and the issue of Eleventh

14 Amendment immunity must be resolved before reaching the merits of the case. *Doe v. Regents*

15 *of the Univ. of Cal.*, 891 F.3d 1147, 1153–54 (9th Cir. 2018).

16       A Rule 12(b)(1) motion may challenge the existence of subject matter jurisdiction in two

17 ways. First, a "facial attack" asserts that the allegations contained in a complaint are insufficient

18 on their face to invoke federal jurisdiction. *Safe Air*, 373 F.3d at 1039. In analyzing a facial

19 attack, the court confines its analysis to the allegations in the complaint, documents attached to

20 or referenced in the complaint, and judicially noticeable facts, taking all allegations of fact as

21 true and construing them in the light most favorable to the plaintiff. *Doe v. Holy See*, 557 F.3d

22 1066, 1073 (9th Cir. 2009) (per curiam). Second, a "factual attack" disputes "the truth of the

23 allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d

24 at 1039. In a factual attack, "the district court may review evidence beyond the complaint without

25 converting the motion to dismiss into a motion for summary judgment[,]" and it "need not

26 presume the truthfulness of the plaintiff's allegations." *Id.* If the jurisdictional issue is separable

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1  from the case's merits, the court may consider the evidence presented and resolve factual

2  disputes when necessary for the jurisdictional analysis. *AAMC v. United States*, 217 F.3d 770,

3  778 (9th Cir. 2000).

4      This motion alleges a factual challenge to jurisdiction because it challenges the truth of

5  certain allegations in the Complaint. *Safe Air*, 373 F.3d at 1039. In particular, the Complaint

6  alleges the individual members of the Council "directed" the enforcement of the Energy Codes

7  by local officials. Dkt. # 1 at pp. 11, 25 ¶¶ 53, 122. It also alleges that Attorney General Ferguson

8  "is responsible for the Energy Code's enforcement." *Id.* ¶ 35. Neither of these allegations are

9  true. Accordingly, the Court may consider evidence beyond the Complaint, including the

10  Declaration of Dustin Curb in Support of Defendants' Motion to Dismiss, and need not presume

11  the truthfulness of Plaintiffs' allegations. *See Safe Air*, 373 F.3d at 1039.

12  ## IV.     ARGUMENT

13      The Court should dismiss this case for two distinct but related reasons. First, this case is

14  barred by the Eleventh Amendment because, in suing the individual Council members and the

15  Attorney General, Plaintiffs have failed to name State officials that have authority to enforce the

16  Codes. Thus, this case is in reality brought against the State and is barred by the Eleventh

17  Amendment. Second, Plaintiffs cannot satisfy the requirements of Article III standing. Plaintiffs'

18  alleged injuries are speculative and cannot be traced to any actions taken by Defendants.

19  Moreover, the relief they seek will not redress their alleged harm—namely, the enforcement of

20  the Codes by local officials. An order enjoining or declaring the Codes unlawful would not

21  redress Plaintiffs' alleged harm, because that harm is caused by the action of independent third

22  parties not before this Court who would not be bound by such orders.

23      Accordingly, this Court lacks jurisdiction and should dismiss this case.

24  ### A.     The Eleventh Amendment Bars Plaintiffs' Suit

25      Plaintiffs' case must be dismissed because the Eleventh Amendment bars suits against

26  the Council—as an agency of the State—in federal court, and none of the defendants have

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1   enforcement authority such that the *Ex Parte Young* exception would apply.

2   It is well established that "an unconsenting State is immune from suits brought in federal

3   courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp.*

4   *v. Halderman*, 465 U.S. 89, 100 (1984) (quoting *Employees of Dep't of Pub. Health & Welfare,*

5   *Missouri v. Dep't of Pub. Health & Welfare, Missouri*, 411 U.S. 279, 280 (1973)). Thus, "[i]t is

6   clear, of course, that in the absence of consent a suit in which the State or one of its agencies or

7   departments is named as the defendant is proscribed by the Eleventh Amendment." *Id.* In fact,

8   "federal [court] jurisdiction over suits against unconsenting States 'was not contemplated by the

9   Constitution when establishing the judicial power of the United States.'" *Id.* at 98 (quoting *Hans*

10  *v. Louisiana*, 134 U.S. 1, 15 (1890)). Washington State has not waived its sovereign immunity

11  from suit in federal court. *See Rains v. State*, 674 P.2d 165, 170 (1983) ("[T]he State cannot be

12  sued in federal court because of the Eleventh Amendment."); *Micomonaco v. State of Wash.*, 45

13  F.3d 316, 320 n.2 (9th Cir. 1995).[2]

14  This immunity extends to suits against a State's agencies for all types of relief. *Krainski*

15  *v. Nevada ex rel. Bd. of Regents of Nevada System of Higher Educ.*, 616 F.3d 963, 976 (9th Cir.

16  2010); *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999) (holding that the Eleventh

17  Amendment bars suits against a state's agency, and an action against an agency official in their

18  official capacity is a suit against the state itself). As discussed below, the Council is an agency

19  of the State for purposes of the Eleventh Amendment and therefore may not be sued in federal

20  court.

21  Plaintiffs' decision to sue each individual Council member in their official capacity and

22  the Attorney General in his official capacity does not alter this analysis. The Eleventh

23  _____

24  [2] The mere fact that Plaintiffs here have alleged a federal question—preemption—does not change the
    Eleventh Amendment analysis. There is no presumption that state courts cannot competently resolve federal

25  questions. Such a presumption would "run counter to [the] basic principles of federalism." *Coeur d'Alene Tribe of
    Idaho*, 521 U.S. at 275 ("It would be error coupled with irony were we to bypass the Eleventh Amendment, which

26  enacts a scheme solicitous of the States, on the sole rationale that state courts are inadequate to enforce and interpret
    federal rights in every case.").

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1   Amendment bars a suit against state officials where "the state is the real, substantial party in

2   interest." *Pennhurst*, 465 U.S. at 101. "The general rule is that relief sought nominally against

3   an officer is in fact against the sovereign if the decree would operate against the latter." *Id.* at

4   101; *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997) ("The real

5   interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of

6   captions and pleading."). Thus, this suit is barred by the Eleventh Amendment unless an

7   exception applies. No such exception applies here because Defendants do not have enforcement

8   power over the Codes and therefore do not fall within the *Ex parte Young* exception to Eleventh

9   Amendment immunity. Thus, the Court should dismiss.

### 1.    The State Building Code Council is a state agency and may not be sued in federal court

12   The Council is squarely a state agency for purposes of the Eleventh Amendment. To

13   determine whether an agency is protected by Eleventh Amendment immunity, courts consider

14   three factors: "'(1) the state's intent as to the status of the entity, including the functions

15   performed by the entity; (2) the state's control over the entity; and (3) the entity's overall effects

16   on the state treasury.'" *Kohn v. State Bar of California.*, 87 F.4th 1021, 1030 (9th Cir. 2023)

17   (quoting *Puerto Rico Ports Auth. v. Federal Maritime Comm'n*, 531 F.3d 868, 873 (D.C. Cir.

18   2008) (cleaned up)).

19   All three factors show that the Council is protected by the Eleventh Amendment. First,

20   state law expressly characterizes the Council as a State governmental instrumentality. *See Kohn*,

21   87 F.4th at 1030. The Council performs central governmental functions in adopting and

22   maintaining statewide building codes. RCW 19.27.074(1)(a)–(c), (4). Further, the Council is a

23   quasi-legislative body housed within the Washington Department of Enterprise Services (DES),

24   a State executive branch agency (*see* RCW 19.27.070; 43.19.005(1)). The Council is not

25   authorized to take property in its own name; even employment of staff and provision of

26   administrative and information technology services is the responsibility of DES rather than the

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE                                           10                    ATTORNEY GENERAL OF WASHINGTON
                                                                                              Complex Litigation Division
                                                                                                7141 Cleanwater Dr SW
                                                                                                    P.O. Box 40111
                                                                                                Olympia. WA 98504-0111
                                                                                                    (360) 709-6470

1  Council itself. RCW 19.27.074(3)(a), (c).

2       Second, the State exercises control over the Council's operations. *See Kohn*, 87 F.4th at

3  1030. The members of the Council are appointed by the Governor, based upon criteria set forth

4  by the State Legislature in statute. RCW 19.27.070(1). Members may be removed if they no

5  longer represent the constituencies they were appointed to represent, RCW 19.27.070(4)(c)–(e),

6  or as otherwise provided by state law. The Council's powers are limited to those specified by

7  the State Legislature in statute, and those powers are limited to those necessary to promulgate

8  the statewide building code. *See* RCW 19.27.074. And in promulgating the codes, the Council

9  is required to act "consistent with the state's interest" as provided in State law setting out specific

10 "purposes, objectives, and standards" for the Codes. RCW 19.27.074(1)(a); RCW 19.27.020.

11      Finally, although not dispositive, a money judgement against the Council would be

12 satisfied out of state funds. *See Kohn*, 87 F.4th at 1030. Its budget is appropriated by the State

13 legislature (*see* RCW 19.27.085(1)), and the State is responsible for satisfying money judgments

14 against it (*see* RCW 4.92). Accordingly, the Eleventh Amendment bars suits against the SBCC.

          **2.**    ***Ex parte Young* does not allow suit against the Council members**

16      *Ex parte Young,* 209 U.S. 123 (1908), provides a narrow exception to Eleventh

17 Amendment immunity for "prospective declaratory or injunctive relief against state officers

18 [sued] in their official capacities for their alleged violations of federal law." *Coal. to Defend*

19 *Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). However, an action under *Ex*

20 *parte Young* is only permissible if the named official has "some connection with the enforcement

21 of the act[.]" *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998). A generalized duty to enforce

22 state law or general supervisory power over those responsible for enforcing the provision is

23 insufficient; the connection must be "fairly direct." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697,

24 704 (9th Cir. 1992).

25      Here, the Council members lack the required connection to enforcement of the Codes.

26 The Council and its members' statutory responsibility is to adopt and maintain the statewide

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

building code. *See* RCW 19.27.074(1)(a)–(c). But the Council—and its individual council members—lack authority or any mechanism to enforce the Codes. Curb Decl. at p.1 ¶ 3. This is because "[t]he state building code required by this chapter shall be enforced by the counties and cities." RCW 19.27.050; *see also id.* at .031 (providing that the SBCC "may issue opinions relating to the codes" but only "at the request of *a local official charged with the duty to enforce the enumerated codes*") (emphasis added). The council members have no duty—or any ability— to enforce the Codes. *Cf. Coal. to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1134–35 (9th Cir. 2012) (president of state university system not immune from suit under Eleventh Amendment because he was responsible for university's compliance with law requiring race-neutral admissions, where law did not delegate enforcement to any particular official). Because Washington law delegates enforcement authority to local officials, and because Council members do not have any connection with enforcement, they are not proper defendants for an *Ex parte Young* action.

Nor do the Council members have supervisory power over the local officials who are responsible for enforcement. The Washington Constitution treats counties and cities as separate political subdivisions of the State. Wash. Const. art. XI, §§ 4, 10; *see also City of Auburn v. Gauntt*, 274 P.3d 1033, 1034 (2012) (noting that counties are the primary unit of local government and handle state-directed functions). This "home rule" principle "seeks to increase government[al] accountability by limiting state-level interference in local affairs." *Watson v. City of Seattle*, 401 P.3d 1, 10 (2017). Thus, no state officer or agency has general command-and-control over local governments or their officials. *See Mochizuki v. King County*, 548 P.2d 578, 580 (1976). The enforcement of the Codes by local officials is no exception. *See, e.g.*, *Davison v. State*, 466 P.3d 231, 240 (2020) (rejecting argument that county's underfunding of public defense system stated a constitutional claim against the State and holding that "[t]he State is not a 'principal' legally responsible for the acts of its local government 'agents' when such acts occur within the scope of the local government's delegated duty.").

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia. WA 98504-0111
(360) 709-6470

Additionally, the Codes explicitly contemplate that local officials have discretion in interpreting and enforcing the Codes within their jurisdiction. *See, e.g.*, WAC § 51-11R-10200, R102.1; WAC § 51-11R-11000, R110.1; WAC § 51-11C-10200, C102.1; WAC § 51-11C-11000, C.110.1. Thus, this is unlike cases where local officials had no discretion to disregard State mandates, making the relevant State officials proper defendants under *Ex parte Young*. *See, e.g.*, *Mecinas v. Hobbs*, 30 F.4th 890, 903-04 (9th Cir. 2022) (concluding that Arizona Secretary of State had sufficient role in enforcement of challenged ballot order law by promulgating Election Procedures Manual, which local officials "had no discretion to disregard."). Here, the Council's enumerated duties include neither oversight of local code officials nor reconsideration of local code officials' decisions when they do choose to exercise their discretion. *See* RCW 19.27.074(1). Moreover, the Council lacks any independent recourse if a local code official decides not to enforce the Codes. *Id*. Thus, the Council members lack any supervisory powers to direct local officials to act "against plaintiffs' interests," and "the Eleventh Amendment bars federal court jurisdiction." *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (per curiam).

The Council members' adoption of the Codes is likewise insufficient. *Contra* Dkt. # 1 at p. 11 ¶ 53. If it were, the Eleventh Amendment's protections would be eviscerated—any plaintiffs could bring any number of challenges against a state by naming as a defendant every state legislator (or, as here, every member of a quasi-legislative state agency), arguing that passage of a law or a rule is a directive to enforce. But that contravenes the clear dictate that a general duty to enforce state law is insufficient to invoke *Ex parte Young*. *Eu*, 979 F.2d at 705; *Minnesota Auto Dealers Assoc. v. Minnesota*, 520 F. Supp. 3d 1126, 1134 (D. Minn. 2021) (finding that a state official's involvement in administrative rulemaking did not make her a proper defendant under *Ex parte Young*). Put another way, "[a] person aggrieved by the application of a legal rule does not sue the rule *maker*—Congress, the President, the United States, a state, a state's legislature, the judge who announced the principle of common law. He

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

sues the person whose acts hurt him." *Quinones v. City of Evanston, Ill.*, 58 F.3d 275, 277 (7th Cir. 1995). In fact, the act of adopting a rule or passing a law is even more remote from the act of enforcement than a general duty to enforce a law. *See MacEwen v. Inslee*, No. 3:20-cv-05423-BHS, 2020 WL 4261323, at *2 (W.D. Wash. July 24, 2020) ("'[t]he power to promulgate law is not the power to enforce it.'" (quoting *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020), *vacated on appeal as moot sub nom. Planned Parenthood Center for Choice v. Abbott*, 141 S. Ct. 1261 (2021))).

### 3. *Ex parte Young* does not allow suit against the Attorney General

Nor may suit be brought against the Attorney General under *Ex parte Young*, because he has no role in the enforcement of the Energy Codes. As with the individual Council members, *Ex parte Young* does not apply here because the Attorney General does not have a "fairly direct" connection—or indeed any connection—to the enforcement of the building codes. *Eu*, 979 F.2d at 704. The only mention of the Attorney General in the Complaint is a conclusory allegation that he "is responsible for the Energy Code's enforcement." Dkt. # 1 at p. 8 ¶ 35. But under Washington law, the Attorney General has *no* connection to the enforcement of the Codes. *See* RCW 19.27.050 (providing for local enforcement of building codes); *contrast with* RCW 43.10.230 (granting the attorney general concurrent authority with county prosecutors to investigate and prosecute criminal offenses upon request by the Governor or local prosecuting authority). Plaintiffs provide no evidence or argument in their Complaint indicating that the Attorney General has any enforcement authority here—nor can they.

As discussed above, Washington State's Constitution has set counties and cities apart from the state and treats them as separate political subdivisions. Wash. Const. art. XI, §§ 4, 10. Thus, state officials such as the Attorney General do not direct or supervise local officials. The Attorney General does not "direct, in a binding fashion" the enforcement activities of the local officials who actually enforce the Codes. *See Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004); Wash. Const. art. XI, §§ 4, 10. To the extent Plaintiffs rely upon

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

a daisy-chain of logic—that attorneys in the Attorney General's Office represent and advise the Council, and so are "responsible" for the Codes' enforcement—that theory lacks any legal support, and still fails because the Council lacks any enforcement mechanism of its own. Accordingly, claims against the Attorney General must be dismissed as barred by the Eleventh Amendment.

***

In sum, the Eleventh Amendment operates to bar suits against the State in federal court. Here, Plaintiffs have sued the State by naming members of a State agency and the Attorney General in their official capacities, and no exception to immunity applies. The Court therefore lacks jurisdiction to hear Plaintiffs' claims against the State.

## B.    Plaintiffs Do Not Have Standing under Article III

Plaintiffs' case should also be dismissed for lack of jurisdiction for the independent reason that Plaintiffs lack standing. In order to establish standing in federal court, a plaintiff must show that (1) they have suffered an injury in fact; (2) their injury is traceable to the defendant's challenged action, and not the result of the independent action of a third party not before the court; and (3) it is likely that a favorable decision would redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "'[T]he 'fairly traceable' and 'redressability' components for standing overlap[,] and are 'two facets of a single causation requirement." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1146 (9th Cir. 2013) (citation omitted). However, they are distinct in that traceability "examines the connection between the alleged misconduct and injury, whereas redressability analyzes the connection between the alleged injury and requested relief." *Id.*

Here, Plaintiffs have not met these requirements because their injuries are overly speculative and, as recently clarified by the Supreme Court, an injunction or declaration would not bind the local building officials who enforce the codes.

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia. WA 98504-0111
(360) 709-6470

**1.       Plaintiffs' alleged harms are overly speculative**

First, Plaintiffs cannot show a "concrete" injury in fact. A plaintiff may not sue merely because their legal objections are accompanied by a "strong" policy objection to a government action. *Food and Drug Admin v. All. for Hippocratic Medicine*, 602 U.S. 367, 382 (2024). In order to demonstrate standing, a plaintiff must allege a "real and not abstract" particularized injury that has "already occurred or [will] be likely to occur soon". *Id.* at 381. When, as here, a plaintiff seeks prospective relief, they also must show a likelihood of future injury. *Id.* at 382 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)). It is well settled that the ordinary costs of regulatory compliance are not a "particularized injury that distinguishes" any specific entity from "everyone else to whom the [law] may apply." *Baldwin v. Sebelius*, 654 F.3d 877, 879 (9th Cir. 2011).

The injuries Plaintiffs allege here are too speculative to demonstrate standing.[3] Plaintiff Jamon Riviera alleges that he would use natural gas for heating if it were available in his neighborhood, and that the Codes make it "less likely" that gas would be expanded into his neighborhood and prevents him from using certain appliances in his home. Dkt. # 1 at p. 3 ¶ 11. But that injury is speculative because it relies on the hypothetical actions of third parties. Energy companies—including some of the plaintiffs in this case—make independent decisions about where and whether to extend service, and so Plaintiff Riviera cannot show that his purported injuries are "certainly impending." *Clapper*, 568 U.S. at 409–10. Plaintiff Curtis Banta likewise alleges that he uses and "prefers" natural gas appliances and would be harmed by an increase in the cost of natural gas. But he alleges *no* facts that the cost of natural gas will increase because of the Codes (or for any other reason, for that matter). Dkt. # 1 at p. 3 ¶ 12. This is a textbook speculative injury.

---

[3] Plaintiffs do not allege that they are relying upon pre-enforcement standing to challenge the Codes. But, even if they did, that argument would fail because they do not allege a concrete plan to violate the Codes in the future and still cannot show that any injuries are attributable to the individual Council members or the Attorney General. *Tingley v. Ferguson*, 47 F.4th 1055, 1067 (9th Cir. 2022) (articulating test for pre-enforcement standing).

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

The homebuilder plaintiffs claim the Codes make it more likely that they will make changes to their building plans to move away from natural gas appliances. *Id.* at pp. 4–5 ¶¶ 13–18, 57. But they do not allege that they will, in fact, make those changes or how that will injure them. And, regardless, whenever the building code is amended, builders must spend "resources planning ahead to meet the requirements of building code provisions." Dkt. # 1 at p. 11 ¶ 57. These ordinary costs of compliance are insufficient to show a particularized injury. *Baldwin*, 654 F.3d at 879. Likewise, one homebuilder claims that using electrical appliances will add "risk" due to potential procurement delays associated with supply chain shortages of electrical equipment. Dkt. # 1 at p. 4 ¶ 16. But "risk" untied to any allegations of real harm is an abstract, rather than a concrete, injury.

The utilities, trade associations, and unions are concerned that natural gas customers may go elsewhere and unions may have to retrain members to "pursue new opportunities[.]" Dkt. # 1 at pp. 6, 12 ¶ 26, 60. But these are choices made by third parties and customers, influenced by multiple market and other factors prompting consumers to choose alternative methods of heating. They are not "certainly impending" harms. *See Clapper*, 568 U.S. at 409–10. Likewise, mere participation in industries that are now subject to new regulations is simply insufficient to show injury. *Unified Data Servs., LLC v. F.T.C.*, 39 F.4th 1200, 1211 (9th Cir. 2022). These Plaintiffs, too, cannot show concrete injury.

Nor can the associational Plaintiffs demonstrate a concrete, particularized injury. To the extent the associations allege harms on behalf of their members, those injuries fail for the same reasons discussed above. Dkt. # 1 at p. 6 ¶¶ 22–24. An organization may have standing to sue on its own behalf for injuries it has sustained, and must comply with the same Article III requirements as an individual. *All. for Hippocratic Medicine*, 602 U.S. at 393. The associational Plaintiffs here allege that they must use their resources to advocate against the codes and educate their members about the codes. Dkt. # 1 at pp. 5–6 ¶¶ 21–23. But this too is insufficient to demonstrate standing. "[A]n organization . . . cannot spend its way into standing simply by

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia. WA 98504-0111
(360) 709-6470

1    expending money to gather information and advocate against the defendant's action." *Id.* at 394.

2    Indeed, a conclusion to the contrary would allow any organization to have standing to challenge

3    any policy they dislike, "provided they spend a single dollar opposing" that policy. *Id.* at 395.

4    These self-inflicted injuries are insufficient to show standing.

5         Accordingly, Plaintiffs cannot show a concrete, particularized injury and therefore lack

6    standing.

7         **2.      Any injuries due to enforcement of the code are not traceable to the Council
                 members or the Attorney General**

8         As discussed above, Plaintiffs allege mainly injuries relating to second-order effects that

9    they speculate will arise from compliance with the Codes, such as a reduction in the number of

10   natural gas customers. They have not alleged that any particular plaintiff will be unable to have

11   plans approved for any particular project under the Codes. *See* Dkt. # 1 at p. 4 ¶ 14 (Paras Homes

12   "plans to submit building plans to City of Spokane Valley" for approximately 40 lots, but alleges

13   that it will choose to use non-natural gas appliances which will make the homes less competitive

14   with older construction); *id*. ¶ 17 (similar allegation regarding Arlington 360, LLC); *id*. ¶¶ 23–

15   24 (alleging that SHBA members "regularly submit building plans for approval" and "will be

16   harmed" by the codes, but not specifying how).

17        To the extent Plaintiffs do allege an injury arising from the anticipated rejection of any

18   specific building plans, that injury is not traceable to the Council members (or the Attorney

19   General). Neither the individual Council members nor the Attorney General have any role in the

20   enforcement of the Codes. For an injury to be fairly traceable to a challenged statute, the injury

21   must be "the result of [the] statute's actual or threatened enforcement, whether today or in the

22   future." *California v. Texas*, 593 U.S. 659, 670-71 (2021). And that injury must "be traced to the

23   challenged action of the defendant, and not injury that results from the independent action of

24   some third party not before the court[.]" *Simon v. Eastern Kentucky Welfare Rts. Org.*, 426 U.S.

25   26, 41–42 (1976). The traceability requirement is "central" to Article III standing, as it "screens

26

DEFENDANTS' MOTION TO DISMISS                    18              ATTORNEY GENERAL OF WASHINGTON
NO. 2:24-cv-00677-KKE                                                      Complex Litigation Division
                                                                               7141 Cleanwater Dr SW
                                                                                   P.O. Box 40111
                                                                              Olympia. WA 98504-0111
                                                                                   (360) 709-6470

1    out plaintiffs who were not injured by the defendant's action" and ensures courts are not

2    "'monitors of the wisdom and soundness' of government action." *All. for Hippocratic Medicine*,

3    602 U.S. at 384 (quoting *Allen v. Wright*, 468 U.S. 737, 760 (1984), *abrogated on other grounds*

4    *by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).

5          The Council members' actions in enacting the Codes is not enough to show traceability.

6    This is because the Council members are more akin to legislators than they are prosecutors. As

7    an example, when Congress enacted laws allowing for removal of immigrants, the alleged injury

8    of deportation was not fairly traceable to the members of Congress. *Marks v. U.S. Congress*

9    *Individual Members 1-435*, No. 08-0175, 2008 WL 251937, (D.D.C. Jan. 29, 2008), *aff'd sub*

10   *nom. Marks v. U.S. Congress*, 285 F.App'x 762, 763 (D.C. Cir. 2008). As discussed above, "[a]

11   person aggrieved by the application of a legal rule does not sue the rule maker . . . He sues the

12   persons whose acts hurt him." *Prakel v. Indiana*, 100 F. Supp. 3d 661, 674 (S.D. Ind. 2015)

13   (quoting *Quinones*, 58 F.3d at 277) (holding that injury caused by a trial court implementing a

14   rule was not traceable to Supreme Court that promulgated the trial rule). Though Plaintiffs may

15   suffer an injury, "[f]rom the perspective of the [Council], the injury to respondents is highly

16   indirect and 'results from the independent action of some third party not before the court.'" *Allen*,

17   468 U.S. at 757 (rejecting argument that injury of inability to receive a desegregated education

18   was traceable to federal officials who enacted tax exemptions to certain private schools) (quoting

19   *Simon*, 426 U.S. at 42). If it were otherwise, a plaintiff could sue any policymaker—instead of

20   the person who enforces the policy—and argue that their harm was traceable to the enactment

21   of a policy or rule. *Allen*, 468 U.S. at 759 ("That conclusion would pave the way generally for

22   suits challenging, not specifically identifiable Government violations of law, but the particular

23   programs agencies establish to carry out their legal obligations.").

24          As discussed above, neither the individual Council members nor the Attorney General

25   have authority to enforce the Codes; that authority is expressly and solely held by local officials.

26   Wash. Const. art. XI, §§ 4, 10. And local code officials have broad discretion under the Codes

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

in how they exercise their enforcement authority. For example, a code official could approve alternative construction methods or materials in some circumstances. *See, e.g.*, Seattle, Wash., Com. Energy Mun. Code § C102.2 (2018), https://www.seattle.gov/documents/Departments/S DCI/Codes/SeattleEnergyCode/2018SECCommercialChapter1.pdf ("The code official may modify the requirements of this code for individual cases provided" the code official finds there are "practical difficulties" in complying with the Codes, the modification conforms with the "intent and purpose" of the Codes, the modification will provide reasonable level of fire protection and structural integrity, and the modification "maintains or improves the energy efficiency of the building"). Alternatively, a code official could use their discretion to interpret the Codes and enforce a violation or reject a building permit—an injury that would be untraceable to the State officials sued here. *See, e.g.*, Bellingham, Wash., Mun. Constr. Admin. Code § 104.1 (2024), https://bellingham.municipal.codes/BMC/17.10.020 ("The Building Official shall have the authority to render interpretations of this code and to adopt policies and procedures in order to clarify the application of its provisions."). Thus, any injury caused by enforcement of the Codes would be traceable to the local code official, not to the Council members or the Attorney General.

Plaintiffs have not pointed to alleged harms caused by the mere enactment of the Codes. Rather, they are caused by enforcement of the Codes by third parties who are not present in this litigation. Thus, Plaintiffs cannot show that their injury is traceable to Defendants.

### 3. Plaintiffs' requested remedies would not redress their harms

Plaintiffs' case also fails on the redressability prong because their alleged harm would not likely be redressed by their requested relief. Again, enforcement of the Codes is done by independent third parties not before this Court who would not be bound by any order issued by this Court.

Article III requires a plaintiff to establish that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. 561

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

(cleaned up); *Haaland v. Brackeen*, 599 U.S. 255, 292-93 (2023). "To determine whether an injury is redressable, a court will consider the relationship between the judicial relief requested and the injury suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (internal quotation marks and citation omitted). A plaintiff lacks standing and a claim is not redressable if "following a favorable decision, whether the injury would be redressed would still depend on 'the unfettered choices made by independent actors not before the courts.'" *Novak v. United States*, 795 F.3d 1012, 1019–20 (9th Cir. 2015) (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)); *see also Murthy v. Missouri*, 603 U.S. ----, 2024 WL 3165801, at *2 (2024) ("[I]t is a bedrock principle that a federal court cannot redress injury that results from the independent action of some third party not before the court." (cleaned up)).

Plaintiffs seek a permanent injunction "enjoin[ing] Defendants from enforcing the amended Energy Code in its entirety" and "enjoining [its] effectiveness." Dkt. # 1 at p. 25 ¶ 124; *id.* ¶ 2. However, an injunction against the defendants in this case would not redress Plaintiffs' harms when the local officials who enforce the codes are not parties to this suit and would not be subject to that injunction. *Haaland v. Brackeen*, 599 U.S. 255 (2023), is illustrative. There, non-Indian individuals who wished to adopt Indian children sued federal officials on an equal protection challenge to the Indian Child Welfare Act's placement preferences. The Court rejected the plaintiffs' argument that they had standing to seek injunctive relief, noting that "enjoining the federal parties would not remedy the [plaintiffs'] alleged injury, because state courts apply the placement preferences, and state agencies carry out the court-ordered placements." *Id.* at 292. The Court further noted that, because the state officials who actually implement ICWA were not parties to the suit, "'there is no reason they should be obliged to honor an incidental legal determination [this] suit produced.'" *Id.* at 293 (quoting *Lujan*, 504 U.S. at 569).

Similarly here, it is local code officials, not Defendants, who enforce the Codes. *See* RCW 19.27.050. Thus, just as in *Brackeen*, enjoining the Council or the Attorney General from

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

enforcing the Codes would not oblige local code officials to honor the legal determination in this suit. *Brackeen*, 599 U.S. at 292. *Id.* at 293; *California*, 593 U.S. at 672 ("Remedies, however, ordinarily 'operate with respect to specific parties' . . . they do not simply operate 'on legal rules in the abstract.'") (internal citations omitted). So, even if the Court granted Plaintiffs the injunctive relief they seek, it would not prevent the local code officials responsible for enforcing the Codes from continuing to enforce them. Whether local code officials would comply is entirely speculative. And, perhaps more importantly, even if local code officials decided to enforce the Codes despite an order enjoining the Codes, the Council would lack any means to ensure officials' compliance with the Court's order. RCW 19.27.074(1) (detailing Council's duties); Curb Decl. at p. 1 ¶ 3.

Plaintiffs' requested declaration that the challenged codes are preempted by EPCA is also not likely to remedy Plaintiffs' purported injuries for similar reasons; it would not bind the local officials actually charged with enforcing the Codes. In *Brackeen*, the Court similarly rejected standing to seek declaratory relief because a declaratory judgment "conclusively resolves 'the legal rights *of the parties*[,]'" and the state officials who enforce ICWA were nonparties who would not be bound by a declaration. *Id.* (quoting *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191, 200 (2014)). Indeed, the Court noted that "[w]ithout preclusive effect, a declaratory judgment is little more than an advisory opinion." *Id.* Thus, the plaintiffs' equal protection claims would not be settled as between the petitioners and "the officials who matter"—that is, the state officials who would actually implement ICWA—and so would not redress their injuries. *Id.*

So too here. A declaratory judgment on preemption would not be binding on local officials not present in this litigation. *Taylor v. Sturgell*, 533 U.S. 880, 892–93 (2008) (noting that, as a general rule, a person who is not party to a suit is not bound by a judgment from that suit). Thus, the preemption issue would not be resolved between Plaintiffs "and the officials who matter"—the local officials who enforce the Codes. *Brackeen*, 599 U.S. at 293. Nor would the

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

persuasive value of a declaratory judgment from this Court likely redress Plaintiffs' harm.
Indeed, the *Brackeen* Court expressly rejected this argument, holding that redressability requires
more than a "'persuasive or even awe-inspiring effect.'" *Brackeen*, 599 U.S. at 294 (quoting
*Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and
concurring in judgment)). Instead, redressability requires that "a federal court's *judgment*, not
its opinion" remedy an injury. *Id.* (emphasis added).

Finally, Plaintiffs also request an injunction permanently prohibiting Defendants from
"maintaining the Energy Code" or "substantially similar" provisions as part of the state energy
code. *See* Dkt. # 1 at p. 25 ¶ 2. It is unclear how this request would work in practice, since it
would in effect be a mandatory injunction requiring a Washington State executive branch agency
to rewrite regulations promulgated under its statutory authority, posing serious federalism
concerns. *Cf. Rizzo v. Goode*, 423 U.S. 362, 380 (1976) (holding that district court exceeded its
authority when it "injected itself" into internal affairs of state agency, where there was no
evidence to justify detailed affirmative injunction requiring agency to change its policies);
*Juliana v. United States*, 947 F.3d 1159, 1172 (9th Cir. 2020) (finding that injunction requiring
the federal government to "implement a plan" to phase out fossil fuels and reduce atmospheric
carbon dioxide because it would require the court to "pass judgment" on the government's
response "for many decades."); *M.S. v. Brown*, 902 F.3d 1076, 1090 (9th Cir. 2018) ("where, as
here, a plaintiff sues state officials seeking intrusive affirmative relief that is incompatible with
democratic principles and where there is no basis for the district court to invoke its equitable
power . . . such relief would also violate principles of federalism.").

In sum, Plaintiffs lack Article III standing because they have not alleged concrete, non-
speculative injuries traceable to any defendant's conduct, and their requested relief would not
redress their claimed harms.

## V.   CONCLUSION

This case against these defendants is not properly brought in federal court. Plaintiffs fail to

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1  sue proper defendants for an *Ex parte Young* action, and so their claims are barred by the Eleventh

2  Amendment. In addition, Plaintiffs fail to satisfy the requirements of Article III because their

3  injuries cannot be traced to Defendants and the remedies they seek would not redress their harm.

4  Accordingly, the Court should grant Defendants' Motion to Dismiss without prejudice.

5      DATED this 10th day of June 2024.

6                              ROBERT W. FERGUSON
                              Attorney General

7

8                              */s/ Sarah E. Smith-Levy*
                              R. JULY SIMPSON, WSBA #45869

9                              WILLIAM MCGINTY, WSBA #41868
                              SARAH E. SMITH-LEVY, WSBA #55770

10                             DIERK MEIERBACHTOL, WSBA #31010
                              Assistant Attorneys General

11                             EMMA GRUNBERG, WSBA #54659
                              Deputy Solicitor General

12                             July.Simpson@atg.wa.gov
                              William.McGinty@atg.wa.gov

13                             Sarah.E.Smith-Levy@atg.wa.gov
                              Dierk.Meierbachtol@atg.wa.gov

14                             Emma.Grunberg@atg.wa.gov
                              *Attorneys for Defendants*

15
                              I certify that this memorandum contains 8,264

16                             words, in compliance with the Local Civil Rules.

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO DISMISS                    24        ATTORNEY GENERAL OF WASHINGTON
NO. 2:24-cv-00677-KKE                                                Complex Litigation Division
                                                                    7141 Cleanwater Dr SW
                                                                    P.O. Box 40111
                                                                    Olympia, WA 98504-0111
                                                                    (360) 709-6470