1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

JAMON RIVIERA; CURTIS BANTA;
YONKMAN CONSTRUCTION, INC.;
10  PARAS HOMES, LLC; CONDRON HOMES,
LLC; GARCO CONSTRUCTION, INC.;
11  ARLINGTON 360, LLC; HUSEBY HOMES,
LLC; SPOKANE HOME BUILDERS
12  ASSOCIATION; WASHINGTON STATE
ASSOCIATION OF UA PLUMBERS,
13  PIPEFITTERS AND HVAC/R SERVICE
TECHNICIANS; LOCAL 32 OF UA
14  PLUMBERS, PIPEFITTERS AND HVAC/R
SERVICE TECHNICIANS; WASHINGTON
15  AND NORTHERN IDAHO DISTRICT
COUNCIL OF LABORERS; CITIZEN
16  ACTION DEFENSE FUND; NATIONAL
PROPANE GAS ASSOCIATION; AVISTA
17  CORPORATION; CASCADE NATURAL
GAS CORPORATION; and NORTHWEST
18  NATURAL GAS COMPANY,

19                          Plaintiffs,

20          v.

21  KJELL ANDERSON, JAY ARNOLD, TODD
BEYREUTHER, JUSTIN BOURGAULT,
22  DAIMON DOYLE, TOM HANDY,
ANGELA HAUPT, ROGER HEERINGA,
23  MATTHEW HEPNER, CRAIG HOLT, TYE
MENSER, BENJAMIN OMURA, PETER
24  RIEKE, KATY SHEEHAN, in their official
capacities as Washington State Building Code
25  Council Members; and BOB FERGUSON, in
his official capacity as Attorney General of
26  Washington,

27                          Defendants.

Case No.  2:24-cv-00677

**FIRST AMENDED COMPLAINT
FOR DECLARATORY AND
INJUNCTIVE RELIEF**

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

**INTRODUCTION**

1.        Plaintiffs Jamon Rivera; Curtis Banta, Yonkman Construction; Inc.; Paras Homes, LLC; Condron Homes, LLC; Garco Construction, Inc; Arlington 360, LLC; Huseby Homes, LLC; Spokane Home Builders Association ("SHBA"), Citizen Action Defense Fund, National Propane Gas Association; Washington State Association of UA Plumbers, Pipefitters and HVAC/R Service Technicians; Local 32 of UA Plumbers, Pipefitters and HVAC/R Service Technicians; Washington and Northern Idaho District Council of Laborers (the "Homeowners, Builders, Suppliers, and Unions"); Avista Corporation; Cascade Natural Gas Corporation; and Northwest Natural Gas Company (the "Utilities"); collectively, the "Coalition"; seek declaratory and injunctive relief under federal law against the Washington State Building Code Councilmembers' adoption of the Washington State Energy Code ("Energy Code"). The federal Energy Policy and Conservation Act ("EPCA"), 42 U.S.C. §§ 6201-6422, regulates the energy use and efficiency of many gas appliances and expressly and broadly preempts state and local laws on that subject. The Energy Code falls within the heartland of EPCA's express preemption provision because it too purports to regulate and restrict the energy use and efficiency of these appliances. As such, the Energy Code is preempted by EPCA and unenforceable as a matter of law.

2.        Born out of the oil crisis of the 1970s and the accompanying concerns with energy independence, EPCA implements a national energy policy that, among other things, regulates the energy use and energy efficiency of appliances. *See, e.g.*, 42 U.S.C. § 6297(c). The thrust of EPCA is that nationally uniform energy use and efficiency standards are the best way to promote conservation goals while ensuring energy security and domestic supply and preserving consumer choice. *See, e.g., id.*; S. Rep. No. 100-6, at 4 (1987); H.R. Rep. No. 100-11, at 24 (1987).

3.        To accomplish that needed national uniformity, EPCA expressly preempts state and local regulations concerning the energy use and energy efficiency of products for which EPCA sets energy conservation standards—with only the narrowest of exceptions to that preemption for state and local regulations that meet certain stringent statutory conditions. 42 U.S.C. §§ 6297(c)(3), (f)(3).

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 2

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

4.      Last year, the Ninth Circuit invalidated the City of Berkeley's indirect attack on gas appliances via a prohibition on gas piping in new buildings. *Cal. Rest. Ass'n v. City of Berkeley*, 65 F.4th 1045 (9th Cir. 2023), *amended and superseded by Cal. Rest. Ass'n v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024). When invalidating this "circuitous route" to banning gas appliances, the unanimous Ninth Circuit panel emphasized that "EPCA would no doubt preempt an ordinance that directly prohibits the use of covered natural gas appliances in new buildings." *Cal. Rest. Ass'n*, 89 F.4th at 1098, 1107. Taking note of this ruling, the Council delayed the effective date of the first iteration of the codes because the codes did exactly that. The Council paused "to evaluate what, if any, changes are necessary to maintain compliance with [EPCA] given the recent 9th circuit court of appeals ruling on the Berkeley, California ordinance," *see* WSR 23-12-101, WSR 23-12-102, and promulgated the Energy Code. But the Energy Code is simply a "more circuitous route to the same result," *Cal. Rest. Ass'n*, 89 F.4th at 1098, and, thus, is preempted by EPCA.

5.      The Energy Code inflicts serious and imminent harm on the Coalition. By restricting EPCA-covered gas appliances in new and existing buildings, the Energy Code interferes with consumer and commercial energy choice; exacerbates Washington's housing crisis; jeopardizes jobs; impairs commerce; burdens the appliance manufacturing industry; increases building and energy costs for Washington residents and businesses; and aims to shift Washington's energy demand to an electric system that is already facing historic and increasing electricity demand.

6.      The Energy Code has already harmed the residents and businesses within the Coalition, as homeowners and builders must now forgo EPCA-covered appliances in light of the Energy Code.

7.      In sum, the Energy Code is plainly preempted by EPCA, is already inflicting substantial irreparable harm to Plaintiffs, and will cause even more irreparable harm unless enjoined. Plaintiffs accordingly bring this action seeking (1) a declaration that the Energy Code provisions restricting gas appliances is preempted by EPCA and (2) an injunction preventing the Energy Code's restrictions on EPCA-covered gas appliances.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 3

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

## JURISDICTION AND VENUE

8.      Jurisdiction is proper because, under 42 U.S.C. § 6306(c), federal district courts have express jurisdiction over suits brought by any adversely affected person concerning a state government's compliance with EPCA. Additionally, under 42 U.S.C. § 1331, the Court has federal question jurisdiction to determine the claims involving EPCA.

9.      This Court has authority to grant declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202  and Rules 57 and 65 of the Federal Rules of Civil Procedure.

10.      This Court has personal jurisdiction over all Defendants who are members of the Washington State Building Code Council ("Council"), as they are each domiciled in Washington, and the claims asserted arise out of Defendants' actions as members of the Council, all of which occurred within the state of Washington.

11.      This Court has personal jurisdiction over Washington Attorney General Bob Ferguson, as he is domiciled in Washington, and the claims asserted arise out of his authority to enforce the Energy Code, which occurs within the state of Washington.

12.      Venue in this Court is proper under 28 U.S.C. § 1391(b)(2) because, among other things, (i) the actions violating federal law stated in this Complaint impose injury in this District, where certain Coalition members reside, do business, and have a substantial number of customers and would-be customers (individuals, businesses, and others who would be customers if not for the Energy Code), and (ii) the regulatory provisions at issue will be enforced here.

13.      Venue in this Court is also proper under 28 U.S.C. § 1391(b)(1) because all Defendants are sued in their capacities as Washington officials and are therefore residents for the purposes of venue where they perform their duties, which is in Washington, and certain Defendants perform their duties in this District and are therefore residents of this District.

## PARTIES

14.      Plaintiff Jamon Rivera is a homeowner in and domiciliary of Yakima, Washington. He uses an electric appliance for space heating. His electric heating costs are high, and he would use natural gas for heating if it were available in his neighborhood. The Energy Code makes

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 4

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

expansion of gas infrastructure to his neighborhood less likely and effectively deprives him of the ability to choose EPCA-covered appliances for use in his home.

15.    Plaintiff Curtis Banta is a domiciliary of Oak Harbor, Washington. He uses natural gas appliances for space heating and water heating in his family's home. Mr. Banta prefers natural gas appliances to electrical appliances for this purpose. He will be harmed by an increase in the cost of natural gas.

16.    Plaintiff Yonkman Construction, Inc. is a Washington corporation based in Oak Harbor, Washington that regularly builds and renovates homes. Its customers often request EPCA-covered natural gas appliances in their homes.

17.    Plaintiff Paras Homes, LLC is a limited liability company based in Spokane, Washington that regularly builds new homes. The increased costs of complying with the Energy Codes damages Paras Homes because it must either choose to reduce its profit margins to keep homes affordable, or choose to pass costs along to homebuyers, thereby increasing the costs of homes and decreasing the volume of sales Paras Homes can make. Paras Homes plans to submit building plans to City of Spokane Valley in connection with construction on approximately 40 lots that a Paras Homes affiliate owns in the City of Spokane Valley. Paras Homes would like to build these homes to include EPCA-covered natural gas water heating and space heating appliances. The Energy Code will impede Paras Homes from building the homes with natural gas appliances, making the homes less attractive to homebuyers than are homes featuring natural gas, which were permitted under prior regulations.

18.    Plaintiff Condron Homes, LLC is a limited liability company based in Spokane, Washington that regularly builds new homes. The increased costs of complying with the Energy Code damages Condron Homes because it must either choose to reduce its profit margins to keep homes affordable, or choose to pass costs along to homebuyers, thereby increasing the costs of homes and decreasing the volume of sales Condron Homes can make.

19.    Plaintiff Garco Construction, Inc. is a Washington corporation based in Spokane. Garco regularly builds commercial buildings and other structures throughout Washington. The

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

increased costs of complying with the Energy Code damages Garco because for certain projects, the revised Energy Code adds risk to the projects due to material procurement delays associated with supply chain shortages of upsized electrical equipment, all of which increase cost and time and ultimately erode profit margins. Garco could choose to increase its price to cover the added risk and pass costs along to buyers and owners, thereby increasing the costs of building to the point that they are possibly unaffordable, thus risking decreasing the volume of its business.

20.    Plaintiff Arlington 360, LLC is a Washington limited liability company that plans to develop a subdivision within the limits of the City of Arlington. Arlington 360 would like to build homes with natural gas space heating and water heating appliances in the subdivision. The Energy Code will impede Arlington 360 from building the homes with natural gas appliances, making the homes less attractive to homebuyers than are homes featuring natural gas, which were permitted under prior regulations. Due to the amended Energy Code, Arlington 360 is, on average, spending approximately $12,000 per home to install electric space and water heating equipment instead of using gas space and water heating equipment. The increased costs of complying with the Energy Codes damages Arlington 360 because it must either choose to reduce its profit margins to keep homes affordable, or choose to pass costs along to homebuyers, thereby increasing the costs of homes and decreasing the volume of sales Arlington 360 can make. Due to the Energy Code, the company's profit margins on homes have decreased approximately 2-3%, depending upon the sales price of the home. Electric appliances are also more difficult to obtain than gas appliances; obtaining electric appliances for homes has added additional weeks to projects that would have been completed more quickly if the Washington State Building Code Councilmembers had not adopted the Energy Code.

21.    Plaintiff Huseby Homes, LLC is a Washington limited liability company based in Woodinville that regularly builds new homes. Due to the amended Energy Code, Huseby Homes is, on average, spending approximately $12,000 per home to install electric space and water heating equipment instead of using gas space and water heating equipment. The increased costs of complying with the Energy Codes damages Huseby Homes because it must either choose to reduce

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1   its profit margins to keep homes affordable, or choose to pass costs along to homebuyers, thereby

2   increasing the costs of homes and decreasing the volume of sales Huseby Homes can make. Due

3   to the Energy Code, the company's profit margins on homes have decreased approximately 2-3%,

4   depending upon the sales price of the home. Electric appliances are also more difficult to obtain

5   than gas appliances; obtaining electric appliances for homes has added additional weeks to projects

6   that would have been completed more quickly if the Washington State Building Code

7   Councilmembers had not adopted the Energy Code.

8       22.    Plaintiff Spokane Home Builders Association ("SHBA") is a non-profit member

9   organization that since 1947 has been committed to protecting and promoting the housing industry

10  in eastern Washington. SHBA seeks to strengthen eastern Washington communities by advocating

11  for affordable, quality housing. Its approximately 750 members include professional home

12  builders, architects, remodelers, suppliers, and manufacturers operating in eastern Washington.

13      23.    SHBA's services to the community and its members include developing eastern

14  Washington's workforce by collaborating with schools and industry leaders to offer construction-

15  based curriculum and hands-on training programs for students and adults seeking to learn a trade.

16  SHBA also presents education to its members, including first aid classes and professional

17  development classes. And SHBA presents the annual Fall Festival of Homes to educate the

18  community about homebuilding and renovation and to encourage its members to connect with the

19  community and with each other.

20      24.    The Energy Code is of immense importance to SHBA's members. SHBA has

21  therefore diverted resources, including the time of its staff, from SHBA's other activities to

22  advocating for repeal of the Energy Code and to educating SHBA members about the Energy

23  Code. For example, SHBA coordinated educational events for its members and local buildings

24  officials, and devoted time and money to providing venues for these events and to informing

25  members about the events. SHBA has spent time and money on four educational events to assist

26  its members and local buildings officials in understanding the new Energy Code in 2024 alone.

27  This diversion of resources is caused by the Council, whose adoption of the Energy Code mandates

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 7

1    that it be enforced.

2         25.    The Energy Code increases the costs of constructing homes. This damages SHBA's

3    members because they must either choose to reduce their profit margins to keep homes affordable,

4    or to pass costs along to homebuyers, thereby increasing the costs of homes and decreasing the

5    pool of homebuyers whose demand for homes supports the livelihoods of SHBA's members.

6         26.    The Washington State Association of UA Plumbers, Pipefitters and HVAC/R

7    Service Technicians is a labor union, consisting of six Washington membership organizations in

8    both eastern and western Washington. Its locals in both eastern and western Washington represent

9    skilled workers in plumbing, pipefitting, and HVAC trades. Certain of these members who install

10   gas piping will have less work opportunities because of the Energy Code.

11        27.    Local 32 of UA Plumbers, Pipefitters and HVAC/R Service Technicians is a labor

12   union. Local 32 has approximately 4,000 members. Of these, approximately 400 work on natural

13   gas infrastructure, such as distributing piping on behalf of utilities or contractors working for

14   utilities. Other members install gas pipes in new buildings. Local 32 members who install

15   distribution infrastructure and who install pipes in buildings under construction will see the

16   demand for their work decline because of the Energy Code. The Energy Code will deprive these

17   union members of work. The Energy Code will therefore not only harm Local 32's members. It

18   will also require Local 32 to divert resources from its usual activities to providing these workers

19   with training to pursue new opportunities within their trade.

20        28.    The Washington and Northern Idaho District Council of Laborers is a labor union

21   representing more than 13,000 workers in Washington and northern Idaho. Roughly one quarter

22   of its members work in jobs related to natural gas, including laying main lines, laying distribution

23   pipes, and hooking up gas lines to new buildings. The Laborers' members do jobs such as hand

24   shoveling, driving equipment, and controlling traffic around pipeline projects. The Energy Code

25   will reduce the demand for members' work and cause the Laborers' members to lose jobs. The

26   Energy Code will therefore require the Laborers to divert resources from other activities to provide

27   members training in new jobs.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 8

29.     Plaintiff Citizen Action Defense Fund is a Washington non-profit corporation based in Olympia. It works to protect the economic rights of Washington citizens.

30.     Plaintiff National Propane Gas Association ("NPGA") is a national trade organization representing the U.S. propane industry and approximately 2,400 members, including local Washington companies and co-ops. It has state and regional affiliates across all 50 states. The Energy Code will reduce the number of new buildings built with propane appliances and reduce the business of NPGA's members.

31.     Plaintiff Avista Corporation ("Avista") is a public utility that provides electricity to 402,000 customers and natural gas to 368,000 customers across four northwestern states, including Washington. The Energy Code harms Avista through the direct and permanent loss of would-be customers and threatens to erode Avista's gas customer base through the permanent loss of new customers and existing customers over time. "Avista has communicated with people who have said they would want gas service from Avista if not for the [Energy Code's] Appliance Restrictions. For example, Avista has experience with developers in Spokane County choosing not to extend natural gas service to new homes and developments due to the Appliance Restrictions taking effect." Ex. 1, Robb Koschalk Decl., at ¶ 6. "In addition, where the original developer has chosen not to install the backbone infrastructure for natural gas because of the Appliance Restrictions, it will be cost-prohibitive for a single customer to later extend the gas system to their home or commercial building. As a result, customers who are forced, because of the Appliance Restrictions, to forego natural gas installation in their home or commercial building will not be in a position to change that decision if this Court later determines that those restrictions are invalid." *Id.* at ¶ 7. Furthermore, the high levels of electrification the Energy Code will contribute to rate increases for Avista's electric customers and force the company to devote significant time and monetary resources in upgrading its electric transmission and distribution system. *See, e.g.,* Avista Corporation, *2023 Electric Integrated Resource Plan*, iv (2023) ("A study where Washington electrifies 80% of the natural gas distribution system with high levels of transportation electrification results in 33% higher rates by 2045 due to the incremental resource need and

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

upgrading the transmission and distribution system. Distribution system upgrades alone results in a 4 cent/kWh increase.").

32.     Plaintiff Cascade Natural Gas Corporation ("Cascade") is a public utility that provides natural gas to over 300,000 customers located in smaller, mostly rural communities across Washington and Oregon. Cascade personnel have "had communications with people who have said they would want gas service from Cascade Natural Gas Corporation if not for" the Energy Code's restrictions on gas appliances. Ex. 2, Ted R. McCammant Decl., ¶ 5. Furthermore, "[a]fter the introduction of the Appliance Restrictions, Cascade Natural Gas Corporation received direct feedback from customers that they are specifically not signing extension agreements with Cascade Natural Gas Corporation due to the effects of" the Energy Code's restrictions on gas appliances. *Id.* The loss of new customers meaningfully harms Cascade because "customer growth is a crucial component of the utility business model. Each year, we make significant and necessary investments in our system to ensure safety, reliability, and resiliency. Customer growth helps to ensure that those costs can be spread over a growing customer base and helps to keep costs for all our customers more affordable. By capping a portion of Cascade Natural Gas Corporation's growth, the Appliance Restrictions impede our ability to spread the cost of new investment in maintaining the gas system. That may result in increased rates for existing customers, who would no longer benefit from spreading these costs over an increasing customer base." *Id.* at ¶ 6.

33.     Plaintiff Northwest Natural Gas Company ("NW Natural") is a public utility that provides natural gas distribution services to more than 770,000 customers across the Pacific Northwest, including Washington. NW Natural already "has lost would-be customers as a result of the Appliance Restrictions" and "the Appliance Restrictions are forecasted to erode NW Natural's customer base through the permanent loss of new residential and commercial customers." Ex. 3, John Frankel Decl., ¶ 4. In October 2023 (in anticipation of the November State Building Code Council vote to approve the proposed building energy code), NW Natural updated its residential Meter Set forecast to reflect the Appliance Restrictions. *Id.* at ¶ 5. "The revised forecast reflected a reduction by 50% of new residential gas meters that NW Natural expects to

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 10

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

install in Washington each year over the next eight years (2024 through 2031). The total forecasted lost metered customers for this period was 7,200, or 900 customers per year." *Id.* "Relative to the commercial buildings Meter Set forecast developed in October 2023, [NW Natural] also reduced the number of new commercial gas meters that NW Natural expects to install in Washington by 50% each year over the next eight years. This translates into the loss of 100 customers year, or 800 commercial customers over this 8-year period, as a result of the Appliance Restrictions." *Id.* at ¶ 9. Furthermore, "NW Natural has had communications with tradespeople who have said they would want gas service if not for the Appliance Restrictions." *Id.* at ¶ 6. For example, Westlake Development Group, LLC builds custom homes in NW Natural's Washington service territory. Ex. 4, Nelson Holmberg Decl., ¶ 3. According to Westlake's owner, Gerald R. Rowlett, the company "has been unable to meet" their clients' demands for gas appliance "as a result of the Appliance Restrictions." Ex. 5, Gerald L. Rowlett Decl., ¶ 5. Mr. Rowlett has informed NW Natural, "But for the Appliance Restrictions, we feel our company could be building more homes in the Washington market, but are restricted and unable to fulfill client requests." *Id.* This causes the demand for NW Natural's gas services to be less than it otherwise would be without the Energy Code. In addition to harming NW Natural's financial stability, these new customer losses harm NW Natural's current customers. Each year, NW Natural "make[s] significant and necessary investments in our system to ensure safety, reliability, and resiliency. Customer growth helps to ensure that those costs are spread over a growing customer base, which helps keep costs for all of our customers at an affordable level." Ex. 3, John Frankel Decl., ¶ 4.

34. Kjell Anderson, Jay Arnold, Todd Beyreuther, Justin Bourgault, Daimon Doyle, Tom Handy, Angela Haupt, Roger Heeringa, Matthew Hepner, Craig Holt, Tye Menser, Benjamin Omura, Peter Rieke, and Katy Sheehan (collectively, "Council Defendants") are members of the Washington State Building Code Council, the Washington state agency that establishes building code requirements that must be enforced throughout the state and that adopted the Energy Code at issue. Council Defendants are sued in their official capacities.

35. RCW 19.27.050 mandates that cities and counties, such as Lewis County and

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 11

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

Spokane County, enforce the Energy Code set by Council Defendants because it is part of the State Building Code. *See* RCW 19.27.015(11) (State Building Code includes State Energy Code); *see also*, Ex. 6, Mindy Brooks Decl., ¶ 5 ("[B]y adopting the Appliance Restrictions, the Washington State Building Code Council has mandated Lewis County to enforce the Appliance Restrictions regardless if the County would have adopted differing standards."); Ex. 7, Jordan Neal Decl., ¶ 7 ("Thus, by adopting the Appliance Restrictions, the Washington State Building Code Council has mandated that Spokane County enforce the Appliance Restrictions . . . . Spokane County officials have no discretion to disregard this directive.").

36.     And counties and cities may not "diminish" the "minimum performance standards" established by the State Energy Code. *See* RCW 19.27.040 ("The minimum performance standards of the codes and the objectives enumerated in RCW 19.27.020 shall not be diminished by any county or city amendments."); *see also* RCW 19.27A.015 ("the Washington state energy code for residential buildings shall be the maximum and minimum energy code for residential buildings in each city, town, and county and shall be enforced by each city, town, and county. . . . The Washington state energy code for nonresidential buildings shall be the minimum energy code for nonresidential buildings enforced by each city, town, and county."); RCW 19.27A.020(6)(a) ("[T]he Washington state energy code for residential structures shall preempt the residential energy code of each city, town, and county in the state of Washington."); Ex. 6, Mindy Brooks Decl., at ¶ 6 ("Lewis County would not have enacted heavy restrictions put in place by the State of Washington, yet we are required/forced to enforce the restrictions against those choosing to live and/or do business within the boundaries of Lewis County, Washington."); Ex. 7, Jordan Neal Decl., at ¶ 8 ("Spokane County did not develop and promulgate the Appliance Restrictions and does not have the authority to implement its own less restrictive code.").

37.     Thus, by adopting the Energy Code, the Council Defendants have mandated that counties and cities enforce the Energy Code, a mandate which counties and cities have "no discretion to disregard." *Compare with Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022).

38.     Bob Ferguson is the Attorney General of Washington and is authorized to enforce

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 12

the Energy Code. He is sued in his official capacity. In Washington, "the attorney general has discretionary authority to act in any court in matters of public concern, even without express statutory authorization, provided there is a cognizable common law or statutory cause of action." *State v. City of Sunnyside*, 550 P.3d 31, 41 (Wash. 2024). As such, the Attorney General can act to require cities and counties to enforce the Energy Code mandated by Council Defendants.

## RIPENESS

39.     The claims asserted herein are ripe for review because Plaintiffs challenge the facial validity of the Energy Code, thereby raising a legal question. When a question is "predominantly legal," there is generally no need to await further factual development. *Pac. Gas & Elec. Co. v. State Energy Res. Conservation and Dev. Comm'n*, 461 U.S. 190, 201 (1983).

40.     The Energy Code at issue became effective March 15, 2024.

## FACTUAL ALLEGATIONS

**The Council's Previous Attempt to Prohibit EPCA-Covered Gas Appliances**

41.     The Energy Code is the Council's second attempt to at regulating EPCA-covered gas appliances in contravention to Congress' express ban on doing so.

42.     In 2022, the Council adopted amendments to the Washington State Energy Code designed to prohibit or substantially limit the use of EPCA-covered gas appliances in many instances.

43.     These amendments came in two stages. On April 22, 2022, the Council adopted amendments to the Commercial Provisions of the Energy Code ("Commercial Provisions") restricting the use of EPCA-covered gas appliances in commercial buildings. The amendments as originally adopted had an effective date of July 1, 2023. WSR 22-14-091.

44.     On November 11, 2022, Defendants adopted amendments to the Residential Provisions of the Energy Code ("Residential Provisions") restricting the use of EPCA-covered gas appliances in residential buildings. These amendments as originally adopted also had an effective date of July 1, 2023. WSR 23-02-060.

45.     The Commercial Provisions established a "prescriptive compliance" pathway and

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 13

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1    a "total building performance compliance" pathway. In general, the prescriptive compliance
2    pathway required that each element of a building have a minimum acceptable standard, whereas
3    the performance pathway required modeling the building as a whole to predict energy usage and
4    determine compliance with target figures for site energy use and carbon emissions. Buildings had
5    to comply with one of the two pathways. WSR 22-14-091, Section C401.2.

6        46.    The Commercial Provisions' prescriptive and total building performance
7    compliance pathways generally banned the use of EPCA-covered gas appliances for heating,
8    ventilation, and air conditioning ("HVAC") systems and water heating systems. WSR 22-14-091,
9    Section C403.1.4 ("HVAC heating energy shall not be provided by . . . fossil fuel combustion
10   appliances."); Section C404.2.1 ("Service hot water shall be provided by an electric air-source heat
11   pump water heating (HPWH) system . . . ."); Table C407.2 (incorporating Section C403.1.4 and
12   Section C404.2.1 into the total building performance pathway's mandatory requirements).

13       47.    The Residential Provisions also provided a prescriptive compliance pathway and a
14   total building performance compliance pathway. Buildings had to comply with one of the two
15   pathways. WSR 22-17-149, Section R401.2.

16       48.    The Residential Provisions' prescriptive and total building performance
17   compliance pathways generally banned the use of EPCA-covered gas appliances by requiring that
18   water heating shall be provided by an electric or gas heat pump system. WSR 23-02-060, Section
19   R403.5.7 ("Service hot water in one- and two-family dwellings and multiple single-family
20   dwellings (townhouses) shall be provided by a heat pump system."); Table R405.2(1)
21   (incorporating Section R403.5.7 into the total building performance pathway's mandatory
22   requirements). These provisions banned EPCA-covered gas-fired water heating systems that are
23   not heat pumps, such as conventional tanked gas water heaters, high efficiency condensing tanked
24   water heaters, and tankless/instant water heaters.

25       49.    The Residential Provisions' prescriptive compliance pathway likewise generally
26   banned the use of EPCA-covered gas appliances by requiring that space heating shall be provided
27   by an electric or gas heat pump system. WSR 23-02-060, Section R403.13 ("Space heating shall

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 14

be provided by a heat pump system."). This banned gas-fired space heating systems that are not heat pumps, such as EPCA-covered gas-fired furnaces.

50.     The Washington State Energy Code imposed the above restrictions on EPCA-covered gas appliances in newly constructed buildings; the restrictions also applied to the alterations of or additions to existing buildings. The effective date of the above restrictions was originally going to be July 1, 2023. *See* WSR 22-14-09, WSR 23-02-060.

51.     Although the Council has since repealed the above amendments, they evidence that the Council has an intent to prohibit or substantially restrict EPCA-covered gas appliances—an intent which EPCA plainly preempts.

**Energy Code Amendments After Binding Ninth Circuit *Berkeley* Decision**

52.     On April 17, 2023, the United States Court of Appeals for the Ninth Circuit issued its opinion in *California Restaurant Association v. City of Berkeley*. 65 F.4th 1045 (9th Cir. 2023). The case involved a challenge by a restaurant association to the City of Berkeley's promulgation of an ordinance prohibiting the installation of natural gas piping within all newly constructed buildings. The Ninth Circuit held that EPCA preempts the City of Berkeley's ordinance, which effectively prohibited the use of EPCA-covered gas appliances piping in such buildings. 65 F.4th at 1056. In denying the City of Berkeley's petition for *en banc* review, the Ninth Circuit amended its opinion for clarity, stating, "By its plain text and structure, EPCA's preemption provision also encompasses building codes concerning the energy use of covered products. And thus EPCA preempts Berkeley's building code because it prohibits natural gas piping in new construction buildings from the point of delivery at the gas meter. We thus conclude that EPCA preempts Berkeley's building code's effect against covered products." 89 F.4th at 1098–99.

53.     On May 22, 2023, a lawsuit was filed against the Council and its council members for adopting the 2022 amendments to the Energy Code, alleging that such amendments violated EPCA. *See* Complaint, *Rivera v. Wash. State Bldg. Code Council*, Case No. 1:23-cv-03070 (E.D. Wash.).

54.     On June 7, 2023, the Council delayed the effective date of the rules adopted under

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

the Commercial Provisions and Residential Provisions "to evaluate what, if any, changes are necessary to maintain compliance with [EPCA] given the recent 9th circuit court of appeals ruling on the Berkeley, California ordinance." *See* WSR 23-12-101, WSR 23-12-102.

55.     On November 28, 2023, the Council voted at a special meeting to amend the Energy Code's Commercial Provisions and Residential Provisions and established an effective date of March 15, 2024. *See* WSR 24-03-084, WSR 24-03-085 ("2023 Amendments").

56.     By enacting the 2023 Amendments, the Council Defendants directed their enforcement by local officials.

57.     Despite the Council's attempts to evade EPCA preemption, the amended Energy Code still violates EPCA, as it imposes regulations concerning the energy use and energy efficiency of EPCA-covered appliances that far exceed federal requirements and does not qualify for an exemption from preemption.

**The Washington Energy Code Harms Coalition Members**

58.     Coalition members are suffering and will suffer a variety of harms as a result of the Council's adoption of the Energy Code.

59.     Homeowners, businesses, and residential and commercial builders are prohibited from choosing certain EPCA-covered gas appliances due to the Energy Code, and as a result, these groups are more likely to forego gas service altogether, thus also harming suppliers and service providers.

60.     The Energy Code is already causing harm to homeowners, builders, and suppliers who are being forced to make costly changes to their building and infrastructure plans to account for the Energy Code's restrictions concerning EPCA-covered appliances. Such plans can take anywhere from months to years to finalize, meaning that homeowners and builders must often spend substantial resources planning ahead to meet the requirements of building code provisions.

61.     The Energy Code unnecessarily increases the costs of homes and commercial buildings, as well as ownership and maintenance, by eliminating or restricting effective and available energy appliances for heating water and ambient air.

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

62.     Even the Washington State Building Code Council's own economic analyses of the Energy Code recognizes it penalizes buildings and homes that use fossil fuel appliances for space and water heating because construction costs for these homes and buildings will be higher. *See, e.g.,* Washington State Building Code Council, *Final Cost Benefit Analysis for Possible EPCA Preemption Issues in the 2021 Washington State Energy Code, Commercial Provisions*, 3–4, https://sbcc.wa.gov/sites/default/files/2024-02/CBA_WSEC_C_EPCA.pdf (last visited Aug. 26, 2024), ("Use of the fossil fuel compliance pathway will result in higher construction costs, as the relative inefficiency of fossil fuel equipment is compensated by adding to the required number of additional energy efficiency credits. The existing prescriptive code compliance path remains unchanged, with no cost impact.").

63.     The Energy Code will also impair skilled workers specializing in the installation, maintenance, and repair of gas-powered systems and appliances by depriving them of jobs and their livelihood. Labor organizations representing these workers will lose members.

64.     The Energy Code has caused the Utilities harm through the loss of new customers. Additionally, the Energy Code harms Utilities' existing and future customers by increasing over time the cost of gas service per customer. Absent the Utilities' ability to grow, they will need to maintain the current gas system to ensure safety, reliability, and resiliency based on revenue from their currently existing customers. Costs to maintain the current gas system will be borne by fewer customers, as many customers will not be permitted to replace their heating equipment with EPCA-covered gas appliances in existing construction or to install EPCA-covered gas appliances in new construction.

**The History of Federal Regulation of Appliance Energy Use**

65.     The Energy Code impermissibly regulates the energy use and energy efficiency of gas appliances, which is an area that Congress directed the U.S. Department of Energy ("DOE") to regulate through the adoption of federal energy efficiency standards under EPCA. 42 U.S.C. § 6201 *et seq.*

66.     EPCA was first passed in 1975 to create a comprehensive energy policy to address

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 17

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

the serious economic and national security problems associated with our nation's continued reliance on foreign energy resources.

67.     The original EPCA was designed to "(1) maximize domestic production of energy and provide for strategic storage reserves of crude oil, residual fuel oil and refined petroleum products; (2) . . . minimize the impact of disruptions in energy supplies by providing for emergency standing measures; (3) provide for domestic crude oil prices that will encourage domestic production in a manner consistent with economic recovery; and (4) reduce domestic energy consumption through the operation of specific voluntary and mandatory energy conservation programs." S. Rep. No. 94-516, at 116-17 (1975).

68.     Since 1975, Congress has amended EPCA several times, progressively moving away from a laissez faire approach to appliance efficiency, and towards binding federal energy efficiency standards. Each amendment to EPCA further emphasized the federal government's intent to regulate appliance energy use and efficiency, and further limited states' abilities to set their own standards.

69.     In its original form in 1975, EPCA's provisions regarding consumer appliances focused on requiring labeling of appliances, reasoning that consumers would choose more efficient appliances if they had access to accurate information about efficiency. Thus, the statute required manufacturers to label their appliances and provided that the Secretary of the Federal Energy Administration should utilize energy efficiency standards if the labeling program proved ineffective. The legislative history makes clear Congress' intent at the time: "it is the Committee's hope that voluntary efforts by manufacturers and better consumer information will make energy efficiency standards unnecessary; however, should the labeling program not suffice, energy efficiency standards should be utilized to achieve the goals of the legislation." H.R. Rep. No. 94-340, at 95 (1975).

70.     Originally, EPCA permitted significant state involvement in appliance regulation. It allowed state regulations that differed from the federal regulations if the state regulations were justified by a substantial state or local need, did not interfere with interstate commerce, and were

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 18

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

more stringent than the federal standard.

71.     In 1978, Congress passed a range of statutes known as the National Energy Act
("NEA"), which gave the federal government broader authority over energy policy to ensure
national security, decrease energy consumption, reduce dependency on energy imports, generate
a strategic petroleum reserve, and broadly develop reliable sources of energy for sustained
economic growth. *See* Julia Richardson and Robert Nordhaus, The National Energy Act of 1978,
10 Nat. Res. & Env't 62, 62-63 (1995). President Carter also created the federal DOE in 1977 to
coordinate a federal response to the nation's energy problems.

72.     One of these 1978 statutes passed as part of NEA was the National Energy
Conservation and Policy Act ("NECPA"). NECPA amended the 1975 EPCA. Rather than relying
exclusively on labeling, NECPA required DOE to prescribe minimum energy efficiency standards
for certain products. NECPA also strengthened the preemption provisions in EPCA, allowing state
regulations that were more stringent than federal regulations *only* if the Secretary found there was
a significant state or local interest to justify the state's regulation and the regulation would not
unduly burden interstate commerce.

73.     Despite the NECPA's new requirements, DOE did not initially adopt federal
minimum energy standards. Instead, it "initiated a general policy of granting petitions from States
requesting waivers from preemption. As a result, a system of separate State appliance standards
ha[d] begun to emerge and the trend [was] growing." S. Rep. No. 100-6, at 4 (1987).

74.     In 1987, Congress responded by passing the National Appliance Energy
Conservation Act ("NAECA"). The purpose of the NAECA amendment was "to reduce the
regulatory and economic burdens on the appliance manufacturing industry through the
establishment of national energy conservation standards for major residential appliances." S. Rep.
No. 100-6, at 1 (1987).

75.     As the Senate recognized, varying state standards created "the problem of a
growing patchwork of differing state regulations which would increasingly complicate [appliance
manufacturers'] design, production and marketing plans." S. Rep. No. 100-6, at 4 (1987).

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 19

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1    Similarly, the reports about NAECA in the House of Representatives make clear Congress wanted
2    to "end an era of confusion and uncertainty" for the industry and "protect the appliance industry
3    from having to comply with a patchwork of numerous conflicting State requirements." H.R. Rep.
4    No. 100-11, at 24, 30 (1987).

5         76.    Thus, NAECA contained "two basic provisions:" "[t]he establishment of Federal
6    standards and the preemption of State standards." S. Rep. No. 100-6, at 2 (1987). "In general, these
7    national standards would preempt all State standards." *Id.*

8         77.    After NAECA, federal law provided two routes for a state or local jurisdiction to
9    qualify for an exception to EPCA preemption. First, as mentioned above, DOE can grant a waiver
10   of preemption; but while states can seek permission to establish their own standards, "achieving
11   the waiver is difficult." S. Rep. No. 100-6, at 2 (1987). It would require showing an unusual and
12   compelling local interest, and the waiver cannot be granted if the "State regulation is likely to
13   result in the unavailability in the State of a product type or of products of a particular performance
14   class, such as frost-free refrigerators." *Id.*

15        78.    The second option to avoid preemption concerns consumer appliances, and it
16   applies only to performance-based building codes for new construction. 42 U.S.C. §6297(f). To
17   qualify for this exception, the state code must meet a strict seven-part test, enumerated in 42 U.S.C.
18   § 6297(f)(3). This exception does not apply to renovations. The House Report regarding NAECA
19   explains that this exception is intended to "prevent[] state building codes from being used as a
20   means of setting mandatory State appliance standards in excess of Federal Standards." H.R. Rep.
21   100-11, at 26. In addition, flexibility under this exception was "limited" to "ensure that
22   performance-based codes cannot expressly or effectively require the installation of covered
23   products whose efficiencies exceed . . . the applicable Federal standard . . . ." *Id.* Congress intended
24   to allow only "performance-based codes" that "authorize builders to adjust or trade off the
25   efficiencies of the various building components so long as an energy objective is met." S. Rep.
26   No. 100-6, at 10–11. To avoid preemption, among other requirements, a state building code
27   provision must "establish 'credits' for various conservation measures, to provide, to the greatest

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 20

degree possible, one-for-one equivalency between the energy efficiency of these differing measures and the credits provided for such energy efficiency." *Id.* at 11. The Senate chose this requirement "to assure that the credits for exceeding Federal standards are even-handed and are not unfairly weighted resulting in undue pressure on builders to install covered products exceeding Federal standards." *Id.*

79.     In 1992, Congress amended EPCA once more through the Energy Policy Act of 1992. That amendment expanded the federal appliance program to include energy efficiency standards for industrial appliances as well as consumer appliances. Likewise, a pathway was added for a state building code regulation for new construction concerning industrial appliances to be exempt from preemption: the regulation must "not require that the energy efficiency of such product exceed the applicable minimum energy efficiency requirement in amended ASHRAE/IES Standard 90.1." 42 U.S.C. § 6316(b)(2)(B)(i).

80.     Thus, in its present form, EPCA covers both consumer and industrial appliances, and it sets federal standards for the energy use and efficiency of those products.

**EPCA Expressly Preempts State Regulation of Consumer and Industrial Appliances**

81.     EPCA expressly preempts state regulation of appliance energy use and efficiency, with only narrow exemptions. The statute sets out specific requirements that must be met to qualify for one of these narrow exemptions. In other words, Congress meant to preempt the entire field of energy use and energy efficiency of covered appliances, leaving DOE to set nationwide standards and establishing detailed conditions that state regulations must meet to avoid preemption.

82.     EPCA's energy use and efficiency regulations apply to "covered products." EPCA defines "covered products" for consumers as the types of products listed in Section 6292 of the Act. 42 U.S.C. § 6291(2). Section 6292 in turn lists 19 types of defined covered products, including "water heaters" and "furnaces." *Id.* § 6292(a). Section 6295 sets out the energy conservation standards for these covered products.

83.     EPCA defines a "consumer product" as one "(A) which in operation consumes, or is designed to consume, energy . . . and (B) which, to any significant extent, is distributed in

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 21

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

commerce for personal use or consumption by individuals[.]" *Id.* § 6291(1). The definition of a consumer product is "without regard to whether such article of such type is in fact distributed in commerce for personal use or consumption by an individual . . . ." *Id.* In other words, products which are regularly sold to individuals may be classified as consumer products, regardless of whether a particular *unit* of the product has been purchased by an individual or by a business. In general, consumer products can be used in residential or commercial buildings.

84.     Some of the appliances regulated under the Energy Code are considered "consumer products."

85.     The express preemption in EPCA's consumer product regulations states that as of "the effective date of an energy conservation standard established in or prescribed . . . for any covered product, no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product unless the regulation" falls within certain enumerated exceptions. *Id.* § 6297(c).

86.     "Energy use" is defined as "the quantity of energy directly consumed by a consumer product at point of use . . . ." *Id.* § 6291(4). "Energy" is defined as "electricity, or fossil fuels." *Id.* § 6291(3).

87.     Thus, EPCA's consumer standards preempt state regulations concerning the quantity of electricity or fossil fuels consumed by appliances (including water heaters, furnaces, and boilers) which are regularly sold to individuals.

88.     Similarly, EPCA also governs the energy efficiency and energy use of certain industrial appliances. *Id.* § 6311-17. In general, industrial appliances can be used in residential or commercial buildings.

89.     Like EPCA's consumer standards, the industrial standards explicitly "supersede any State or local regulation concerning the energy efficiency or energy use of a product for which a standard is prescribed or established" in the federal statute. *Id.* § 6316(b)(2)(A).

90.     "Energy use," for the purposes of the industrial standards, is defined as "the quantity of energy directly consumed by an article of industrial equipment at the point of use. . . ."

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 22

1  *Id.* § 6311(4). The definition of "energy" refers back to the definition in the consumer standards

2  in Section 6291: energy is "electricity, or fossil fuels." *Id.* §§ 6311(7), 6291(3).

3       91.    EPCA also prescribes standards for various types of "industrial equipment,"

4  including "commercial package air conditioning and heating equipment," "warm air furnaces,"

5  and several types of water heaters. *Id.* § 6311(2)(B). Those products are "industrial" rather than

6  "consumer" if they are "distributed in commerce for industrial or commercial use" to "any

7  significant extent," and do not qualify as consumer products under that portion of the statute. *Id.*

8  § 6311(2)(A).

9       92.    Thus, EPCA's standards for consumer products and industrial equipment preempt

10  state and local regulations concerning the energy use or energy efficiency of heating equipment,

11  water heaters, and furnaces which are regularly sold for residential, industrial, or commercial use.

12  **EPCA Preempts the Energy Code**

13      93.    As a result, EPCA preempts the Energy Code, because the Energy Code concerns

14  the energy use and energy efficiency of EPCA-covered gas space and water heating appliances

15  which are regularly sold for residential, commercial, or industrial use.

16      94.    Both the Residential Provisions and Commercial Provisions state as their intent:

17  "This code shall regulate the design and construction of buildings for the effective use and

18  conservation of energy over the useful life of each building." WAC 51-11R-10100, Section

19  R101.3; WAC 51-11C-10100, Section C101.3. In doing so, the Energy Code regulates not only

20  the building structure itself, but also the energy use and energy efficiency of EPCA-covered gas

21  appliances within buildings.

22  *Consumer Appliances*

23      95.    For consumer appliances, a state or local regulation can escape preemption if it "is

24  in a building code for new construction" and meets seven specific requirements. 42 U.S.C.

25  § 6297(c)(3), (f)(3). The regulation must meet *all seven* of these requirements to be exempt from

26  the broad preemptive scope of EPCA. *Id.*

27      96.    The seven requirements, taken together, are intended to exempt from preemption

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 23

1  only performance-based codes that give builders a choice about how to meet overall efficiency or
2  conservation objectives for newly constructed buildings, ensuring an even-handed policy that does
3  not pressure builders to choose one type of appliance over another. *See* S. Rep. 100-6, at 10–11
4  (1987). In general, performance-based energy efficiency codes establish overall energy efficiency
5  or conservation objectives for a building and specify different ways in which a builder or building
6  owner can meet the objective.

7        97.    The provisions of the Energy Code that apply to the replacement of covered
8  appliances in *existing* construction are not exempt from preemption, because the exemption is
9  expressly limited to new construction. 42 U.S.C. § 6297(c)(3), (f)(3); *see, e.g.,* WAC 51-11C-
10  50300, Section C503.4.6 ("Where a mechanical heating appliance is added or replaced, the added
11  or replaced appliance shall comply with Section C401.3, Section C403.1.4, or with an alternate
12  compliance option in Table C503.4.6."); WAC 51-11C-50300, Section C503.5 ("All new service
13  water heating systems, equipment, and components of existing systems that are altered or replaced
14  shall comply with Section C407 or Sections C404, C408.3, C409.5, and C501.6. Additions or
15  alterations shall not be made to an existing service water heating system that will cause the existing
16  system to become out of compliance."); WAC 51-11R-50200, Section R502.2 ("Any
17  nonconditioned or low-energy space that is altered to become *conditioned* space shall be required
18  to be brought into full compliance with this code."). Thus, these provisions are preempted.

19        98.    The provisions of the Energy Code that apply to consumer appliances in *new*
20  construction are not exempt from preemption because they fail to meet all seven requirements
21  listed in Section 6297(f)(3).

22        99.    For example, **EPCA Section 6297(f)(3)(D)** requires that baseline building designs
23  be "based on the efficiency level for such covered product which meets but does not exceed"
24  EPCA's energy efficiency standards. 42 U.S.C. § 6297(f)(3)(D).

25        100.   WAC 51-11R-40551, Table R405.4.2(1) violates EPCA Section 6297(f)(3)(D).
26  Table R405.4.2(1) specifies the standard reference designs under the Energy Code's total building
27  performance pathway for residential buildings. For a residential building's heating system, the

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 24

table specifies an air source heat pump as the standard reference design. For a residential building's service water heating system, the table specifies a heat pump water heating system as the standard reference design. These baseline building designs exceed the efficiency levels of EPCA-covered products such as gas-fired furnaces or water heaters.

101.    Likewise, WAC 51-11C-80500, Table D602.11 also plainly violates EPCA Section 6297(f)(3)(D). Table D602.11 specifies the standard reference design under the Energy Code's total building performance pathway for commercial buildings. For a commercial building's HVAC system, the table specifies a heat pump as the standard reference design. This baseline building design exceeds the efficiency level of EPCA-covered products such as gas-fired furnaces.

102.    **EPCA Section 6297(f)(3)(C)** requires that the "energy consumption or conservation objective allowed by the code for installing covered products having energy efficiencies exceeding such" EPCA consumer product energy efficiency conservation standards be based "on a one-for-one equivalent energy use or equivalent cost basis." 42 U.S.C. § 6297(f)(3)(C).

103.    WAC 51-11C-40314, Section C403.1.1 violates EPCA Section 6297(f)(3)(C). Section C403.1.1 requires that certain HVAC systems "serving office (including medical office), retail, library and education occupancies and buildings . . . and the dwelling units and residential common areas within Group R-2 multi-family buildings" have an "HVAC total system performance ratio" greater than or equal to the standard reference design, as calculated according to Appendix D, Calculation of HVAC Total System Performance Ratio. Appendix D calculates the standard reference design according to a formula utilizing carbon emissions factors that vary based upon fuel type. This fails to base the "energy consumption or conservation objective allowed by the code for installing covered products having energy efficiencies exceeding [EPCA consumer product energy efficiency conservation standards] on a one-for-one equivalent energy use or equivalent cost basis." *See* 42 U.S.C. § 6297(f)(3)(C).

104.    Similarly, WAC 51-11R-40610, Section R406.2 violates EPCA Section 6297(f)(3)(C). Section R406.2 establishes an Energy Equalization Credits table that assigns an

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 25

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

increased number of credits to heat pump and electric resistance appliances over EPCA-covered gas appliances meeting minimum federal efficiency standards. Section 406.2 states that the credits are based on "the equivalent carbon emissions of the options specified," rather than on equivalent energy use or equivalent cost. This fails to base the "energy consumption or conservation objective allowed by the code for installing covered products having energy efficiencies exceeding such" EPCA consumer product energy efficiency conservation standards "on a one-for-one equivalent energy use or equivalent cost basis." *See* 42 U.S.C. § 6297(f)(3)(C).

105.    **EPCA Section 6297(f)(3)(B)** requires that the state code at issue must "not require that the covered product have an energy efficiency exceeding" federal efficiency standards, absent a state waiver. *Id.* § 6297(f)(3)(B). The Energy Code does not meet this requirement, because it prohibits in many instances the use of EPCA-covered gas appliances that meet federal energy efficiency standards.

106.    For example, WAC 51-11C-40314, Section C403.1.4 prohibits the use of EPCA-covered gas appliances for space heating, stating, "HVAC heating energy shall not be provided by electric resistance or fossil fuel combustion appliances." This violates EPCA Section 6297(f)(3)(B). Additionally, WAC 51-11C-40314, Section C403.1.4 is a prescriptive compliance pathway rather than a performance-based pathway, meaning it is not eligible for the exemption to preemption under 42 U.S.C. § 6297(f)(3) in any event, as the exemption only applies to performance-based pathways.

107.    Similarly, WAC 51-11C-40402, Section C404.2.1 prohibits the use of EPCA-covered gas appliances for service water heating, stating, "Service hot water shall be provided by an electric air-source heat pump water heating (HPWH) system meeting the requirements of this section." This likewise violates EPCA Section 6297(f)(3)(B). Additionally, WAC 51-11C-40402, Section C404.2.1 is a prescriptive compliance pathway rather than a performance-based pathway, meaning it is not eligible for the exemption to preemption under 42 U.S.C. § 6297(f)(3) in any event, as the exemption only applies to performance-based pathways.

108.    Furthermore, WAC 51-11C-40402, Section C404.2.1.1 mandates that "[t]he

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

primary heat pump service water heating system shall be sized to deliver no less than 50 percent of the calculated demand for service hot water production during the peak demand period." This prevents EPCA-covered gas appliances from meeting 100 percent of the calculated demand for service hot water production during the peak demand period, which violates EPCA Section 6297(f)(3)(B). Additionally, WAC 51-11C-40402, Section C404.2.1.1 is a prescriptive compliance pathway rather than a performance-based pathway, meaning it is not eligible for the exemption to preemption under 42 U.S.C. § 6297(f)(3) in any event, as the exemption only applies to performance-based pathways.

109.    Likewise, WAC 51-11C-40100, Sections C401.3 through C401.3.6 outlines the self-titled "fossil fuel compliance path" under the Energy Code's Commercial Provisions. Even though this pathway proclaims to allow gas appliances, its allocation of energy credits to many EPCA-covered gas appliances is so disparate as to violate EPCA Section 6297(f)(3)(B) because if products at the federal efficiency standard are used, a building owner must make other modifications to the home to increase its energy efficiency. *See Bldg. Indus. Ass'n of Wash. v. Wash. State Bldg. Code Council*, 683 F.3d 1144, 1152 (9th Cir. 2012) (observing that a court granted a preliminary injunction based on EPCA against a building code that "imposed costs, as a matter of law, on builders who installed certain covered products meeting federal standards, by requiring the builder to install additional products that would compensate for not using a higher efficiency product").

110.    Lastly, **EPCA Section 6297(f)(3)(A)** requires the code to permit "a builder to meet an energy consumption or conservation objective for a building by selecting items whose combined energy efficiencies meet the objective." 42 U.S.C. § 6297 (f)(3)(A). Relatedly, **EPCA Section 6297(f)(3)(F)** requires that this objective be "specified in terms of an estimated total consumption of energy (which may be calculated from energy loss- or gain-based codes) utilizing an equivalent amount of energy (which may be specified in units of energy or its equivalent cost)." *Id.* § 6297(f)(3)(F). And **EPCA Section 6297(f)(3)(G)** requires the "estimated energy use of any covered product permitted or required in the code, or used in calculating the objective, is

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 27

determined using the applicable test procedures prescribed under section 6293 of [EPCA], except that the State may permit the estimated energy use calculation to be adjusted to reflect the conditions of the areas where the code is being applied if such adjustment is based on the use of the applicable test procedures prescribed under section 6293 of [EPCA] or other technically accurate documented procedure." *Id.* § 6297(f)(3)(G).

111.    The "fossil fuel compliance path" fails to meet EPCA Sections 6297(f)(3)(A), (F), and (G), including but not limited to because the pathway does not specify an energy consumption or conservation objective, nor does it use specified test procedures to estimate the energy use of covered products used in calculating that objective.

***Industrial Appliances***

112.    Similar to the consumer product standards, EPCA contains only limited exceptions to the default rule of preemption of state regulations concerning the energy use or efficiency of industrial appliances. 42 U.S.C. § 6316(b)(2)(B). To avoid preemption, a state building code regulation for new construction must "not require that the energy efficiency of such product exceed the applicable minimum energy efficiency requirement in amended ASHRAE/IES Standard 90.1" *Id.* § 6316(b)(2)(B)(i).

113.    Like the EPCA preemption exemption for consumer appliances, the preemption exemption for industrial appliances only applies to new construction. Where Energy Code attempts to impose requirements concerning the energy use or energy efficiency of EPCA-covered appliances that apply to appliance replacements or alterations of existing buildings, EPCA provides no exemption from preemption, and the Energy Code is thus preempted. *See, e.g.,* WAC 51-11C-50300, Section C503.4.6; WAC 51-11C-50300, Section C503.5.

114.    The Energy Code does not meet the requirement for an exemption to preemption under 42 U.S.C. § 6316(b)(2)(B), because in many instances the Energy Code bans EPCA-covered industrial appliances, even when they meet the efficiency standards in ASHRAE/IES Standard 90.1. *See, e.g.,* WAC 51-11C-40314, Section C.403.1.4 (banning EPCA-covered gas appliances for space heating); WAC 51-11C-40402, Section C404.2.1 (banning EPCA-covered gas

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 28

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1  appliances for primary water heating); WAC 51-11C-40100, Sections C401.3 through C401.3.6

2  ("fossil fuel compliance path").

3      115.   On information and belief, Washington has not applied for a waiver from EPCA

4  preemption from the U.S. Secretary of Energy, as would be required for an exemption under

5  42 U.S.C. § 6297(d). Even if Washington did make such an application, it could not lawfully obtain

6  such a waiver. EPCA prohibits the Secretary from granting a waiver where, as is the case here,

7  "the State regulation is likely to result in the unavailability in the State of any covered product type

8  (or class) of performance characteristics (including reliability), features, sizes, capacities, and

9  volumes that are substantially the same as those generally available in the State at the time of the"

10  waiver. 42 U.S.C. § 6297(d)(4).

11  **The Preempted Provisions of the Energy Code Are Not Severable**

12      116.   "To determine whether an invalid portion or aspect of a regulation is severable,"

13  Washington courts "ask (1) whether the authorized and unauthorized portions of the regulation are

14  so intertwined that the agency would not have believably promulgated one without the other and

15  (2) whether the invalid portion is so intimately connected with the purpose of the regulation as to

16  make the severed regulation useless to advance the purpose of the statute under which it is

17  promulgated." *Ass'n of Wash. Bus. v. Wash. State Dep't of Ecology*, 455 P.3d 1126, 1135 (Wash.

18  2020).

19      117.   Here, the challenged Energy Code provisions are fundamental to the Energy Code

20  as a whole. As such, the preempted provisions of the Energy Code are so intertwined with other

21  provisions of the Code such that the Council would not have believably promulgated the

22  preempted provisions without the other provisions, and the preempted provisions are so intimately

23  connected with the purpose of the Energy Code as to make severed regulation useless to advance

24  the purpose of the statute under which it was promulgated.

25

26

27

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 29

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

## CAUSE OF ACTION

### COUNT ONE: FEDERAL PREEMPTION BY THE ENERGY POLICY AND CONSERVATION ACT

118.    Plaintiffs re-allege the preceding paragraphs as though set forth fully herein.

119.    The Energy Code concerns the energy use and energy efficiency of appliances in buildings, including consumer and industrial appliances covered by EPCA, and is not exempt from preemption.

120.    On information and belief, Washington has not applied for a waiver from the U.S. Secretary of Energy to be exempt from EPCA preemption, and it cannot meet the requirements for a waiver to be granted in the first place.

121.    The Energy Code restrictions on EPCA-covered gas appliances in new construction do not meet EPCA's requirements to be exempt from preemption.

122.    The Energy Code's restrictions on EPCA-covered gas appliances for existing buildings are not eligible for an exemption from preemption, as any applicable exemptions only apply to new construction.

123.    The Energy Code is therefore preempted by the federal EPCA.

124.    There is no set of circumstances under which the Energy Code would be valid.

125.    Therefore, by adopting the Energy Code, thereby directed that it be enforced, the Defendants are committing ongoing violations of federal law.

126.    The preempted Energy Code provisions are not severable under Washington law from the rest of the Energy Code.

127.    Plaintiffs accordingly request that the Court declare that the Energy Code is preempted by EPCA and enjoin Defendants from enforcing the amended Energy Code in its entirety.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

1.    For a declaratory judgment, pursuant to 28 U.S.C. § 2201(a) and § 1331, that the

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 30

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1    Energy Code is preempted by federal law because it concerns the energy use and energy efficiency

2    of appliances covered by EPCA and is therefore void and unenforceable;

3          2.      For a permanent injunction enjoining the effectiveness of the Energy Code and

4    prohibiting Defendants from maintaining or enforcing the Energy Code or substantially similar

5    preempted provisions as part of the Washington State Energy Code;

6          3.      For costs of this suit, including reasonable attorney's fees; and

7          4.      For such other and further relief as the Court may deem just and proper.

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 31

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DATED: August 30, 2024

LANE POWELL PC

By:   *s/ Callie A. Castillo*
Callie A. Castillo, WSBA No. 38214

By:   *s/ Devon J. McCurdy*
Devon J. McCurdy, WSBA No. 52663
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, Washington 98111-9402
Telephone:  206.223.7000
castilloc@lanepowell.com
mccurdyd@lanepowell.com

*Counsel for the Homeowners, Builders, and Suppliers, and Unions*

SNELL & WILMER L.L.P.

By:   *s/ Clifford S. Davidson*
Clifford S. Davidson, WSBA No. 48313
Amit D. Ranade, WSBA No. 34878
Mallory L. B. Satre , WSBA No. 50194
SNELL & WILMER L.L.P.
600 University Street, Suite 310
Seattle, WA 98101
(206) 741-1402
csdavidson@swlaw.com
aranade@swlaw.com
msatre@swlaw.com

BAKER BOTTS L.L.P.
Megan H. Berge (DC Bar No. 98371)
Scott Novak (DC Bar No. 1736274)
700 K Street NW
Washington, D.C. 20001
Telephone:  202.639.1308
megan.berge@bakerbotts.com
scott.novak@bakerbotts.com
*Counsel for the Utilities*

FIRST AMENDED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF - 32