The Honorable Kymberly K. Evanson

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| JAMON RIVIERA, et al., | NO. 2:24-cv-00677-KKE |
| Plaintiffs, | DEFENDANTS' MOTION TO DISMISS |
| v. | NOTE ON MOTION CALENDAR: OCTOBER 11, 2024 |
| KJELL ANDERSON, et al., | |
| Defendants. | |

## I.      INTRODUCTION

This case was not properly brought in federal court and should be dismissed under Federal Rule of Civil Procedure 12(b)(1). It is axiomatic that the Eleventh Amendment prevents private parties from suing a State, including its agencies, in federal court absent waiver or consent. And a case against State officials does not belong in federal court when those officials have no role in enforcing the challenged law. Here, however, Plaintiffs—individuals, businesses, trade associations, and utility companies interested in using natural gas in new residential and commercial construction—filed suit against each individual member of the Washington State Building Code Council (Council), and Washington Attorney General Bob Ferguson (the AG), in their official capacities. Plaintiffs argue that the Energy Codes, which encourage (but do not require) the use of heat pumps in new construction, are preempted by the Energy Policy and Conservation Act and Defendants should be enjoined from enforcing them.

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia. WA 98504-0111
(360) 709-6470

1   But Defendants do not enforce the challenged Codes and Plaintiffs' federal lawsuit is
2   therefore barred by the Eleventh Amendment. The Council members and the AG lack a "fairly
3   direct" connection to the enforcement of the Codes, which means Plaintiffs cannot avail
4   themselves of the narrow exception to the State's Eleventh Amendment immunity under *Ex parte*
5   *Young*. Instead, Washington law grants enforcement authority over the Codes to local officials,
6   whereas the Council is the body that writes and passes those Codes. A plaintiff who disagrees
7   with a criminal law cannot sue each individual state legislator; criminal laws are enforced by
8   county officials. So too here. Nor does the AG enforce building codes. Although the AG is the
9   chief law enforcement officer of the State, the building codes are one of many areas where the
10  authority to enforce is reserved solely for cities and counties, over which the State has no
11  supervisory or directive power.

12      This case should also be dismissed for the separate, but related, reason that Plaintiffs lack
13  standing under Article III. Plaintiffs have not alleged actual or imminent injury from the
14  challenged Codes; instead, their alleged injuries are speculative and rely more on market trends
15  than any action by the Council or the AG. Moreover, Plaintiffs fail to show traceability or
16  redressability—inquiries closely related to the *Ex parte Young* analysis—because Plaintiffs'
17  alleged harms are not fairly traceable to the Council members' role in enacting the Codes or to
18  the AG, who has no role relating to the Codes. Nor would the injunctive or declaratory relief
19  sought here likely redress Plaintiffs' alleged harm; any order by this Court would not be binding
20  on the local officials who enforce the Codes and, to the extent Plaintiffs ask this Court to dictate
21  how the Council rewrites the Codes, would violate the Tenth Amendment's anticommandeering
22  principles. The Court should dismiss this case for lack of jurisdiction under Federal Rule of Civil
23  Procedure 12(b)(1).

24

25

26

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE                                2                  ATTORNEY GENERAL OF WASHINGTON
                                                                        Complex Litigation Division
                                                                        7141 Cleanwater Dr SW
                                                                        PO Box 40111
                                                                        Olympia, WA 98504-0111
                                                                        (360) 709-6470

## II.    BACKGROUND

### A.    The State Building Code Council Establishes Minimum Building Code Requirements and Local Officials Enforce those Requirements

As Washington's Legislature has found, "energy efficiency is the cheapest, quickest, and cleanest way to meet rising energy needs, confront climate change, and boost our economy." RCW 19.27A.130. To meet those goals and to ensure the health, safety, and welfare of its residents, Washington, like most other states, has adopted a statewide building code. Washington's code is promulgated by the State Building Code Council, a quasi-legislative agency with members representing a broad range of stakeholder interests. *See* RCW 19.27.031, .070, .074, .020; WAC 51-04-010. The Council establishes the minimum statewide building, residential, mechanical, fire, plumbing, and energy code requirements; relevant here are the Energy Codes. The Council has no enforcement authority. It cannot approve or deny building code applications, nor does it enforce the Codes. Dkt. # 43 at p. 1 ¶ 3.

Once the Council has voted on and approved codes, Washington law provides that local building code officials in cities, counties, and other local governments are responsible for approving building permit applications and enforcing the Codes. RCW 19.27.050; *see, e.g.*, RCW 35.22.280(24) (listing as a duty of first-class cities regulation of the manner in which buildings are constructed and maintained).

### B.    The Council Adopts and Amends Rules to Meet the Washington Legislature's Mandate to Improve the Energy Efficiency of New Construction

The Washington Legislature has set a goal of building zero fossil-fuel greenhouse gas emission homes and buildings by 2031, *see* RCW 19.27A.020(2)(a), and has required the Council to adopt Energy Codes that serve the Legislature's energy consumption goals, *see* RCW 19.27A.160(2). To meet these goals, in late 2022 and early 2023, the Council amended the Energy Codes to generally require, albeit with multiple exceptions, the installation of heat pump heating, ventilation, and air condition (HVAC) appliances and heat pump water heaters in

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    new commercial and residential buildings, effective July 1, 2023. 22-14 Wash. Reg. 091

2    (July 1, 2022) §§ 403.1.4, 404.2.1; 23-02 Wash. Reg. 060 (Jan. 3, 2023) §§ 403.5.7, 403.13.

3        The U.S. Court of Appeals for the Ninth Circuit then issued its ruling in *California*

4    *Restaurant Association v. City of Berkeley*, 65 F.4th 1045 (9th Cir. 2023), *amended on rehearing*

5    *at* 89 F.4th 1094 (9th Cir. 2024), holding that the Energy Policy and Conservation Act (EPCA)

6    preempted a California city ordinance that generally prohibited installation of natural gas piping

7    in newly constructed buildings.

8        Following the Ninth Circuit's ruling, the Council decided to delay implementation of its

9    Energy Code amendments "to evaluate what, if any changes may be necessary . . . to maintain

10   compliance with [EPCA] given the recent Ninth Circuit Court of Appeals ruling[.]" *See* 23-12

11   Wash. Reg. (June 7, 2023) §§ 101, 102, 103, 104, 106, 107, 109, 110; Dkt. # 43 at p. 3, 4 ¶¶ 11,

12   15. The Council then engaged in rulemaking to amend the Energy Code in light of the Ninth

13   Circuit's decision. Dkt. # 43 at pp. 3–4 ¶¶ 12–14.

14       The amended Codes went into effect on March 15, 2024, and are currently being enforced

15   by local code officials. Dkt. # 43 at p. 4 ¶ 16. The Codes encourage, but do not require, heat

16   pump space and water heaters in new residential and commercial construction. The Codes

17   provide multiple performance pathways for using natural gas appliances in new construction that

18   still comply with the Codes. *See* WAC § 51-11R-40621; WAC § 51-11C-40620.[1]

19   **C.    Plaintiffs' Lawsuit**

20       Plaintiffs filed their lawsuit on May 15, 2024, two months after the Energy Codes went

21   into effect, against the individual Council members in their official capacities and against the

22   AG in his official capacity. Plaintiffs argue that the Energy Codes are preempted by EPCA and

23   that they do not fit into the statutory exemption from preemption. Dkt # 1 at pp. 24–25 ¶¶ 116–

---

24   [1] Initiative 2066 will appear on the ballot in the November 2024 general election. If passed, I-2066 would,

25   among other things, prohibit the Council and local authorities from prohibiting, penalizing, or discouraging the use
     of gas for heating or uses related to any appliance or equipment, in any building. *See* Washington Secretary of State,
     *Initiative Measure No. 2066*,    https://www2.sos.wa.gov/_assets/elections/initiatives/finaltext_3177.pdf.    (last

26   accessed Sept. 13, 2024).

DEFENDANTS' MOTION TO DISMISS                    4
NO. 2:24-cv-00677-KKE

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

122. They seek a declaratory judgment that the Energy Codes are preempted and a permanent injunction enjoining the Energy Codes and prohibiting Defendants from maintaining the Codes "or substantially similar preempted provisions" as part of the Codes. On July 10, 2024, Defendants moved to dismiss, arguing Eleventh Amendment immunity and lack of standing. On August 30, 2024, in lieu of responding to Defendants' motion, Plaintiffs filed their First Amended Complaint (FAC). Dkt. # 47.

### III.     LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(1), a complaint must be dismissed if its allegations "are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Federal courts presume that they lack jurisdiction "unless 'the contrary appears affirmatively from the record.'" *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 (1986). Thus, the plaintiff bears the burden to establish the court's jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010); *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126 (9th Cir. 2009). Eleventh Amendment immunity is "'quasi-jurisdictional[,]'" and may be raised under Rule 12(b)(1). *Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015).

A Rule 12(b)(1) motion may challenge the existence of subject matter jurisdiction in two ways. First, a "facial attack" asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. *Safe Air*, 373 F.3d at 1039. In analyzing a facial attack, the court confines its analysis to the allegations in the complaint, documents attached to or referenced in the complaint, and judicially noticeable facts, taking all allegations of fact as true and construing them in the light most favorable to the plaintiff. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009) (per curiam). Second, a "factual attack" disputes "the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air*, 373 F.3d at 1039. In a factual attack, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment[,]" and it "need not

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1  presume the truthfulness of the plaintiff's allegations." *Id.* If the jurisdictional issue is separable

2  from the case's merits, the court may consider the evidence presented and resolve factual

3  disputes when necessary for the jurisdictional analysis. *AAMC v. United States*, 217 F.3d 770,

4  778 (9th Cir. 2000).

5        This motion alleges a factual challenge to jurisdiction because it challenges the truth of

6  certain allegations in the Complaint. *Safe Air*, 373 F.3d at 1039. In particular, the Complaint

7  alleges the individual members of the Council "mandated" the enforcement of the Energy Codes

8  by local officials. Dkt. # 47 at pp. 11-12 ¶ 35. It also alleges that the AG "is authorized to enforce

9  the Energy Code." Dkt. # 47 at pp. 12-13 ¶ 38. Neither of these allegations are true. Accordingly,

10  the Court may consider evidence beyond the Complaint, including the Declaration of Dustin

11  Curb in Support of Defendants' Motion to Dismiss, filed as Docket # 43 with the Defendant's

12  first Motion to Dismiss, Dkt. # 42, and need not presume the truthfulness of Plaintiffs'

13  allegations. *See Safe Air*, 373 F.3d at 1039.

14                                       **IV.   ARGUMENT**

15        The Court should dismiss this case for two distinct but related reasons. First, this case is

16  barred by the Eleventh Amendment because it is a case against the State, and the *Ex parte Young*

17  exception does not apply because the individual Council members and the AG lack a "fairly

18  direct" connection to enforcement of the Codes. On that basis alone, the case must be dismissed.

19  Second, Plaintiffs cannot satisfy the requirements of Article III standing. The *Ex parte Young*

20  inquiry is closely related to the redressability and traceability analysis for standing purposes.

21  Here, Plaintiffs' alleged injuries—themselves overly speculative and attenuated—cannot be

22  traced to the Council members or the AG, who do not enforce the Energy Codes, and their

23  requested relief would not redress their claimed harms.

24        Accordingly, this Court lacks jurisdiction and should dismiss this case.

25  **A.    The Eleventh Amendment Bars Plaintiffs' Suit**

26        Plaintiffs' case must be dismissed because the Eleventh Amendment bars suits against

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    the State in federal court, and no Defendant has enforcement authority such that the *Ex Parte*

2    *Young* exception would apply.

3         It is well established that "an unconsenting State is immune from suits brought in federal

4    courts by her own citizens as well as by citizens of another state." *Pennhurst State Sch. & Hosp.*

5    *v. Halderman*, 465 U.S. 89, 100 (1984) (quoting *Employees of Dep't of Pub. Health & Welfare,*

6    *Missouri v. Dep't of Pub. Health & Welfare, Missouri*, 411 U.S. 279, 280 (1973)). Thus, "[i]t is

7    clear, of course, that in the absence of consent a suit in which the State or one of its agencies or

8    departments is named as the defendant is proscribed by the Eleventh Amendment." *Id.* In fact,

9    "federal [court] jurisdiction over suits against unconsenting States 'was not contemplated by the

10   Constitution when establishing the judicial power of the United States.'" *Id.* at 98 (quoting *Hans*

11   *v. Louisiana*, 134 U.S. 1, 15 (1890)). Washington State has not waived its sovereign immunity

12   from suit in federal court. *See Rains v. State*, 674 P.2d 165, 170 (1983) ("[T]he State cannot be

13   sued in federal court because of the Eleventh Amendment."); *Micomonaco v. State of Wash.*, 45

14   F.3d 316, 320 n.2 (9th Cir. 1995).[2]

15        This immunity extends to suits against a State's agencies for all types of relief. *Krainski*

16   *v. Nevada ex rel. Bd. of Regents of Nevada System of Higher Educ.*, 616 F.3d 963, 976 (9th Cir.

17   2010); *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999) (holding that the Eleventh

18   Amendment bars suits against a state's agency, and an action against an agency official in their

19   official capacity is a suit against the state itself). As discussed below, the Council is an agency

20   of the State for purposes of the Eleventh Amendment and thus may not be sued in federal court.

21        Plaintiffs' decision to sue each individual Council member in their official capacity and

22   the AG in his official capacity does not alter this analysis. The Eleventh Amendment bars a suit

23   _____

24        [2] The mere fact that Plaintiffs here have alleged a federal question—preemption—does not change the
     Eleventh Amendment analysis. There is no presumption that state courts cannot competently resolve federal
25   questions. Such a presumption would "run counter to [the] basic principles of federalism." *Coeur d'Alene Tribe of*
     *Idaho*, 521 U.S. at 275 ("It would be error coupled with irony were we to bypass the Eleventh Amendment, which
26   enacts a scheme solicitous of the States, on the sole rationale that state courts are inadequate to enforce and interpret
     federal rights in every case.").

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

against state officials where "the state is the real, substantial party in interest." *Pennhurst*, 465 U.S. at 101. "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Id.* at 101; *see also Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997) ("The real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading."). This suit is barred by the Eleventh Amendment unless an exception applies. No such exception applies here because Defendants do not have enforcement power over the Codes and therefore do not fall within the *Ex parte Young* exception to Eleventh Amendment immunity. Thus, the Court should dismiss.

### 1. The State Building Code Council is a state agency and may not be sued in federal court

The Council is squarely a state agency for purposes of the Eleventh Amendment. To determine whether an agency is protected by Eleventh Amendment immunity, courts consider three factors: "'(1) the state's intent as to the status of the entity, including the functions performed by the entity; (2) the state's control over the entity; and (3) the entity's overall effects on the state treasury.'" *Kohn v. State Bar of California.*, 87 F.4th 1021, 1030 (9th Cir. 2023) (quoting *Puerto Rico Ports Auth. v. Federal Maritime Comm'n*, 531 F.3d 868, 873 (D.C. Cir. 2008) (cleaned up)).

All three factors show that the Council is protected by the Eleventh Amendment. First, state law expressly characterizes the Council as a State governmental instrumentality. *See Kohn*, 87 F.4th at 1030. The Council performs central governmental functions in adopting and maintaining statewide building codes. RCW 19.27.074(1)(a)–(c), (4). Further, the Council is a quasi-legislative body housed within the Washington Department of Enterprise Services (DES), a State executive branch agency (*see* RCW 19.27.070; 43.19.005(1)). The Council is not authorized to take property in its own name; even employment of staff and provision of administrative and information technology services is the responsibility of DES rather than the

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia. WA 98504-0111
(360) 709-6470

1    Council itself. RCW 19.27.074(3)(a), (c).

2           Second, the State exercises control over the Council's operations. *See Kohn*, 87 F.4th at

3    1030. Council members are appointed by the Governor, based upon criteria set forth by the State

4    Legislature in statute. RCW 19.27.070(1). Members may be removed if they no longer represent

5    the constituencies they were appointed to represent, RCW 19.27.070(4)(c)–(e), or as otherwise

6    provided by state law. The Council's powers are limited to those specified by the State

7    Legislature in statute, and those powers are limited to those necessary to promulgate the

8    statewide building code. *See* RCW 19.27.074. And in promulgating the codes, the Council is

9    required to act "consistent with the state's interest" as provided in State law setting out specific

10   "purposes, objectives, and standards" for the Codes. RCW 19.27.074(1)(a); RCW 19.27.020.

11          Finally, although not dispositive, a money judgement against the Council would be

12   satisfied out of state funds. *See Kohn*, 87 F.4th at 1030. Its budget is appropriated by the State

13   legislature (*see* RCW 19.27.085(1)), and the State is responsible for satisfying money judgments

14   against it (*see* RCW 4.92). Accordingly, the Eleventh Amendment bars suits against the Council.

15          **1.     *Ex parte Young* does not allow suit against the Council members**

16          *Ex parte Young,* 209 U.S. 123 (1908), provides a narrow exception to Eleventh

17   Amendment immunity for "prospective declaratory or injunctive relief against state officers

18   [sued] in their official capacities for their alleged violations of federal law." *Coal. to Defend*

19   *Affirmative Action v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012). However, such an action is

20   only permissible if the named official has "some connection with the enforcement of the act[.]"

21   *Snoeck v. Brussa*, 153 F.3d 984, 986 (9th Cir. 1998). A generalized duty to enforce state law or

22   general supervisory power over those responsible for enforcing the provision is insufficient; the

23   connection must be "fairly direct." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992).

24          Here, the Council members lack the required connection to enforcement of the Codes.

25   The Council and its members' statutory responsibility is to adopt and maintain the statewide

26   building code. *See* RCW 19.27.074(1)(a)–(c). But the Council—and its members—lack

DEFENDANTS' MOTION TO DISMISS                        9                ATTORNEY GENERAL OF WASHINGTON
NO. 2:24-cv-00677-KKE                                                      Complex Litigation Division
                                                                          7141 Cleanwater Dr SW
                                                                          PO Box 40111
                                                                          Olympia. WA 98504-0111
                                                                          (360) 709-6470

authority or any mechanism to enforce the Codes. Dkt. # 43 at p.1 ¶ 3. This is because "[t]he state building code required by this chapter shall be enforced by the counties and cities." RCW 19.27.050; *see also id.* at .031 (providing that the Council "may issue opinions relating to the codes" but only "at the request of *a local official charged with the duty to enforce the enumerated codes*") (emphasis added). The council members have no duty or any ability to enforce the Codes. Because Washington law delegates enforcement authority to local officials, and because Council members do not have responsibility for enforcement, they are not proper defendants for an *Ex parte Young* action.

The Council members' promulgation of the Codes is not sufficient under *Ex parte Young* either. For Eleventh Amendment purposes, "'[t]he power to promulgate law is not the power to enforce it[.]'" *MacEwen v. Inslee*, No. 3:20-cv-05423-BHS, 2020 WL 4261323, at *2 (W.D. Wash. July 24, 2020) ((quoting *In re Abbott*, 956 F.3d 696, 709 (5th Cir. 2020), *vacated on appeal as moot sub nom. Planned Parenthood Center for Choice v. Abbott*, 141 S. Ct. 1261 (2021))). For that reason, a federal district court in New York recently held that members of that state's building code council were not proper defendants under *Ex parte Young*, because New York's codes are enforced by county or local governments and the New York Secretary of State. *Mulhern Gas Co. v. Rodriguez*, No. 1:23-cv-1267-GTS-CFH, 2024 WL 3992588 (N.D.N.Y. Aug. 29, 2024). As the court noted, the members' "rulemaking or regulatory authority" alone does not "constitute[] a connection with the enforcement of the statute." *Id*. at *14. "[T]he act of codification itself does not enforce the terms of the statute against any individual." *Id.* For the same reason, the Fifth Circuit Court of Appeals held a suit against Texas's governor was barred under the Eleventh Amendment because the governor's statutory power to "issue, amend or rescind" an executive order "[was] not the power to enforce it"—rather, "[e]nforcement actions would be undertaken by local authorities." *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467-68 (5th Cir. 2020) (cleaned up); *see also NASD Dispute Resolution, Inc. v. Judicial Council of California*, 232 F. Supp. 2d 1055 (N.D. Ca. 2002), *vacated on other grounds by* 488 F.3d 1065

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1   (9th Cir. 2007) (Judicial Council members entitled to Eleventh Amendment immunity because

2   their role in creating a policy does not create necessary connection to enforcing that policy). The

3   same is true here.

4          Nor do the Council members have supervisory power over the local officials who are

5   responsible for enforcement. The Washington Constitution treats counties and cities as separate

6   political subdivisions of the State. Wash. Const. art. XI, §§ 4, 10; *see also City of Auburn v.*

7   *Gauntt*, 274 P.3d 1033, 1034 (2012) (noting that counties are the primary unit of local

8   government and handle state-directed functions). This "home rule" principle "seeks to increase

9   government[al] accountability by limiting state-level interference in local affairs." *Watson v.*

10  *City of Seattle*, 401 P.3d 1, 10 (2017). Thus, no state officer or agency has general command-

11  and-control authority over local governments or their officials. *See Mochizuki v. King County*,

12  548 P.2d 578, 580 (1976). The enforcement of the Codes by local officials is no exception. *See,*

13  *e.g.*, *Davison v. State*, 466 P.3d 231, 240 (2020) (rejecting argument that county's underfunding

14  of public defense system stated a constitutional claim against the State and holding that "[t]he

15  State is not a 'principal' legally responsible for the acts of its local government 'agents' when

16  such acts occur within the scope of the local government's delegated duty.").

17         Plaintiffs' focus on whether local code officials have discretion in enforcement of the

18  codes, Dkt. # 47 at pp. 11-12 ¶¶ 35-37, misses the mark. As an initial matter, regardless of the

19  allegations of County officials introduced by Plaintiffs (*see* Dkts. ## 47-6, 47-7), the Codes

20  explicitly contemplate that local officials have discretion in interpreting and enforcing the Codes

21  within their jurisdictions. *See, e.g.*, WAC § 51-11R-10200, R102.1; WAC § 51-11R-11000,

22  R110.1; WAC § 51-11C-10200, C102.1; WAC § 51-11C-11000, C.110.1. The Council's

23  enumerated duties include neither oversight of local code officials nor reconsideration of local

24  code officials' decisions when they do choose to exercise their discretion. *See* RCW

25  19.27.074(1). Moreover, the Council lacks any independent recourse if a local code official

26  decides not to enforce the Codes. *Id*. Thus, the Council members lack any supervisory powers

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    to direct local officials to act "against plaintiffs' interests," and "the Eleventh Amendment bars

2    federal court jurisdiction." *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (per curiam).

3        More fundamentally, the relevant question is whether the official sued has a "fairly

4    direct" connection to enforcing the challenged provision. In *Mecinas v. Hobbs*, 30 F.4th 890 (9th

5    Cir. 2022), statutory law charged the Arizona Secretary of State with "clear duties to oversee

6    ballot production," meaning an injunction against the Secretary would change the order of the

7    candidates on ballots printed and distributed by local election officials. *Id.* at 903. This was a

8    sufficiently close connection to make the Secretary a proper defendant in an *Ex parte Young*

9    action. *Id.* at 903-04. By contrast, in *Mi Familia Vota*, analyzed by the *Mecinas* court, the

10   plaintiffs sought an injunction against the Texas Secretary of State requiring the use of paper

11   ballots, but Texas law provided that local officials enforced ballot laws. 977 F.3d at 468.

12   "Although a court can enjoin state officials from enforcing statutes, such an injunction must be

13   directed to those who have the authority to enforce those statutes. In the present case, that would

14   be county or other local officials. No county or local official is a party to the current suit and

15   cannot be enjoined in this suit to print and use paper ballots." *Id.* The same is true here. None of

16   the Council members have the type of authority akin to the Arizona Secretary of State in

17   *Mecinas*, and the law explicitly contemplates local enforcement of the Codes.

18       If Plaintiffs' argument were accepted, the Eleventh Amendment's protections would be

19   eviscerated—parties could bring any number of challenges against a state by naming as a

20   defendant every state legislator (or, as here, every member of a quasi-legislative state agency),

21   arguing that passage of a law or a rule is a directive to enforce. But that contravenes the clear

22   dictate that a general duty to enforce state law is insufficient to invoke *Ex parte Young*. *Eu*, 979

23   F.2d at 705; *Minnesota Auto Dealers Assoc. v. Minnesota*, 520 F. Supp. 3d 1126, 1134 (D. Minn.

24   2021) (finding that a state official's involvement in administrative rulemaking did not make her

25   a proper defendant under *Ex parte Young*). Put another way, "[a] person aggrieved by the

26   application of a legal rule does not sue the rule *maker*—Congress, the President, the United

DEFENDANTS' MOTION TO DISMISS                                    12          ATTORNEY GENERAL OF WASHINGTON
NO. 2:24-cv-00677-KKE                                                                Complex Litigation Division
                                                                                          7141 Cleanwater Dr SW
                                                                                              PO Box 40111
                                                                                        Olympia, WA 98504-0111
                                                                                            (360) 709-6470

1    States, a state, a state's legislature, the judge who announced the principle of common law. He

2    sues the person whose acts hurt him." *Quinones v. City of Evanston, Ill.*, 58 F.3d 275, 277 (7th

3    Cir. 1995). In sum, the law is clear that the power to promulgate a law or rule does not confer

4    enforcement power sufficient to permit suit under *Ex parte Young*.

         **2.   *Ex parte Young* does not allow suit against the AG**

6            Nor may suit be brought against the AG under *Ex parte Young*, because, as with the

7    Council members, the AG does not have a "fairly direct" connection—or indeed any

8    connection—to enforcement of the building codes. *See Eu*, 979 F.2d at 704.

9            Under Washington law, the AG has *no* direct connection to enforcement of the Codes.

10   As discussed above, enforcement of the codes is entrusted to local officials by statute, and the

11   AG—as with other state officials—does not "direct, in a binding fashion" the enforcement

12   activities of the local officials who enforce the Codes. *See Planned Parenthood of Idaho, Inc. v.

13   Wasden*, 376 F.3d 908, 919 (9th Cir. 2004). Nor is there any provision of law empowering the

14   AG to "exercise the same power" to enforce the building codes as a local enforcement official.

15   *Cf. Wasden*, 376 F.3d at 919 (Idaho attorney general was proper defendant under *Ex Parte Young*

16   in a challenge to a criminal statute where Idaho law authorized the AG to "*do every act* that the

17   county attorney can perform" in conducting a criminal prosecution, including deputizing himself

18   to "exercise the same power to enforce the statute the [county] prosecutor would have"). Here,

19   Washington law does not provide for the AG to stand in the shoes of county officials for building

20   code enforcement purposes. *See* RCW 19.27.050; Wash. Const. art. XI, §§ 4, 10; *Mochizuki*, 548

21   P.2d at 580; *Davison*, 466 P.3d at 240.

22           The only mention of the AG in the First Amended Complaint is a conclusory allegation

23   that he "is authorized to enforce the Energy Code[,]" as well as a quote from *State v. City of

24   Sunnyside*, 550 P.3d 31, 41 (Wash. 2024). Dkt. #47 at p. 12-13 ¶ 38. *City of Sunnyside* interpreted

25   a statute permitting the AG to "[a]ppear for and represent the state before the supreme court or

26   the court of appeals in all cases in which the state is interested[]" (RCW 43.10.030(1)), holding

DEFENDANTS' MOTION TO DISMISS                              13                    ATTORNEY GENERAL OF WASHINGTON
NO. 2:24-cv-00677-KKE                                                                              Complex Litigation Division
                                                                                                      7141 Cleanwater Dr SW
                                                                                                          PO Box 40111
                                                                                                    Olympia. WA 98504-0111
                                                                                                         (360) 709-6470

1    it permitted the AG to bring due process and antidiscrimination challenges to a city's operation

2    of its crime-free rental housing program. *City of Sunnyside*, 550 P.3d at 35-36. The court held

3    that the AG "has discretionary authority to act in any court in matters of public concern, even

4    without express statutory authorization, provided there is a cognizable common law or statutory

5    cause of action." *City of Sunnyside*, 550 P.3d at 41.

6          This does not make the AG a proper defendant under *Ex Parte Young*. An official must

7    have a "fairly direct" connection to enforcing the challenged law, and "a generalized duty to

8    enforce state law or general supervisory power over the persons responsible for enforcing the

9    challenged provision[s]" does not suffice. *Eu*, 979 F.2d at 704. *City of Sunnyside* does not even

10   involve the AG's generalized duty to enforce state law, but rather a generalized "discretionary

11   authority" to bring civil lawsuits on matters of public concern—even less sufficient under *Ex

12   parte Young*. 550 P.3d at 41. *See Tohono O'odham Nation v. Ducey*, 130 F. Supp. 3d 1301, 1311

13   (D. Ariz. 2015) (rejecting argument that "[g]overnors who influence state executive branch

14   policies (which virtually all governors do) would always be subject to suit under *Ex parte

15   Young*"). That generalized, discretionary authority does not confer a "fairly direct" connection

16   to enforcement of the Energy Codes. And while Plaintiffs speculate that the AG could "act to

17   require cities and counties to enforce the Energy Code," the same is theoretically true for any

18   lawsuit the AG could conceivably bring. Plaintiffs do not allege the AG has ever threatened such

19   proceedings against a local code enforcer. *Long*, 961 F.2d at 152 (*Ex Parte Young* requires a

20   "connection between the official sued and enforcement of the allegedly unconstitutional statute,

21   and . . . a threat of enforcement."). Nor do Plaintiffs state what common law or statutory cause

22   of action would allow the AG to do so, as required by *City of Sunnyside*. *See* Dkt. # 47.

23         Accordingly, claims against the AG must be dismissed as barred by the Eleventh

24   Amendment.

25                                              ***

26

---

DEFENDANTS' MOTION TO DISMISS                          14          ATTORNEY GENERAL OF WASHINGTON
NO. 2:24-cv-00677-KKE                                                      Complex Litigation Division
                                                                            7141 Cleanwater Dr SW
                                                                                 PO Box 40111
                                                                            Olympia, WA 98504-0111
                                                                               (360) 709-6470

1    In sum, the Eleventh Amendment operates to bar suits against the State in federal court.

2  Here, Plaintiffs have sued the State by naming members of a State agency and the AG in their

3  official capacities, and no exception to immunity applies. The Court therefore lacks jurisdiction

4  to hear Plaintiffs' claims against the State.

5  **B.    Plaintiffs' Case Lacks a Case or Controversy Under Article III**

6    Plaintiffs' case should be dismissed for lack of jurisdiction not only because Plaintiffs

7  have brought a case against individuals who do not enforce the Energy Codes, but because

8  Plaintiffs cannot establish standing or (to the extent Plaintiffs bring claims before enforcement)

9  ripeness. To establish standing in federal court, a plaintiff must show that (1) they have suffered

10  an injury in fact; (2) their injury is traceable to the defendant's challenged action, and not the

11  result of the independent action of a third party not before the court; and (3) it is likely that a

12  favorable decision would redress the injury. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

13  (1992). As the Ninth Circuit has noted, the traceability and redressability inquiries are "closely

14  related—indeed overlapping" as to the question of whether the sued official has the requisite

15  connection to enforcement of the challenged law. *Mecinas*, 30 F.4th at 903. When a case is

16  brought before enforcement against a plaintiff, the plaintiff must show a "genuine threat of

17  imminent prosecution[,]" an inquiry that melds the injury-in-fact prong of the *Lujan* test with a

18  ripeness inquiry. *Thomas*, 220 F.3d at 1139.

19    Here, Plaintiffs cannot establish standing. They rely upon speculative, attenuated injuries

20  that are insufficient to show injury in fact. This flaw is compounded when considering their pre-

21  enforcement claims against the AG. Moreover, Plaintiffs' alleged injuries would stem from

22  enforcement of the Codes. But neither the individual Council members nor the AG have any role

23  in such enforcement, meaning that (in addition to the immunity bar under the Eleventh

24  Amendment) there is no traceability or redressability here.

25  **1.    Plaintiffs' alleged injuries are insufficient to confer standing**

26    Plaintiffs' claimed harms generally do not suffice to allege an injury-in-fact under Article

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE                                   15                    ATTORNEY GENERAL OF WASHINGTON
                                                                                      Complex Litigation Division
                                                                                         7141 Cleanwater Dr SW
                                                                                              PO Box 40111
                                                                                         Olympia. WA 98504-0111
                                                                                             (360) 709-6470

III. A plaintiff may not sue merely because their legal objections are accompanied by a "strong" policy objection to a government action. *Food and Drug Admin v. All. for Hippocratic Medicine*, 602 U.S. 367, 382 (2024)*.* Rather, to demonstrate standing, a plaintiff must allege a "real and not abstract" particularized injury that has "already occurred or [will] be likely to occur soon." *Id.* at 381. When, as here, a plaintiff seeks prospective relief, they must show a likelihood of future injury. *Id.* at 382 (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 401 (2013)).

Plaintiffs here include parties not regulated by the Energy Codes, including unions, trade associations, utility companies, and homeowners, who do not allege any intent to submit new construction plans for approval. Where plaintiffs challenge the government's regulation "of *someone else*," standing is "substantially more difficult to establish." *All. for Hippocratic Med.*, 602 U.S. at 382. This is because Plaintiffs cannot "rely on speculation about the unfettered choices made by independent actors not before the courts." *Id*. at 383 (citing *Clapper*, 568 U.S. at 415 n.5). This "precludes speculative links—that is, where it is not sufficiently predictable how third parties would react to government action or cause downstream injury to plaintiffs." *Id*. And it rules out "attenuated links": where the government action is "far removed from its distant (even if predictable) ripple effects." *Id*. at 383.

Most of the plaintiffs here, however, rely on such attenuated and speculative chains of causation because they are not regulated by the Codes. First, homeowner Riviera alleges natural gas is not currently available in his neighborhood and the Codes make it "less likely" that it will be available in the future. Dkt. # 47 at p. 4-5 ¶ 14. And homeowner Banta claims he currently uses natural gas and would be harmed by an increase in its cost. *Id*. at p. 5 ¶ 15. But these claimed injuries are neither concrete nor "certainly impending" (*Clapper*, 568 U.S. at 409-10) and they rely on hypothetical actions of third parties. As to Riviera, energy companies make independent decisions about where and whether to extend service. And Banta does not allege that the cost of natural gas has increased, much less that any speculative future increase would be caused by the Codes rather than any number of other factors.

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia. WA 98504-0111
(360) 709-6470

Second, the Plaintiff utility companies and unions are concerned that the Energy Code "threatens to erode" the companies' customer base, and the unions may have to retrain members to "pursue new opportunities[.]" *Id.* at pp. 8-11 ¶¶ 26-33. Again, these Plaintiffs have not alleged a "certainly impending" injury. The Energy Code became effective in March 2024, yet the utility companies have not alleged a net decrease in customers in the intervening six months; instead, they posit that customers might decide not to use natural gas because of what they believe the Codes do. *See* Dkt. # 47-1 at p. 3 ¶¶ 4-5; Dkt. # 47-2 at p. 3 ¶ 5. Moreover, these allegations again rely on the independent choices of third parties. There are any number of reasons why customers might choose not to extend their gas service, including a desire to reduce the health risks connected to burning natural gas in one's home, or a commitment to reducing personal natural gas use. This is especially so because the Energy Codes do not prevent natural gas customers from continuing their use of natural gas or the maintenance of natural gas appliances in buildings or heating systems in existence at the time of adoption of the Codes. *See, e.g.*, WAC § 51-11R-50100, R501.1.1; WAC § 51-11C-50000, C501.1.1. Customers canceling gas service *because of* the Codes would need to be purchasing new construction where the builder has elected to use energy efficiency credits that include an electric heat pump system rather than a fossil fuel pathway. These plaintiffs' claims of injury rely on attenuated, speculative chains of causation.

Third, the associational Plaintiffs allege harms on behalf of their members, but those injuries fail for the same reasons discussed above. Dkt. # 47 at p. 7-8 ¶¶ 22–25. An organization may have standing to sue on its own behalf for injuries it has sustained, and must comply with the same Article III requirements as an individual. *All. for Hippocratic Medicine*, 602 U.S. at 393. The associational Plaintiffs here allege that they must use their resources to advocate against the codes and educate their members about the codes. Dkt. # 47 at pp. 7–8 ¶¶ 22–25. But this too is insufficient to demonstrate standing. "[A]n organization . . . cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

action." *Id.* at 394. Indeed, a conclusion to the contrary would allow any organization to have standing to challenge any policy they dislike, "provided they spend a single dollar opposing" that policy. *Id.* at 395. These self-inflicted injuries are insufficient to show standing.

Finally, the homebuilder plaintiffs, unlike those discussed above, are regulated by the Energy Codes. Under Ninth Circuit law, however, a party challenging a rule before it has been enforced against them must assert, with "some degree of concrete detail," the violative conduct they would have engaged in, but for the challenged rule. *Unified Data Servs., LLC v. Federal Trade Comm'n*, 39 F.4th 1200, 1210-11 (9th Cir. 2022); *see generally Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1137 (9th Cir. 2000) (setting forth three-factor test for pre-enforcement standing). There must be a "particularized" and "imminent" "Hobson's choice" between "engag[ing] in proscribed conduct" and being threatened with enforcement. *Unified Data Servs., LLC*, 39 F.4th at 1211 (quoting *Clark*, 899 F.3d at 813). In *California Restaurant Association v. City of Berkeley*, for example, the city "completely prohibit[ed]" natural gas in new construction, meaning the plaintiff was unable to open a planned restaurant with natural gas appliances in a new Berkeley building. *City of Berkeley*, 89 F.4th at 1098, 1100.

But here, the Energy Code does not prohibit natural gas; instead, it gives builders substantial discretion to decide how they will meet efficiency standards, including via the use of natural gas, and vests authority to approve permits in local officials with discretion of their own. Unsurprisingly, therefore, the homebuilder plaintiffs do not claim they will be unable to have plans approved for any particular project under the Codes. Instead, their claimed injury is premised on second-order economic costs that they speculate will arise from their choices in *complying* with the Codes, either by choosing natural gas or electrical performance pathways. *See* Dkt. # 47 at p. 5-7, ¶¶ 17-21; *see also* p. 8 ¶ 25. Generally, however, a plaintiff's participation in industries that are now subject to new regulations is insufficient to show injury. *Unified Data Servs., LLC v. F.T.C.*, 39 F.4th 1200, 1211 (9th Cir. 2022); *see also Baldwin v. Sebelius*, 654 F.3d 877, 879 (9th Cir. 2011) (costs of regulatory compliance are not "particularized injury that

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

distinguishes" any specific entity from "everyone else to whom the [law] may apply.").[3]

Accordingly, Plaintiffs cannot show a concrete, particularized injury and therefore lack standing.

### 2. Plaintiffs' claimed harms are not traceable to the Council members or the AG

For an injury to be fairly traceable to a challenged statute, the injury must be "the result of [the] statute's actual or threatened enforcement, whether today or in the future." *California v. Texas*, 593 U.S. 659, 670-71 (2021). And that injury must "be traced to the challenged action of the defendant, and not injury that results from the independent action of some third party not before the court." *Simon v. Eastern Kentucky Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976). The traceability requirement is "central" to Article III standing, as it "screens out plaintiffs who were not injured by the defendant's action" and ensures courts are not "'monitors of the wisdom and soundness' of government action." *All. for Hippocratic Medicine*, 602 U.S. at 384 (quoting *Allen v. Wright*, 468 U.S. 737, 760 (1984), *abrogated on other grounds by Lexmark Intern., Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014)).

The Council members' actions in enacting the Codes is not enough to show traceability. This is because the Council members merely enacted the codes; they do not enforce them. As an example, when Congress enacted laws allowing for removal of immigrants, the alleged injury of deportation was not fairly traceable to the members of Congress. *Marks v. U.S. Congress Individual Members 1-435*, No. 08-0175, 2008 WL 251937, (D.D.C. Jan. 29, 2008), *aff'd sub nom. Marks v. U.S. Congress*, 285 F.App'x 762, 763 (D.C. Cir. 2008). As discussed above, "[a] person aggrieved by the application of a legal rule does not sue the rule maker . . . He sues the persons whose acts hurt him." *Prakel v. Indiana*, 100 F. Supp. 3d 661, 674 (S.D. Ind. 2015) (quoting *Quinones*, 58 F.3d at 277) (holding that injury caused by a trial court implementing a

---

[3] Even if this compliance-cost theory could suffice to show an injury-in-fact, however, Plaintiffs have still not shown traceability or redressability, for the fundamental reason that they have not sued any defendant with responsibility for enforcing the Codes as discussed below.

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

rule was not traceable to Supreme Court that promulgated the trial rule). Though Plaintiffs may suffer an injury, "[f]rom the perspective of the [Council], the injury to respondents is highly indirect and 'results from the independent action of some third party not before the court[.]'" *Allen*, 468 U.S. at 757 (rejecting argument that injury of inability to receive a desegregated education was traceable to federal officials who enacted tax exemptions to certain private schools) (quoting *Simon*, 426 U.S. at 42). If it were otherwise, a plaintiff could sue any policymaker—instead of the person who enforces the policy—and argue that their harm was traceable to the enactment of a policy or rule. *Allen*, 468 U.S. at 759 ("That conclusion would pave the way generally for suits challenging, not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations."). Similarly, the AG has no role in enforcing the Codes, and Plaintiffs have not alleged that the AG's involvement in enforcement is "likely, or even . . . remotely possible." *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 618 (9th Cir. 1999).

As discussed above, neither the individual Council members nor the Attorney General have authority to enforce the Codes; that authority is expressly and solely held by local officials. RCW 19.27.050. Thus, any injury caused by enforcement or threatened enforcement of the Codes would be traceable to the local code official, not to the Council members or the AG. Plaintiffs therefore cannot show traceability.

**3.      Plaintiffs' requested remedies would not redress their alleged harms**

Plaintiffs' standing also fails on the redressability prong because their alleged harm would not be redressed by their requested relief. Enforcement of the Codes is done by independent third parties not before this Court who would not be bound by any order issued by this Court.

Article III requires a plaintiff to establish that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. 561 (cleaned up); *Haaland v. Brackeen*, 599 U.S. 255, 292-93 (2023). "To determine whether an

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia. WA 98504-0111
(360) 709-6470

1    injury is redressable, a court will consider the relationship between the judicial relief requested

2    and the injury suffered." *California v. Texas*, 593 U.S. 659, 671 (2021) (internal quotation marks

3    and citation omitted). A plaintiff lacks standing and a claim is not redressable if "following a

4    favorable decision, whether the injury would be redressed would still depend on 'the unfettered

5    choices made by independent actors not before the courts.'" *Novak v. United States*, 795 F.3d

6    1012, 1019–20 (9th Cir. 2015) (quoting *ASARCO Inc. v. Kadish*, 490 U.S. 605, 615 (1989)); *see*

7    *also Murthy v. Missouri*, 603 U.S. ----, 144 S. Ct. 1972, 1986 (2024) ("[I]t is a bedrock principle

8    that a federal court cannot redress injury that results from the independent action of some third

9    party not before the court." (cleaned up)).

10       Plaintiffs seek a permanent injunction "enjoin[ing] Defendants from enforcing the

11   amended Energy Code in its entirety" and "enjoining [its] effectiveness." Dkt. # 47 at p. 30 ¶

12   127; *id.* p. 31 ¶ 2. However, an injunction against the defendants in this case would not redress

13   Plaintiffs' harms when the local officials who enforce the codes are not parties to this suit and

14   would not be subject to that injunction. *Haaland v. Brackeen*, 599 U.S. 255 (2023), is illustrative.

15   There, non-Indian individuals who wished to adopt Indian children sued federal officials on an

16   equal protection challenge to the Indian Child Welfare Act's placement preferences. The Court

17   rejected the plaintiffs' argument that they had standing to seek injunctive relief, noting that

18   "enjoining the federal parties would not remedy the [plaintiffs'] alleged injury, because state

19   courts apply the placement preferences, and state agencies carry out the court-ordered

20   placements." *Id.* at 292. The Court further noted that, because the state officials who actually

21   implement ICWA were not parties to the suit, "'there is no reason they should be obliged to

22   honor an incidental legal determination [this] suit produced.'" *Id.* at 293 (quoting *Lujan*, 504

23   U.S. at 569).

24       Similarly here, and as discussed at length above, it is local code officials, not Defendants,

25   who enforce the Codes. *See* RCW 19.27.050. Thus, an injunction against the Council members

26   or the AG would not redress Plaintiffs' alleged injuries, because neither the Council members

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE                                    21                    ATTORNEY GENERAL OF WASHINGTON
                                                                                      Complex Litigation Division
                                                                                        7141 Cleanwater Dr SW
                                                                                             PO Box 40111
                                                                                        Olympia, WA 98504-0111
                                                                                            (360) 709-6470

1    nor the AG have enforcement power over the challenged Codes. *See California*, 593 U.S. at 672

2    ("Remedies, however, ordinarily 'operate with respect to specific parties' . . . they do not simply

3    operate 'on legal rules in the abstract.'") (internal citations omitted).

4    Plaintiffs' requested declaration that the challenged codes are preempted by EPCA is also

5    not likely to remedy Plaintiffs' purported injuries because it would not bind the local officials

6    charged with enforcing the Codes. In *Brackeen*, the Court similarly rejected standing to seek

7    declaratory relief because a declaratory judgment "conclusively resolves 'the legal rights *of the*

8    *parties*[,]'" and the state officials who enforce ICWA were nonparties who would not be bound

9    by a declaration. *Id.* (quoting *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 571 U.S. 191,

10   200 (2014)). Indeed, the Court noted that "[w]ithout preclusive effect, a declaratory judgment is

11   little more than an advisory opinion." *Id.* Thus, the plaintiffs' equal protection claims would not

12   be settled as between the petitioners and "the officials who matter"—that is, the state officials

13   who would actually implement ICWA—and so would not redress their injuries. *Id.* So too here.

14   A declaratory judgment on preemption would not be binding on local officials who are not

15   parties to this litigation. *Taylor v. Sturgell*, 533 U.S. 880, 892–93 (2008). Nor would the

16   persuasive value of a declaratory judgment from this Court redress Plaintiffs' harm. Indeed, the

17   *Brackeen* Court expressly rejected this argument, holding that redressability requires more than

18   a "'persuasive or even awe-inspiring effect.'" *Brackeen*, 599 U.S. at 294 (quoting *Franklin v.*

19   *Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring in part and concurring in

20   judgment)). Instead, redressability requires that "a federal court's *judgment*, not its opinion"

21   remedy an injury. *Id.* (emphasis added).

22   Finally, Plaintiffs request an injunction permanently prohibiting Defendants from

23   "maintaining the Energy Code" or "substantially similar" provisions as part of the state energy

24   code. *See* Dkt. # 47 at p. 31 ¶ 2. But such a remedy would violate the Tenth Amendment by

25   commandeering the instruments of state government. "Even where Congress has the authority

26   under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia. WA 98504-0111
(360) 709-6470

directly to compel the States to require or prohibit those acts." *New York v. United States*, 505 U.S. 144, 166 (1992). This is a consequence of the "dual sovereignty" at the heart of our federal system. *See Murphy v. Nat'l Collegiate Athletic Assoc.*, 584 U.S. 453, 470 (2018) (quoting *Gregory v. Ashcroft*, 501 U.S. 452, 457 (1991)). The Tenth Amendment "does not allow" "a direct command to the States." *Id.* at 480. This is precisely what Plaintiffs' requested injunction directing what regulations Washington may or may not enact would do, and EPCA cannot justify such an injunction consistent with the Tenth Amendment.

Finally, it is unclear how this request would work in practice, since it would in effect be a mandatory injunction requiring a Washington State executive branch agency to rewrite regulations promulgated under its statutory authority, posing serious federalism concerns. *Cf. Rizzo v. Goode*, 423 U.S. 362, 380 (1976) (holding that district court exceeded its authority when it "injected itself" into internal affairs of state agency, where there was no evidence to justify detailed affirmative injunction requiring agency to change its policies); *Juliana v. United States*, 947 F.3d 1159, 1172 (9th Cir. 2020) (finding that injunction requiring the federal government to "implement a plan" to phase out fossil fuels and reduce atmospheric carbon dioxide because it would require the court to "pass judgment" on the government's response "for many decades."); *M.S. v. Brown*, 902 F.3d 1076, 1090 (9th Cir. 2018) ("where, as here, a plaintiff sues state officials seeking intrusive affirmative relief that is incompatible with democratic principles and where there is no basis for the district court to invoke its equitable power . . . such relief would also violate principles of federalism.").

In sum, Plaintiffs lack Article III standing because they have not alleged concrete, non-speculative injuries traceable to any defendant's conduct, and their requested relief would not redress their claimed harms.

## V.   CONCLUSION

This case against these Defendants is not properly brought in federal court. Plaintiffs fail to sue proper defendants for an *Ex parte Young* action, and so their claims are barred by the Eleventh

DEFENDANTS' MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
PO Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1   Amendment. In addition, Plaintiffs fail to satisfy the requirements of Article III because their

2   alleged injuries cannot be traced to Defendants and the remedies they seek would not redress their

3   harm.

4         DATED this 13th day of September 2024.

5                           ROBERT W. FERGUSON
                                Attorney General

6

7                           */s/ R. July Simpson*

8                           R. JULY SIMPSON, WSBA #45869
                           WILLIAM MCGINTY, WSBA #41868
                           SARAH E. SMITH-LEVY, WSBA #55770

9                           DIERK MEIERBACHTOL, WSBA #31010
                           Assistant Attorneys General

10                         EMMA GRUNBERG, WSBA #54659
                         Deputy Solicitor General

11                         July.Simpson@atg.wa.gov
                         William.McGinty@atg.wa.gov

12                       Sarah.E.Smith-Levy@atg.wa.gov
                       Dierk.Meierbachtol@atg.wa.gov

13                       Emma.Grunberg@atg.wa.gov
                       *Attorneys for Defendants*

14

15                       I certify that this memorandum contains 8,242
                       words, in compliance with the Local Civil Rules.

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION TO DISMISS       24       ATTORNEY GENERAL OF WASHINGTON
NO. 2:24-cv-00677-KKE                         Complex Litigation Division
                                       7141 Cleanwater Dr SW
                                       PO Box 40111
                                      Olympia. WA 98504-0111
                                       (360) 709-6470