1
2

THE HONORABLE KYMBERLY K. EVANSON

3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

JAMON RIVERA; CURTIS BANTA;
YONKMAN CONSTRUCTION, INC.;
PARAS HOMES, LLC; CONDRON HOMES,
LLC; GARCO CONSTRUCTION, INC.;
ARLINGTON 360, LLC; HUSEBY HOMES,
LLC; SPOKANE HOME BUILDERS
ASSOCIATION; WASHINGTON STATE
ASSOCIATION OF UA PLUMBERS,
PIPEFITTERS AND HVAC/R SERVICE
TECHNICIANS; LOCAL 32 OF UA
PLUMBERS, PIPEFITTERS AND HVAC/R
SERVICE TECHNICIANS; WASHINGTON
AND NORTHERN IDAHO DISTRICT
COUNCIL OF LABORERS; CITIZEN
ACTION DEFENSE FUND; NATIONAL
PROPANE GAS ASSOCIATION; AVISTA
CORPORATION; CASCADE NATURAL
GAS CORPORATION; and NORTHWEST
NATURAL GAS COMPANY,

10
11
12
13
14
15
16
17
18

Plaintiffs,

19

20

v.

21

22

23

24

25

26

KJELL ANDERSON, JAY ARNOLD, TODD
BEYREUTHER, JUSTIN BOURGAULT,
DAIMON DOYLE, TOM HANDY,
ANGELA HAUPT, ROGER HEERINGA,
MATTHEW HEPNER, CRAIG HOLT, TYE
MENSER, BENJAMIN OMURA, PETER
RIEKE, KATY SHEEHAN, in their official
capacities as Washington State Building Code
Council Members; and BOB FERGUSON, in
his official capacity as Attorney General of
Washington,

Defendants.

Case No. 2:24-cv-00677-KKE

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS**

Note on Motion Calendar:
October 11, 2024

27

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS

**<u>TABLE OF CONTENTS</u>**

**Page**

I.     INTRODUCTION ....................................................................................................... 1

II.    BACKGROUND ........................................................................................................ 1

III.   LEGAL STANDARD................................................................................................ 2

IV.   ARGUMENT ............................................................................................................ 3

     A.    The *Ex parte Young* exception to Eleventh Amendment immunity permits suit against the SBCC members and the Attorney General. .................................. 4

          1.    *Ex parte Young* permits suit against state officers with some connection with the enforcement of violations of federal law.................... 4

          2.    The SBCC members' promulgation of the mandatory Energy Code that cities and counties must enforce suffices to trigger the *Ex parte Young* exception.................................................................................. 4

               a.    The SBCC members promulgated a mandatory Energy Code that local officials must enforce. ....................................... 4

               b.    The Ninth Circuit's decision in *Mecinas v. Hobbs* confirms that the *Ex parte Young* exception applies here. ............................ 6

               c.    Defendants' nonbinding and inapposite caselaw cannot overcome *Mecinas*'s controlling holding......................................... 8

               d.    Defendants' policy concerns are misplaced.................................. 12

          3.    The Attorney General is amenable to suit under *Ex parte Young*............. 13

     B.    Plaintiffs satisfy the requisites of Article III standing. ......................................... 13

          1.    The Energy Code is inflicting actual, concrete injuries on Plaintiffs. ..................................................................................................... 14

          2.    Plaintiffs' injuries are traceable to and redressable by Defendants' actions. ................................................................................................... 17

V.    CONCLUSION....................................................................................................... 20

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - i

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

# TABLE OF AUTHORITES

**Page(s)**

CASES

*Ahmad v. Town of Springdale,*
   314 P.3d 729 (Wash. Ct. App. 2013) ...................................................................5

*Allen v. Wright,*
   468 U.S. 737 (1984) ..........................................................................................18

*Baldwin v. Sebelius,*
   654 F.3d 877 (9th Cir. 2011) ............................................................................15

*California Restaurant Association v. City of Berkeley,*
   65 F.4th 1045 (9th Cir. 2023) .............................................................................1

*California Restaurant Association v. City of Berkeley*
   89 F.4th 1094 (9th Cir. 2024) ...........................................................1, 2, 14, 15

*City & Cnty. Of San Francisco v. U.S. Citizenship & Immigr. Servs.,*
   944 F.3d 773 (9th Cir. 2019) ............................................................................14

*Coal. to Def. Affirmative Action v. Brown,*
   674 F.3d 1128 (9th Cir. 2012) ............................................................................4

*Culinary Workers Union, Local 226 v. Del Papa,*
   200 F.3d 614 (9th Cir. 1999) ............................................................................19

*Ex parte Young,*
   209 U.S. 123 (1908)....................................................1, 3, 4, 5, 6, 7, 8, 10, 11, 12, 13

*Havens Realty Corp. v. Coleman,*
   455 U.S. 363 (1982) ..........................................................................................16

*Hay v. Tollen,*
   No. 50227-5-II, 2018 WL 3239278 (Wash. Ct. App. July 3, 2018) .................5

*Helicopter Ass'n Int'l v. Hawai'i,*
   No. CV 23-00083 ................................................................................................8

*Hunt v. Washington State Apple Advertising Commission,*
   432 U.S. 333 (1977)..........................................................................................16

*Juliana v. United States,*
   947 F.3d 1159 (9th Cir. 2020) ..........................................................................20

*Leonard v. Clark,*
   12 F.3d 885 (9th Cir. 1993) ..............................................................................17

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

*Los Angeles Cnty. Bar Ass'n v. Eu*,
    979 F.2d 697 (9th Cir. 1992) ..........................................................................................4

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................................................14

*M.S. v. Brown*,
    902 F.3d 1076 (9th Cir. 2018) ......................................................................................20

*MacEwen v. Inslee*,
    No. C20-5423 BHS, 2020 WL 4261323 (W.D. Wash. July 24, 2020)...................10

*Marks v. U.S. Congress*,
    285 F. App'x 762 (D.C. Cir. 2008) (per curiam) ........................................................18

*Mecinas. Haaland v. Brackeen*,
    599 U.S. 255 (2023)........................................................................................................18

*Mecinas v. Hobbs*,
    30 F.4th 890 (9th Cir. 2022) ...........................................3, 4, 6, 7, 8, 9, 10, 12, 14, 17, 18, 19

*Mecinas v. Hobbs*,
    468 F. Supp. 3d 1186 (D. Ariz. 2020) ...........................................................................7

*Mi Familia Vota v. Abbott*,
    977 F.3d 461 (5th Cir. 2020) ......................................................................................8, 10

*Minnesota Auto Dealers Ass'n v. Minnesota by & through Minnesota Pollution Control Agency*,
    520 F. Supp. 3d 1126 (D. Minn. 2021)........................................................................12

*Mulgrew v. United States Dep't of Transp.*,
    No. 23-CV-10365 (LJL), 2024 WL 3251732 (S.D.N.Y. June 20, 2024) ................8

*Mulhern Gas Co., Inc. v. Rodriguez*,
    No. 1:23-CV-1267, 2024 WL 3992588 (N.D.N.Y. Aug. 29, 2024)................11, 12

*NASD Disp. Resol., Inc. v. Jud. Council of State of Cal.*,
    488 F.3d 1065 (9th Cir. 2007) ......................................................................................10

*NASD Dispute Resolution, Inc. v. Judicial Council of California*,
    232 F. Supp. 2d 1055 (N.D. Cal. 2002) ......................................................................10

*Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. New York*,
    336 F. Supp. 3d 50 (E.D.N.Y. 2018) ...........................................................................11

*Nat'l Audubon Soc'y, Inc. v. Davis*,
    307 F.3d 835 (9th Cir. 2002), *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002)........................................................................................................................15, 19

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - iii

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

*New Jersey Thoroughbred Horsemen's Ass'n v. Nat'l Collegiate Athletic Ass'n,*
     584 U.S. 453 (2018).............................................................................................20

*New York v. United States,*
     505 U.S. 144 (1992).............................................................................................19

*Planned Parenthood of Idaho, Inc. v. Wasden,*
     376 F.3d 908 (9th Cir. 2004) ................................................................................4

*Prakel v. Indiana,*
     100 F. Supp. 3d 661 (S.D. Ind. 2015) ............................................................18, 19

*Quinones v. City of Evanston, Ill.,*
     58 F.3d 275 (7th Cir. 1995) ..................................................................................10

*Rizzo v. Goode,*
     423 U.S. 362 (1976).............................................................................................20

*Safe Air for Everyone v. Meyer,*
     373 F.3d 1035 (9th Cir. 2004) ...............................................................................2

*Sec'y of the Interior v. California,*
     464 U.S. 312 (1984).............................................................................................17

*Shaw v. Delta Air Lines, Inc.,*
     463 U.S. 85 (1983)...............................................................................................19

*State v. City of Sunnyside,*
     550 P.3d 31 (Wash. 2024).....................................................................................13

*Stephenson v. Trause,*
     No. 33091–1–II, 2007 WL 458068 (Wash. Ct. App. Feb. 13, 2007) .......................5

*Unified Data Services, LLC v. FTC,*
     39 F.4th 1200 (9th Cir. 2022) ...............................................................................15

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.,*
     535 U.S. 635 (2002).............................................................................................20

**STATUTES**

42 U.S.C. § 6297(c) .......................................................................................................2

Berkeley's ordinance .....................................................................................................2

amendments to the Energy Code ............................................................................2, 11, 12

Energy Policy and Conservation Act, 42 U.S.C. §§ 6201-6422 ......................................1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

EPCA ..................................................................................................................1, 2

RCW 19.27.020 ...............................................................................................5, 6

RCW 19.27.020(1) ................................................................................................5

RCW 19.27.031 ....................................................................................................5

RCW 19.27.031(1) ................................................................................................1

RCW 19.27.040 ....................................................................................................6

RCW 19.27.050 ...............................................................................................5, 13

RCW 19.27.074(1)(a) ...........................................................................................5

RCW 43.10.030(1) ..............................................................................................13

chapter 19.27A RCW .............................................................................................1

State Building Code Act, RCW chapter 19.27 ......................................................1

**OTHER AUTHORITIES**

Eleventh Amendment.............................................................................1, 2, 3, 4, 7, 12

Rule 12(b)(1) ........................................................................................................2

WAC § 51-11C-10200, C102.1 .............................................................................9

WAC § 51-11C-11000, C.110.1 ............................................................................9

WAC § 51-11R-10200, R102.1 .............................................................................9

WAC § 51-11R-11000, R110.1 .............................................................................9

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - v

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

1

## I.     **INTRODUCTION**

2      Plaintiffs' single claim in their First Amended Complaint raises a straightforward question:

3 does the Energy Policy and Conservation Act, 42 U.S.C. §§ 6201-6422 ("EPCA"), preempt

4 Washington's restrictions on gas appliances? The Ninth Circuit resolved this question in Plaintiffs'

5 favor in *California Restaurant Association v. City of Berkeley*, 65 F.4th 1045 (9th Cir. 2023),

6 *amended and superseded by California Restaurant Association v. City of Berkeley,* 89 F.4th 1094

7 (9th Cir. 2024), where it held that EPCA regulates the energy use and efficiency of gas appliances

8 and expressly preempts state and local laws on that subject. Defendants' motion does not contest

9 the merits of Plaintiffs' case. Instead of defending their unlawful regulations on the merits,

10 Defendants try to insulate them from judicial review. But neither the Eleventh Amendment nor

11 Article III provides a basis for dismissing Plaintiffs' suit. Defendants have the requisite connection

12 to enforcement to make them proper parties to this suit under *Ex parte Young*, 209 U.S. 123 (1908),

13 and the injury to Plaintiffs caused by Defendants' actions can be redressed through a favorable

14 ruling in this case. Defendants' efforts to block judicial review of their preempted state regulations

15 should be rejected.

16

## II.     **BACKGROUND**

17      The State Building Code Act, RCW chapter 19.27, establishes for all counties and cities a

18 "state building code" that consists of various model codes ("Building Code"). RCW 19.27.031(1).

19 This Building Code also includes "[t]he state energy code referenced in chapter 19.27A RCW"

20 ("Energy Code"). *Id.* 19.27.015(11)(b); *see also id.* 19.27A.020(1) ("The state building code

21 council in the department of enterprise services shall adopt rules to be known as the Washington

22 state energy code as part of the state building code."). The State Building Code Council ("SBCC")

23 establishes and promulgates the Codes, *id.* 19.27.074, and cities and counties are required to

24 enforce them, *id.* 19.27.050 ("The state building code required by this chapter shall be enforced

25 by the counties and cities."). By promulgating the Codes, the SBCC sets the "minimum

26 performance standards and requirements for construction and construction materials," *id.*

27 19.27.020(1), and counties and cities may not "diminish" the "minimum performance standards"

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 1

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

established by the Building and Energy Codes. *See id.* 19.27.040; *see also id.* 19.27A.015; *id.* 19.27A.020(6)(a). Accordingly, cities and counties cannot deviate from the Codes and must enforce their restrictions.

EPCA regulates the energy use and efficiency of many gas appliances and expressly and broadly preempts state and local laws on that subject. 42 U.S.C. § 6297(c). In 2022, the SBCC adopted amendments to the Energy Code designed to prohibit or substantially limit the use of EPCA-covered gas appliances in many instances. Dkt. #47 at ¶¶ 41-51. The effective date of these restrictions was originally July 1, 2023, *id.* at ¶ 50, but after the Ninth Circuit's decision in *City of Berkeley*, which held that EPCA preempted the City of Berkeley's ordinance prohibiting the installation of natural gas piping within all newly constructed buildings, the SBCC delayed the effective date of the restrictions and then adopted amended ones with an effective date of March 15, 2024, Dkt. #47 at ¶¶ 52-57.

Plaintiffs filed suit against the individual SBCC members and the Attorney General in their official capacities, alleging that the Energy Code is preempted by EPCA. Dkt. #1. After Defendants filed a motion to dismiss, Plaintiffs filed their First Amended Complaint. Dkt. #47. In that operative complaint, Plaintiffs seek a declaratory judgment that the Energy Code's gas-appliance restrictions are preempted and a permanent injunction enjoining the Energy Code's restrictions on gas appliances. *Id.* at ¶¶ 118-27. Defendants then moved to dismiss the First Amended Complaint, arguing that the Eleventh Amendment bars Plaintiffs' suit and that Plaintiffs lack Article III standing to maintain the suit. Dkt. #48.

### III.   LEGAL STANDARD

"A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* Defendants purport to bring a factual challenge regarding two points: (1) that "the individual members of the Council 'mandated' the enforcement

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 2

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

of the Energy Codes by local officials," and (2) that "the AG 'is authorized to enforce the Energy Code.'" Dkt. #48 at p. 6 ("Neither of these allegations are true."). But those are questions of law, not disputed facts. Accordingly, given the absence of any factual challenges to Plaintiffs' other allegations, there are no factual disputes for this Court to resolve. Instead, it faces only pure questions of law to be decided on Plaintiffs' pleaded facts.

## IV.    ARGUMENT

Defendants raise two grounds in support of their motion to dismiss. First, they argue that the Eleventh Amendment bars suit against Defendants. Defendants claim that Plaintiffs cannot avail themselves of the exception to Washington's Eleventh Amendment immunity under *Ex parte Young* because they lack the required connection to enforcement of the Energy Code. Instead, Defendants assert that only local officials enforcing the Energy Code can be sued. But the Ninth Circuit's decision in *Mecinas v. Hobbs*, 30 F.4th 890 (9th Cir. 2022), dictates otherwise. There, the Court held that where—as here—the local officials that carry out regulations are bound to follow those rules and cannot disregard their enforcement, the regulator that promulgates them is sufficiently connected to trigger *Ex parte Young*'s exception to immunity. Accordingly, because the city and county officials here have no discretion to disregard the Energy Code and must enforce it, that provides the SBCC members with a sufficient connection to enforcement of the Energy Code to satisfy *Ex parte Young*'s "modest" requirement. *Mecinas*, 30 F.4th at 904.

Second, Defendants assert that Plaintiffs lack Article III standing. Defendants claim that Plaintiffs lack any actual or imminent injury and cannot show traceability or redressability. But Plaintiffs have sufficiently alleged injuries—including severe economic consequences for homebuilders and gas utilities—that directly and immediately harm them. As for traceability and redressability, *Mecinas* rejected nearly identical challenges on highly similar facts. 30 F.4th at 899-900. Simply put, Plaintiffs' injuries stem from and can be remedied by actions of the SBCC members. That more than suffices to establish standing.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 3

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

**A.      The *Ex parte Young* exception to Eleventh Amendment immunity permits suit against the SBCC members and the Attorney General.**

      **1.      *Ex parte Young* permits suit against state officers with some connection with the enforcement of violations of federal law.**

"The Eleventh Amendment erects a general bar against federal lawsuits brought against a state." *Coal. to Def. Affirmative Action v. Brown*, 674 F.3d 1128, 1133 (9th Cir. 2012) (citation and internal quotation marks omitted). "However, under *Ex parte Young*, 209 U.S. 123 (1908), this immunity is subject to an exception for actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law so long as the state officer has some connection with enforcement of the act." *Mecinas*, 30 F.4th at 903 (citation and internal quotation marks omitted); *see also Ex parte Young*, 209 U.S. at 157 ("[I]t is plain that such officer must have some connection with the enforcement of the act …."). "The rule of *Ex Parte Young* gives life to the Supremacy Clause by providing a pathway to relief from continuing violations of federal law by a state or its officers." *Los Angeles Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992) (citation and internal quotation marks omitted). Prospective relief "serve[s] the federal interest in assuring future compliance with federal law." *Id.*

      *Ex parte Young*'s connection requirement is a "modest" one. *Mecinas*, 30 F.4th at 904. "The 'connection' required under *Ex parte Young* demands merely that the implicated state official have a relevant role that goes beyond 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision.'" *Id*. at 903-04 (quoting *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)). In this case, the SBCC members' role in promulgating the Energy Code and the Attorney General's role in overseeing enforcement of the Energy Code easily satisfy this requirement.

      **2.      The SBCC members' promulgation of the mandatory Energy Code that cities and counties must enforce suffices to trigger the *Ex parte Young* exception.**

            **a.      The SBCC members promulgated a mandatory Energy Code that local officials must enforce.**

      Washington has crafted its building-code regulatory regime with the objective of "requir[ing] minimum performance standards and requirements for construction and construction

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 4

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

materials, consistent with accepted standards of engineering, fire and life safety." RCW 19.27.020(1). "To achieve this purpose, the statute incorporates certain substantive requirements … and brings them into effect in all counties and cities," and "[t]o ensure compliance, RCW 19.27.050 expressly states that '[the Building Code] shall be enforced by the counties and cities.'" *Hay v. Tollen*, No. 50227-5-II, 2018 WL 3239278, at *6 (Wash. Ct. App. July 3, 2018). Specifically, the SBCC is tasked with establishing and promulgating the Building Code (including the Energy Code). RCW 19.27.074(1)(a) (SBCC shall "[a]dopt and maintain the codes to which reference is made in RCW 19.27.031 in a status which is consistent with the state's interest as set forth in RCW 19.27.020."); *see also id.* 19.27A.160(2) (SBCC is tasked with adopting Energy Codes "that incrementally move towards achieving [a] seventy percent reduction in annual net energy consumption"). As the Managing Director of the SBCC explained in his declaration, "[b]y statute, the SBCC establishes the minimum building, residential, mechanical, fire, plumbing, and energy code requirements necessary to promote the health, safety and welfare of the people of the State of Washington, by reviewing, developing, and adopting the state building code." Dkt. #43, Dustin Curb Decl., at ¶ 3. And cities and counties are then required to enforce them. RCW 19.27.050 ("The state building code required by this chapter shall be enforced by the counties and cities."); *see also Ahmad v. Town of Springdale*, 314 P.3d 729, 732 (Wash. Ct. App. 2013) ("The town is a 'city' for purposes of the building code, and it is required to enforce the state building code."); *Stephenson v. Trause*, No. 33091–1–II, 2007 WL 458068, at *4 (Wash. Ct. App. Feb. 13, 2007) ("As the City points out in its brief, municipalities are required to enforce building codes.").

Cities and counties have no discretion to disregard the Energy Code's requirements and its enforcement. Dkt. #47-6, Mindy Brooks Decl., ¶ 5 ("[B]y adopting the Appliance Restrictions, the Washington State Building Code Council has mandated Lewis County to enforce the Appliance Restrictions regardless if the County would have adopted differing standards."); Dkt. #47-7, Jordan Neal Decl., ¶ 7 ("Thus, by adopting the Appliance Restrictions, the Washington State Building Code Council has mandated that Spokane County enforce the Appliance Restrictions …. Spokane County officials have no discretion to disregard this directive."). Nor may counties and cities

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

"diminish" the "minimum performance standards" established by the Energy Code. *See* RCW 19.27.040 ("The minimum performance standards of the codes and the objectives enumerated in RCW 19.27.020 shall not be diminished by any county or city amendments."); *see also id*. 19.27A.015 ("[T]he Washington state energy code for residential buildings shall be the maximum and minimum energy code for residential buildings in each city, town, and county and shall be enforced by each city, town, and county …. The Washington state energy code for nonresidential buildings shall be the minimum energy code for nonresidential buildings enforced by each city, town, and county."); *id*. 19.27A.020(6)(a) ("[T]he Washington state energy code for residential structures shall preempt the residential energy code of each city, town, and county in the state of Washington."); Dkt. #47-6, Mindy Brooks Decl., at ¶¶ 4, 6 ("Lewis County is prohibited from deviating from the Appliance Restrictions of the Washington State Energy Code in order to avoid the consequences stated above. Such deviation from these requirements would expose Lewis County to legal action by the state.… Lewis County would not have enacted heavy restrictions put in place by the State of Washington, yet we are required/forced to enforce the restrictions against those choosing to live and/or do business within the boundaries of Lewis County, Washington."); Dkt. #47-7, Jordan Neal Decl., at ¶¶ 4, 6, 8 (county lacks authority to amend Energy Code or implement less restrictive one).

### b. The Ninth Circuit's decision in *Mecinas v. Hobbs* confirms that the *Ex parte Young* exception applies here.

The SBCC members' roles in adopting and maintaining the mandatory Energy Code easily satisfies *Ex parte Young*'s connection requirement and renders those individuals proper defendants to this suit. The Ninth Circuit decision in *Mecinas* dictates that result, as it reached the same conclusion on analogous facts.

In *Mecinas*, the plaintiffs challenged Arizona's Ballot Order Statute, which directed that "candidates affiliated with the political party of the person who received the most votes in that county in the last gubernatorial race be listed first on the general election ballot." 30 F.4th at 894. The plaintiffs requested that the Arizona Secretary of State be enjoined from ordering candidates

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

on the general election ballot pursuant to the state's Ballot Order Statute and be directed to order candidates on the basis of some politically neutral ordering. *Id*. at 894-95; *see also Mecinas v. Hobbs*, 468 F. Supp. 3d 1186, 1195 (D. Ariz. 2020) (district court's recounting of relief requested by plaintiffs). The Secretary maintained that suit against her was barred by the Eleventh Amendment and that *Ex parte Young* did not apply "because she is merely the chief state election officer, not the one who prints the ballots." *Mecinas*, 30 F.4th at 903.

The Ninth Circuit rejected that argument. It explained that "while the county supervisors print the ballots," "they have no discretion in ordering candidate names." *Id*. at 900. "Rather they are bound to follow the Statute and the Election Procedures Manual, which is promulgated by the Secretary as a matter of Arizona law." *Id*. This Manual "contain[ed] detailed instruction on ballot design and expressly requires counties to order candidates' names on ballots in accordance with the Statute" and "[was] promulgated by the Secretary in the context of her role as Arizona's 'chief state election officer.'" *Id*. (citation omitted). Because Arizona law delegated to the Secretary "the authority to prescribe rules for producing and distributing ballots in accordance with the Statute, the counties would have no choice but to follow a mandate from her directing them to order the ballots pursuant to a court's injunction." *Id*. (cleaned up). The Secretary's role in ballot ordering thus "far exceeded" *Ex parte Young*'s "modest [connection] requirement." *Id.* at 904; *see also id.* at 903-04 ("The 'connection' required under *Ex parte Young* demands merely that the implicated state official have a relevant role that goes beyond 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision.'") (citation omitted).[1]

Just like the county officials in *Mecinas*, the city and county officials here "have no discretion to disregard" the regulations at issue. *Id*. at 903. They are bound to follow the Energy

---

[1]  The Ninth Circuit also rejected the Secretary's reliance on *Mi Familia Vota v. Abbott*, 977 F.3d 461 (5th Cir. 2020), because in that case the Fifth Circuit's holding that the suit against the Texas Secretary of State did not fall within the *Ex parte Young* exception "was premised on a finding that an injunction against the Texas Secretary of State would still leave local officials with enough discretion to prevent meaningful relief." *Mecinas*, 30 F.4th at 903 (citing *Mi Familia Vota*, 977 F.3d at 467-68); *see infra* at pp. 9-10.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 7

1    Code promulgated by the SBCC members, and they "would have no choice but to follow a mandate

2    from … [the SBCC regarding the Energy Code] pursuant to a court's injunction." *Id.* at 900.

3    Where, as here, those who carry out regulations are bound to follow those rules and cannot

4    disregard enforcement, the regulator who promulgates them is sufficiently connected to trigger *Ex*

5    *parte Young*'s exception to immunity. *Id.* at 903-04; *see also Mulgrew v. United States Dep't of*

6    *Transp.*, No. 23-CV-10365 (LJL), 2024 WL 3251732, at *14 (S.D.N.Y. June 20, 2024) (state

7    transportation agency chief engineer exercising responsibility over development of tolling

8    program sufficed to establish connection requirement even though she did not charge or collect

9    challenged tolls); *Helicopter Ass'n Int'l v. Hawai'i*, No. CV 23-00083 LEK-WRP, 2023 WL

10   6850157, at *5 (D. Haw. Oct. 17, 2023) (state transportation agency director met "the modest

11   connection requirement of *Ex parte Young*" because he was mandated to promulgate rules and

12   regulations and thus "[his] role goes beyond a generalized duty to enforce state law").

13                  **c.**      **Defendants' nonbinding and inapposite caselaw cannot overcome**
                                 ***Mecinas*'s controlling holding.**

14

15           Defendants' efforts to avoid *Mecinas*'s binding and on-point holding fail. They assert that

16   "[n]one of the Council members have the type of authority akin to the Arizona Secretary of State

17   in *Mecinas*, and the law explicitly contemplates local enforcement of the Codes." Dkt. #48 at p.

18   12. Not so, as this case presents a direct analogue to *Mecinas* in all relevant respects. The SBCC

19   members and local officials here have precisely the same type of promulgation and enforcement

20   authority, respectively, as in *Mecinas*. There, as here, state officials promulgated a set of rules and

21   directives that local officials then carry out and "have no discretion to disregard." 30 F.4th at 903;

22   *see supra* at pp. 5-6 (discussing localities' lack of discretion to disregard the Codes' requirements

23   and their enforcement). For that reason, as in *Mecinas*, the local officials "would have no choice

24   but to follow a mandate from … [the SBCC regarding the Codes] pursuant to a court's injunction."

25   *Id.* at 900; *see supra* at pp. 5-6 (cities and counties cannot disregard enforcement of Codes).

26   Because that kind of role "far exceeded" *Ex parte Young*'s "modest [connection] requirement" in

27   *Mecinas*, it necessarily does so here as well. *Mecinas*, 30 F.4th at 904.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 8

1     Defendants next claim that "Plaintiffs' focus on whether local code officials have

2  discretion in enforcement of the codes misses the mark." Dkt. #48 at p. 11. But lack of discretion

3  in enforcement was the entire basis for the Ninth Circuit's decision in *Mecinas*, 30 F.4th at 903-

4  04, and so it is Defendants who miss the mark. Defendants fail to cite any provision granting local

5  officials the authority to disregard the Codes' requirements. Dkt. #48 at p. 11. Instead, the best

6  they can do is show that local officials may approve an alternative material, design, or method of

7  construction that complies with the intent of the Codes and performs not less than the equivalent

8  of what the Codes require, WAC § 51-11R-10200, R102.1; WAC § 51-11C-10200, C102.1, and

9  may adopt rules of procedures for how appeals from the local officials' orders and determinations

10 may be heard and decided,  WAC § 51-11R-11000, R110.1; WAC § 51-11C-11000, C.110.1. If

11 anything, these provisions make clear that local officials lack the "discretion to disregard" the

12 Codes. *Mecinas*, 30 F.4th at 903.

13     It is also irrelevant that the SBCC members "lack[] any independent recourse if a local

14 code official decides not to enforce the Codes." Dkt. #48 at 11. *Mecinas* did not base its decision

15 on any independent recourse by the Secretary of State to enforce her ballot-ordering directives.

16 *See id.* at 900, 903-04. Instead, the court rested its holding on the fact that there, as here, state law

17 required the local officials to enforce the statewide officials' promulgated rules. *See id.*[2]

18     Unable to get around *Mecinas*'s binding holding, Defendants shift their focus to non-

19 binding caselaw, much of which comes from other circuits and predates *Mecinas*. None overcomes

20 *Mecinas*'s controlling holding. Defendants misfire when they assert that the present case is instead

21 more comparable to *Mi Familia Vota*, 977 F.3d 461—the Fifth Circuit case the *Mecinas* court

22 rejected. Dkt. #48 at p. 12; *see also supra* at p. 7 n.1. The problem for the plaintiffs in that case

23 was not—as Defendants claim—that localities enforced ballot laws. *Id.* Rather, it was that due to

24 the local officials' substantial discretion, "an injunction against the Texas Secretary of State would

---

25 [2] The court noted that it was a misdemeanor under Arizona law to violate a rule adopted by the
26 Secretary, 30 F.4th at 900, but it did not rely on that fact in its discussion of the Secretary's
   sufficient connection to enforcement, *id.* at 900, 903-04. Instead, the Secretary's authority to
27 promulgate mandatory rules sufficed. *Id.*

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 9

still leave local officials with enough discretion to prevent meaningful relief." *Mecinas*, 30 F.4th at 903 (citing *Mi Familia Vota*, 977 F.3d at 467-68). Since the mandatory enforcement schemes involved both here and in *Mecinas* grant local officials no such discretion, that issue is not present here and thus poses no barrier to satisfying the *Ex parte Young* requirement. *Mecinas*, 30 F.4th at 903.

The remainder of Defendants' cases are even less relevant. *MacEwen v. Inslee*, No. C20-5423 BHS, 2020 WL 4261323 (W.D. Wash. July 24, 2020), dealt with a scenario in which the governor issued a proclamation but local officials retained discretionary authority over its enforcement. *Id*. at *1-2. In *NASD Dispute Resolution, Inc. v. Judicial Council of California*, 232 F. Supp. 2d 1055 (N.D. Cal. 2002)—which was vacated due to the case becoming moot while on appeal, *see NASD Disp. Resol., Inc. v. Jud. Council of State of Cal.*, 488 F.3d 1065 (9th Cir. 2007)—a statewide independent policymaking body promulgated ethical standards for arbitrators that would be enforced by the discretionary actions of third parties, namely private parties seeking vacatur of arbitral awards that failed to comply with the ethical standards. 232 F. Supp. 2d at 1065-66. *Quinones v. City of Evanston, Ill.*, 58 F.3d 275 (7th Cir. 1995), simply held that the state was not a necessary party and that the city was a proper defendant because although the municipality applied a state law that aggrieved the plaintiff, the validity of the state law could be adjudicated in a case between private parties without involving the state. *Id*. at 277.

Similarly, in *Mulhern Gas Co., Inc. v. Rodriguez*, No. 1:23-CV-1267 (GTS/CFH), 2024 WL 3992588 (N.D.N.Y. Aug. 29, 2024), the court held that the state's building code council members were not proper defendants because the statute being challenged did no more than dictate to them to codify specific provisions in the state building code. *Id.* at *5. The members were simply "a sort of middleman" who amended the code as directed by the legislature with no discretion to deviate from the legislature's directives, and "the fact that the Code Council is tasked with integrating that mandatory policy into the Codes does not transform the members of the Code Council into the authors or the enforcers of that policy." *Id.* This menial role meant that suit against the council members would be a suit against the author of the policy—the state. *Id.* at *5-6. The

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 10

court even acknowledged that had the council members been given greater discretion in the content of the code amendments promulgated—like the SBCC members had here, *see supra* at p. 5 (SBCC is delegated the responsibility to establish the Codes)—they may have been proper defendants. *Id.* at *6 n.5 (citing *Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. New York*, 336 F. Supp. 3d 50 (E.D.N.Y. 2018)); *see also Nassau & Suffolk Cnty. Taxi Owners Ass'n*, 336 F. Supp. 3d at 68 ("Because Article 44-B's central licensing provision unequivocally delegates rulemaking authority to Commissioner Egan in her official capacity, and because she has in fact acted on her rulemaking authority by issuing regulations, the Court is satisfied that Commissioner Egan has a sufficient connection to the challenged law to be a defendant here under *Ex parte Young*.").

In any event, *Mulhern* supports the SBCC members' amenability to suit in this case. The *Mulhern* court strongly suggested that the New York Secretary of State—who played a similar role as the SBCC members in enforcing the challenged law—was a proper defendant:

> [A]lthough the members of the Code Council create amendments to the Codes, such amendments must be reviewed and approved specifically by the Secretary before they can become effective. In other words, it is the Secretary, and not the members of the Code Council, that enacts amendments to the Codes; and thus it is the Secretary that has the authority to implement the relevant statutes directing the gas equipment amendments that Plaintiffs now challenge, even if it is the members of the Code Council who prepare or write the relevant amendments. Therefore, even if it could be said that there is some measure of "enforcement" of the statutes in the adoption of the statutes' requirements into the Codes, it is the Secretary that is ultimately responsible for that enforcement by virtue of the Secretary having the final approval of any code amendments.

*Mulhern Gas Co.*, 2024 WL 3992588, at *7. In short, the council members in *Mulhern* played a different role than the SBCC members do here, and the court's analysis of the Secretary of State's role indicates that the SBCC members, who perform a similar function, are proper defendants.

Lastly, Defendants' emphasis on cities' and counties' status as separate political subdivisions of the state is misguided as well. Dkt. #48 at p. 11. While a state and its localities

may be distinct political and legal entities, that is irrelevant to assessing whether the SBCC members have "some connection" with enforcement of the Codes.

### d.    Defendants' policy concerns are misplaced.

Defendants worry that "[i]f Plaintiffs' argument were accepted, the Eleventh Amendment's protections would be eviscerated—parties could bring any number of challenges against a state by naming as a defendant every state legislator (or, as here, every member of a quasi-legislative state agency), arguing that passage of a law or a rule is a directive to enforce." Dkt. #48 at p. 12. But Plaintiffs do not advocate any such rule. The only rule urged by Plaintiffs is one the Ninth Circuit has already adopted—when those who carry out regulations are bound to follow those rules and cannot disregard their enforcement, the regulator who promulgates them is sufficiently connected to trigger *Ex parte Young*'s exception to immunity. *Mecinas*, 30 F.4th at 903-04.[3]

Ironically, while Plaintiffs' arguments would not "eviscerate[]" the Eleventh Amendment, Dkt. #48 at p.12, Defendants' position would eviscerate the supremacy of federal law. According to Defendants, so long as the state delegates enforcement to localities and directs them to enforce the state's dictates without discretion to disregard them, the state can evade federal law. To be sure, the constitutional immunity of the states must be respected, but so must the need to prevent violations of federal law and promote the vindication of federal rights. *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 269-70, 274-78 (1997). *Ex parte Young* seeks to strike that balance, and here the SBCC members' role far exceeds what is required under it. Defendants' contrary position would disregard the need to preserve the supremacy of federal law in favor of absolute state immunity for federal law violations. That radical view must be rejected.

---

[3] Contrary to Defendants' claims, this case is nothing like *Minnesota Auto Dealers Ass'n v. Minnesota by & through Minnesota Pollution Control Agency*, 520 F. Supp. 3d 1126 (D. Minn. 2021). In that case, the state official had proposed emissions rules with an effective date delayed indefinitely and contingent on the resolution of other litigation. *Id*. at 1131-32. "Those rules ha[d] neither been adopted nor taken effect," so no enforcement had occurred at all. *Id*. at 1134. Implicitly threatening to enforce proposed rules when they took effect did not suffice for purposes of *Ex parte Young*. *Id*. For similar reasons, standing was lacking, and the claims were not ripe. *Id*. at 1135-40.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 12

3.      **The Attorney General is amenable to suit under *Ex parte Young*.**

The Attorney General is also a proper defendant under *Ex parte Young*. Washington law provides that the Attorney General shall "[a]ppear for and represent the state before the supreme court or the court of appeals in all cases in which the state is interested." RCW 43.10.030(1); *see also id.* 43.10.110 ("The attorney general shall have the power and it shall be his or her duty to perform any other duties that are, or may from time to time be required of him or her by law."). The Washington Supreme Court "ha[s] held that RCW 43.10.030(1) confers broader authority than the plain text indicates." *State v. City of Sunnyside*, 550 P.3d 31, 41 (Wash. 2024) (citation and internal quotation marks omitted). Specifically, "the attorney general has discretionary authority to act in any court in matters of public concern, even without express statutory authorization, provided there is a cognizable common law or statutory cause of action." *Id.* In *City of Sunnyside*, the Attorney General brought suit against a city for its operation of its crime-free rental housing program, alleging various state and federal law violations under the state and federal Constitutions and state and federal antidiscrimination laws. *Id.* at 35-36. The court permitted the suit, emphasizing that it "ha[d] never required express statutory authorization for the attorney general to maintain a particular action under RCW 43.10.030(1)" and that the lawful operation of the program at issue was a matter of public concern. *Id.* at 43.

Thus, the Attorney General would have the authority to bring an appropriate cause of action against cities and counties that violate RCW 19.27.050 by refusing to apply the mandatory Energy Code, just as the Attorney General brought an action against the locality in *City of Sunnyside* for its violations of state laws. That ability to enforce the Energy Code suffices to satisfy *Ex parte Young*'s "modest [connection] requirement." *Mecinas*, 30 F.4th at 904.

**B.      Plaintiffs satisfy the requisites of Article III standing.**

Defendants' challenge to Plaintiffs' standing fails as well. "To have standing, plaintiffs must establish (1) that they have suffered an injury in fact, (2) that their injury is fairly traceable to a defendant's conduct, and (3) that their injury would likely be redressed by a favorable decision." *Mecinas*, 30 F.4th at 896. "At the pleading stage, general factual allegations of injury

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 13

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (cleaned up). "In a suit with multiple plaintiffs, generally only one plaintiff need have standing for the suit to proceed." *Mecinas*, 30 F.4th at 897. Here, Plaintiffs' allegations more than meet those basic standing requirements.

### 1. The Energy Code is inflicting actual, concrete injuries on Plaintiffs.

Defendants claim that "Plaintiffs' claimed harms generally do not suffice to alleged injury-in-fact." Dkt. #48 at p. 15. But Plaintiffs have alleged specific injuries that are both "concrete and particularized and actual or imminent, not conjectural or hypothetical." *Mecinas*, 30 F.4th at 897. Since "only one plaintiff need have standing for the suit to proceed," Defendants would have to overcome the unchallenged harm allegations of each of the seventeen Plaintiffs to prevail. *Id*.

The homebuilder plaintiffs clearly have suffered an injury under *City of Berkeley*. Because of the Energy Code, the homebuilder plaintiffs' profit margins will be affected. Dkt. #47 at ¶¶ 16-21. Not only must they build homes that are less attractive to customers, but they must also choose between either absorbing the increased costs of construction, or passing these costs to customers and thereby increase the costs of new homes and decrease the number of homes they can build and sell. *Id.*; *see also id.* at ¶ 62 (SBCC's own economic analysis of Energy Codes recognizes that construction costs will increase). This stymying of their business and economic harm is more than enough for an injury-in-fact. *City of Berkeley*, 89 F.4th at 1100 (injury-in-fact satisfied where ordinance inhibited operation of the business of plaintiff's members); *see also City & Cnty. Of San Francisco v. U.S. Citizenship & Immigr. Servs.*, 944 F.3d 773, 787 (9th Cir. 2019) ("Similarly, the States have sufficiently alleged that they are facing new and ongoing operational costs resulting from the Final Rule."); *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 855 (9th Cir. 2002) ("economic injury is clearly a sufficient basis for standing") (cleaned up), *opinion amended on denial of reh'g*, 312 F.3d 416 (9th Cir. 2002).

Defendants do not dispute that economic injury is sufficient for standing; instead, they claim that this financial harm is not imminent because the homebuilders have not asserted that they

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

intend to violate the Energy Code. But Plaintiffs allege that they are in the business of building new homes, would prefer to build them with natural gas appliances, and now cannot do so to their economic detriment. Dkt. #47 at ¶¶ 16-21. In *City of Berkeley*, the inability of the plaintiff's members to open a new business without "a date certain" for that new business still "pose[d] a 'credible threat' of a 'probabilistic harm'" sufficient for standing. 89 F.4th at 1100. So too here.

Defendants also posit that this case is different from *City of Berkeley* because homebuilders can still use natural gas appliances, albeit at higher costs, and so the claimed injury is merely the cost of complying with the Energy Code. Dkt. #48 at 18. Even if true, Defendants' have no support for their claim that the costs of compliance with a regulation somehow do not count as a cognizable injury. Their two cited cases certainly did not hold that. In *Unified Data Services, LLC v. FTC*, 39 F.4th 1200 (9th Cir. 2022), the complaint contained "little information" about how the plaintiffs used the regulated technology and "virtually no information" about their plans to use the technology in a manner that contravened federal regulations. *Id*. at 1203-05. At most, the plaintiffs alleged that they had invested millions of dollars in the industry and now faced "whipsaw" under the new agency guidance. *Id*. at 1211. And in *Baldwin v. Sebelius*, 654 F.3d 877 (9th Cir. 2011), the plaintiff did not allege a lack of compliance with the statute or the need to save money now to bring himself into compliance when the statute went into effect; instead, he argued that "he has suffered injury because he must take investigatory steps to determine if he is in compliance with the Act." *Id*. at 879. "But this is not a particularized injury that distinguishes [the plaintiff's] position from everyone else to whom the Act may apply." *Id.* Here, the homebuilder plaintiffs have alleged they will suffer new economic injury due to complying with the Energy Code. That suffices for Article III.

The utility plaintiffs have also established an injury-in-fact. The Energy Code causes them economic injury through the erosion of their customer base via the loss of both new and existing customers. Dkt. #47 at ¶¶ 31-33. Defendants argue that these claims of injury rely on speculative chains of causation and depend on the actions of third parties, namely the utilities' customers. Dkt. #48 at p. 17. But the utility plaintiffs have detailed how because of the Energy Code, developers

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 15

are forgoing extension of gas service to new homes, and customers, both potential and existing, are forgoing gas service to their homes, all of which leads to economic harm to the utility plaintiffs. *See* Dkt. #47 at ¶¶ 31-33; Dkt. #47-1, Robb Koschalk Decl., at ¶¶ 5-8; Dkt. #47-2, Ted R. McCammant Decl., at ¶¶ 5-6; Dkt. #47-3, John Frankel Decl., at ¶¶ 4, 6; Dkt. #47-4, Nelson Holmberg Decl., at ¶ 3; Dkt. #47-5, Gerald L. Rowlett Decl., at ¶ 5. Indeed, plaintiff Northwest Natural Gas Company "already has lost would-be customers as a result of the Appliance Restrictions." Dkt. #47-3, John Frankel Decl., at ¶ 4. The loss of customers caused by the Energy Code will also hamper the utility plaintiffs' abilities to maintain and invest in their gas systems. Dkt. #47 at ¶¶ 31-33. The utility plaintiffs' economic harms are occurring, their allegations do not rely on speculation, and Defendants offer no controverting facts.

For similar reasons, the union plaintiffs have also alleged an injury-in-fact. Dkt. #47 at ¶¶ 26-28. Because the Energy Code will impair union plaintiffs' members specializing in the installation, maintenance, and repair of gas-powered systems and appliances by depriving them of jobs and their livelihood, the union plaintiffs have associational standing under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977) (association has standing to bring suit on behalf of its members). And because the union plaintiffs will both have to divert significant resources away from their usual activities to assist union members and counteract the effects of the Energy Code and lose union members, the unions have standing under *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378-79 (1982) (organizations can assert Article III standing in their own right).

Other Plaintiffs can establish standing as well. *See* Dkt. #47 at ¶ 15 (homeowner Banta will face increased costs of natural gas); *id.* ¶¶ 22-25 (Spokane Home Builders Association must divert resources from usual activities to educate members and local building officials about the Energy Code, and its homebuilder members face economic injury); *id.* ¶ 30 (members of Natural Gas Pipeline Association will face reduced business because of the Energy Code). But at this stage and where all Plaintiffs request the same relief, only one Plaintiff needs standing, and this Court need not consider the standing of every Plaintiff. *See Sec'y of the Interior v. California*, 464 U.S. 312,

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 16

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

319 n.3 (1984) ("Since the State of California clearly does have standing, we need not address the standing of the other [plaintiffs], whose position here is identical to the State's."); *Leonard v. Clark*, 12 F.3d 885, 888 (9th Cir. 1993) ("The general rule applicable to federal court suits with multiple plaintiffs is that once the court determines that one of the plaintiffs has standing, it need not decide the standing of the others.").

**2.** **Plaintiffs' injuries are traceable to and redressable by Defendants' actions.**

Plaintiffs also challenge traceability and redressability, Dkt. #48 at pp. 19-23, but they omit any discussion of the most important case on those points: *Mecinas*. *Mecinas* is binding authority on directly analogous facts. Recall that there the plaintiffs sued the Arizona Secretary of State—the state-level official that issued directives regarding the ordering of candidates on the ballot—rather than the county supervisors—the local officials that actually printed the ballots. *Mecinas*, 30 F.4th at 894, 899-900. The Secretary maintained that the plaintiffs could not satisfy the traceability and redressability prongs of standing because she did not prepare and print the ballots. *Id.* at 899-900. The Ninth Circuit rejected that argument because "while the county supervisors print the ballots," "they have no discretion in ordering candidate names." *Id.* at 900. Accordingly, traceability and redressability were satisfied since "the counties would have no choice but to follow a mandate from [the Secretary] directing them to order the ballots pursuant to a court's injunction." *Id.* At the very least, "an injunction against the Secretary would 'significant[ly] increase' the likelihood of relief." *Id.*

This case is all on fours with *Mecinas*. Plaintiffs sued the state-level officials that promulgated binding directives that local officials must carry out and "have no discretion to disregard." *Id.* at 903; *see supra* at pp. 5-6 (discussing localities' lack of discretion to disregard the Energy Code's requirements and its enforcement). And the local officials "would have no choice but to follow a mandate from … [the SBCC regarding the Energy Code] pursuant to a court's injunction." *Mecinas*, 30 F.4th at 900; *see supra* at pp. 5-6 (cities and counties cannot disregard enforcement of the Energy Code). Thus, as in *Mecinas*, Plaintiffs' injuries from the Energy Code

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

stem from the Defendants' actions and can be remedied by their reversal. That should end the traceability and redressability analysis.

Rather than grapple with *Mecinas*'s fatal traceability and redressability holdings, Defendants point the Court to inapposite cases that do not override the outcome dictated by *Mecinas*. *Haaland v. Brackeen*, 599 U.S. 255 (2023), dealt with a statute that directed how states must apply placement preferences for adoptions of Indian children, an area of domestic relations in which the states maintain significant latitude. *Id*. at 276-77. Due to the states' ability to control those types of placement preferences, an injunction preventing federal parties from enforcing the statute or a declaratory judgment that the statute was unconstitutional would therefore not necessarily result in any relief. *Id*. at 292. Here, in contrast, the cities and counties *must* enforce the Energy Code and have no discretion to cast it aside in favor of their own preferred policies. Similarly, in *Allen v. Wright*, 468 U.S. 737 (1984), the Supreme Court held that standing was lacking because withdrawal of the challenged tax exemptions to racially discriminatory private schools would not have any impact on public school integration due to the discretionary decisions of third parties, such as officials of racially discriminatory schools and parents of children attending such schools. *Id*. at 757-59. Likewise, the court in *Marks v. U.S. Congress*, 285 F. App'x 762 (D.C. Cir. 2008) (per curiam), addressed immigration—an area of law with wide discretion in enforcement—and simply held that the plaintiff's claims challenging Congress's authority to provide for the removal of persons from the United States had to be raised in a removal proceeding. *Id*. at 763. And in *Prakel v. Indiana*, 100 F. Supp. 3d 661 (S.D. Ind. 2015), the court held only that when a local court fails to follow a rule of trial procedure, the plaintiff should sue the court, not the state officials and bodies who promulgated the rule, because the act of promulgation was not the source of the injury. *Id*. at 674.[4]

Plaintiffs also claim that any redress against the SBCC members would be impermissible

---

[4] And as for *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 618 (9th Cir. 1999), Plaintiffs have explained how the Attorney General's role in enforcement is "possible," *id.* at 618, through an action against the cities and counties. *See supra* at pp. 13.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 18

commandeering. Dkt. #48 at pp. 22-23. But *Mecinas* makes clear that a federal court can issue an injunction against a state-level official that repeals extant state law and/or policy. 30 F.4th at 900 ("Because, as noted above, the Secretary is statutorily delegated the authority to prescribe rules for producing and distributing ballots in accordance with the Statute, the counties would have no choice but to follow a mandate from her directing them to order the ballots pursuant to a courts injunction.") (cleaned up). After all, "[t]he Supremacy Clause of the Constitution, Art. VI, cl. 2, invalidates state laws that interfere with, or are contrary to, federal law," *Nat'l Audubon Soc'y*, 307 F.3d at 851 (citation and internal quotation marks omitted), and "[i]t is beyond dispute" that a federal court can adjudicate a case in which "[a] plaintiff … seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute …." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96 n.14 (1983). That is all Plaintiffs seek here—an "injunction enjoining the effectiveness of the Energy Code and prohibiting Defendants from maintaining or enforcing the Energy Code" in light of EPCA's express preemption provision. Dkt. #47 at p. 31. Such an injunction would force the SBCC members to cease "maintaining" the Energy Code in full force and effect and would therefore require them to revert to the previous iteration of building regulations. That is analogous to the relief contemplated in virtually every preemption case (and in *Mecinas*), and it poses no commandeering concerns.

To be sure, there is a line beyond which federal injunctions against state officials become impermissible commandeering. The cases Defendants cite mark out that line clearly. For example, Congress may not directly compel a state to legislate in a certain way, *New York v. United States*, 505 U.S. 144, 161-66 (1992), or dictate what statutes a state legislature may or may not enact, *New Jersey Thoroughbred Horsemen's Ass'n v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 474-75 (2018). And federalism concerns may be implicated when a federal court is asked to "inject[] itself by injunctive decree into the internal disciplinary affairs of [a] state agency" through "the fashioning of prophylactic procedures for [the] state agency," *Rizzo v. Goode*, 423 U.S. 362, 378, 380 (1976), or to "order[] government officials to enact or implement a bill that has not completed a lawfully prescribed legislative process," *M.S. v. Brown*, 902 F.3d 1076, 1087 (9th Cir. 2018)

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 19

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

(state law allowed voters to approve or reject bills before becoming law, bill was rejected by voters and never became law, and plaintiffs alleged that voters' rejection of bill was motivated by unconstitutional discriminatory animus).[5] Seeking injunctive relief prohibiting enforcement of a preempted regulation by a state official is routine practice, not commandeering. *See Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 642, 645-48 (2002).

Here, Plaintiffs seek negative, not affirmative, relief from the SBCC members, as they simply want the illegal Energy Code stricken rather than any specific substantive provision written into the law. That cannot be commandeering, or else there would be no effective way to enforce federal rights against state governments that transgress them, especially where Congress has provided for express preemption of contrary state laws. Plaintiffs' requested relief comes nowhere near to commandeering the State of Washington and does not raise any federalism concerns.

## V.     CONCLUSION

The Defendants' Motion to Dismiss should be denied.

---

[5] *Juliana v. United States*, 947 F.3d 1159 (9th Cir. 2020), held that it was beyond the power of an Article III court to "to order, design, supervise, or implement" a remedial plan for the federal government to deal with greenhouse gas emissions and climate change. *Id*. at 1171. It has nothing to do with this case.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 20

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107

DATED: October 4, 2024

LANE POWELL PC

By:   *s/ Devon J. McCurdy*
      Callie A. Castillo, WSBA No. 38214
      Devon J. McCurdy, WSBA No. 52663
      1420 Fifth Avenue, Suite 4200
      P.O. Box 91302
      Seattle, Washington 98111-9402
      Telephone:  206.223.7000
      castilloc@lanepowell.com
      mccurdyd@lanepowell.com
*Counsel for the Homeowners, Builders, and Suppliers,
and Unions*

SNELL & WILMER L.L.P.

By:   *s/ Clifford S. Davidson*
      Clifford S. Davidson, WSBA No. 48313
      Amit D. Ranade, WSBA No. 34878
      Mallory L. B. Satre , WSBA No. 50194
      SNELL & WILMER L.L.P.
      600 University Street, Suite 310
      Seattle, WA 98101
      (206) 741-1402
      csdavidson@swlaw.com
      aranade@swlaw.com
      msatre@swlaw.com


BAKER BOTTS L.L.P.
      Megan H. Berge (DC Bar No. 98371)
      Scott Novak (DC Bar No. 1736274)
      700 K Street NW
      Washington, D.C. 20001
      Telephone:  202.639.1308
      megan.berge@bakerbotts.com
      scott.novak@bakerbotts.com
*Counsel for the Utilities*

I certify that this memorandum contains 7,664 words,
in compliance with the Local Civil Rules.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS - 21

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WASHINGTON 98111-9402
206.223.7000 FAX: 206.223.7107