The Honorable Kymberly K. Evanson

1

2

3

4

5

6

7          **UNITED STATES DISTRICT COURT**
          **WESTERN DISTRICT OF WASHINGTON**
8                  **AT SEATTLE**

9    JAMON RIVERA, et al.,                    NO. 2:24-cv-00677-KKE

10                 Plaintiffs,                 REPLY IN SUPPORT OF DEFENDANTS'
                                               MOTION TO DISMISS
11         v.
                                               NOTE ON MOTION CALENDAR:
12   KJELL ANDERSON, et al.,                   October 11, 2024

13                 Defendants.

14

15                      **I.      INTRODUCTION**

16        The core of *Ex parte Young* is that, to avoid a state's Eleventh Amendment immunity, a

17   plaintiff must sue the entity that enforces a rule or law, not the entity that passed it. 209 U.S. 123

18   (1908).  This  basic  tenet  also  underscores  Article  III's  traceability  and  redressability

19   requirements. Here, Plaintiffs have sued the rulemakers—the individual members of the State

20   Building Code Council—along with the Attorney General, none of whom have any connection

21   to enforcement of the Energy Codes. Plaintiffs' federal case therefore fails under the Eleventh

22   Amendment and Article III standing principles.

23        Plaintiffs contend that *California Rest. Ass'n v. City of Berkeley* (*CRA*), 89 F.4th 1094

24   (9th Cir. 2024), is dispositive on the merits, and that fundamental principles of subject matter

25   jurisdiction and sovereign immunity simply function as an attempt to avoid that conclusion. They

26   are wrong on both counts. *CRA*—which, unlike here, was a suit against a municipal enforcer of

REPLY IN SUPPORT OF DEFENDANTS'                1          ATTORNEY GENERAL OF WASHINGTON
MOTION TO DISMISS                                                    Complex Litigation Division
NO. 2:24-cv-00677-KKE                                                  7141 Cleanwater Dr SW
                                                                          P.O. Box 40111
                                                                      Olympia, WA 98504-0111
                                                                         (360) 709-6470

the challenged ordinance—involved a prohibition on natural gas piping to buildings, rendering gas appliances useless. *Id.* at 1094. The case was narrowly decided: "We only decide that EPCA's preemptive scope applies to building codes that regulate the gas usage of covered appliances on premises where gas is otherwise available." *Id.* at 1103. Washington's building codes do no such thing: nothing in the Codes bars builders from piping natural gas into newly constructed buildings, or consumers from using natural gas appliances. Moreover, the Energy Policy and Conservation Act (EPCA) contains an express exemption from preemption for regulations of covered consumer appliances contained in a building code when the codes meet seven specified factors. 42 U.S.C. §§ 6291, 6297. The *CRA* Court wasn't called upon to determine whether the Berkeley ordinance met those factors, but the codes here were carefully drafted to do just that.

Federal courts are courts of limited subject matter jurisdiction, and a federal court is required to examine its own jurisdiction before proceeding. *United States v. McIntosh*, 833 F.3d 1163, 1173 (9th Cir. 2016). Far from attempting to avoid the merits, Defendants seek to ensure that this case is brought in the proper forum, against the appropriate parties, before resources are spent on a case that must be dismissed. Without jurisdiction, this Court is without power to act, and this case could be dismissed at any point in the proceedings on these grounds. *See Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (courts cannot proceed to the merits without jurisdiction and jurisdiction may not be assumed). This Court should dismiss Plaintiffs' First Amended Complaint as barred by the Eleventh Amendment and for lack of jurisdiction under Article III.

## II.    ARGUMENT

### A.    Defendants Have Eleventh Amendment Immunity

It is undisputed that the Eleventh Amendment bars suit against state agencies and state officials for the type of relief sought in this case. *See* Dkt. # 52. When plaintiffs seek to avoid the Eleventh Amendment bar by suing a state officer, "it is plain that such officer [must have]

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    some connection with the enforcement of the act[,] or else it is merely making him a party as a

2    representative of the State, and thereby attempting to make the State a party." *Snoeck v. Brussa*,

3    153 F.3d 984, 986 (9th Cir. 1998), *quoting Ex Parte Young*, 209 U.S. at 157.

4         Plaintiffs do not dispute that to avail themselves of the *Ex parte Young* exception, the

5    state officials they seek to sue in federal court "must have some connection with enforcement of

6    the act," and this connection must "go[] 'beyond a generalized duty to enforce state law or

7    general supervisory power over the persons responsible for enforcing the challenged

8    provision[s].'" *Mecinas v. Hobbs*, 30 F.4th 890, 903–904 (9th Cir. 2022). This connection must

9    be "fairly direct." *L.A. Cnty. Bar Ass'n v. Eu*, 979 F.2d 697, 704 (9th Cir. 1992). Here, neither

10   the members of the Council nor the Attorney General have the requisite connection with

11   *enforcement* of the challenged rules—and the Eleventh Amendment analysis ends there.

12        **1.    The Council promulgates the Energy Codes, but it does not enforce them**

13        The Council is a quasi-legislative agency that establishes the minimum statewide

14   building, residential, mechanical, fire, plumbing, and energy code requirements. Plaintiffs do not

15   dispute that the Council has no enforcement authority, including no ability to approve or deny

16   any building code applications. Dkt. # 43 at p. 1 ¶ 3; Dkt. # 52 at pp. 10–12. Instead, local code

17   officials are vested by statute with the authority to enforce the codes. *See* RCW 19.27.050. This

18   ends the analysis of whether the *Ex parte Young* exception, which requires a direct connection

19   to enforcement, applies to the Council.

20        Plaintiffs concede the Council lacks enforcement authority, Dkt. # 52 at p. 11, but they

21   contend that *Mecinas* silently overturned decades of case law to create a new standard for *Ex*

22   *parte Young* that no longer requires the sued official to enforce the challenged law, but rather

23   turns on whether the actual enforcers have sufficient "discretion." But *Mecinas* does not alter the

24   *Ex parte Young* test, which continues to require that the sued official have a fairly direct

25   connection to *enforcement*, rather than mere passage, of the challenged rule or law. *Mecinas*,

26   30 F.4th at 903–904.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    Plaintiffs misunderstand the facts of *Mecinas*, in which the sued official—the Arizona

2  Secretary of State—did not promulgate the challenged statute, but rather enforced it. In *Mecinas*,

3  the Arizona legislature enacted the Ballot Order Statute, mandating a specific order in which

4  candidates must appear on the ballot in Arizona elections. 30 F.4th at 894. Plaintiffs filed suit

5  against the Arizona Secretary of State, alleging the Ballot Order Statute was unconstitutional.

6  *Id.* The Court held that the Secretary was a proper defendant under *Ex parte Young* because she

7  "has clear duties to oversee ballot production, including, as already discussed, through the

8  promulgation of the manual, which the county officials have no discretion to disregard[.]"

9  *Mecinas*, 30 F. 4th at 903. In other words, the Arizona Legislature passed the challenged law,

10  and the Secretary enforced that law by publishing a manual requiring counties to "order

11  candidates' names on ballots in accordance with the Statute[.]" *Id.* at 900. The Secretary had no

12  more discretion in this candidate ordering than the county officials who served the ministerial

13  role of printing the ballots. And crucially, the plaintiffs in *Mecinas* challenged the Ballot Order

14  Statute itself, not the Secretary's manual that enforced it. Because neither the Secretary nor the

15  county officials had discretion, discretion cannot have been the lynchpin of the analysis in

16  *Mecinas*.

17    By contrast, here, the Council has no enforcement role. The Council promulgated and

18  passed the Energy Codes, but it is city and county officials who have sole responsibility to

19  enforce the codes by interpreting and applying them to specific building permit applications that

20  they grant or deny depending on the circumstances. Plaintiffs argue that *Mecinas* stands for the

21  proposition that when the entity tasked with enforcing the law lacks discretion in its enforcement,

22  then the entity that passes the law will lose its Eleventh Amendment immunity under *Ex parte*

23  *Young*. Dkt. # 52 at pp. 14–16. This reads *Mecinas* far too broadly. *Mecinas* does not overrule

24  past Eleventh Amendment caselaw. *See* Dkt. # 52 at p. 15 (arguing cases predating *Mecinas* are

25  inapposite). Instead, in *Mecinas*, the Secretary had no discretion to reorder the names of

26

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    candidates on the ballots, but rather was required to follow the Ballot Order Statute that set forth

2    the required order.

3          Further, when the Legislature passes a statute, or an agency promulgates a rule, the intent

4    is that the regulated individual or entity will follow that rule or law. For example, the Washington

5    Legislature has mandated that individuals have a valid driver's license while driving a motor

6    vehicle. RCW 46.20.001. There is little "discretion" in applying this blanket requirement, but

7    this would not make the Legislature a proper defendant in a case challenging the license

8    requirement in federal court under *Ex parte Young.* Applying *Mecinas* in the manner urged by

9    Plaintiffs would result in individuals inappropriately suing rulemakers rather than those whose

10   acts give rise to challenged injuries. *Prakel v. Ind.*, 100 F. Supp. 3d 661, 674 (S.D. Ind. 2015).

11         Moreover, the role of city and county officials in enforcing the challenged rules is real.

12   The Council's role in promulgating the building codes does not, as Plaintiffs argue (Dkt. # 52 at

13   pp. 10–14), make it functionally responsible for local building officials' decisions in examining

14   complex codes and applying them to unique and individual building permits. Unlike the blanket

15   ban on natural gas in *CRA*, Washington's codes permit multiple pathways that allow the usage

16   of gas appliances, requiring local officials to interpret those codes to determine whether an

17   application has complied with one of those pathways. The Council does not oversee this permit

18   process, review building permits, hear appeals of building permits, or have recourse if a county

19   applies the codes in a manner they disagree with. For example, in Spokane County, modifications

20   may be made to the building code "[w]henever there are practical difficulties involved in

21   carrying out the provisions of [the building code] or other pertinent laws and ordinances."

22   Spokane County Code § 3.01.040. Further, "[i]n case of conflict the [Spokane County building]

23   director shall make a determination as to which code shall govern." Spokane County Code §

24   3.01.031. Jordan Neal, Spokane's Building Official, does not disclaim this discretion, but only

25   declares that Spokane County has no power to amend the codes promulgated by the Council.

26   Dkt. #47-7 at p. 4 ¶¶ 4–7. Of course, the same is true of any county sheriff enforcing a law

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

enacted by the Legislature, but that does not mean the Legislature is a proper *Ex parte Young* defendant and the county sheriff is not. *Cf. Buffin v. Cal.*, 23 F.4th 951, 962–63 (9th Cir. 2022) (county sheriff acted as a state official in implementing a discretionless bail schedule).

Finally, *Mulhern Gas Co., Inc. v. Rodriguez*, No. 1:23-cv-1267-GTS-CFH, 2024 WL 3992588 (N.D.N.Y. Aug. 29, 2024), is instructive. Once again, the case is about who has enforcement authority—a key point Plaintiffs simply ignore. Plaintiffs argue that unlike the Council, the New York Code Council had no discretion to deviate from the legislature's directive and thus had a "menial role," making a suit against them in essence a suit against the state. Dkt. # 52 at pp. 16–17. Relying on footnote 5 of the decision, Plaintiffs suggest that the *Mulhern* court "even acknowledged that had the council members been given greater discretion in the content of the code amendments promulgated . . . they may have been proper defendants." *Id.* (citing *Mulhern*, 2024 WL 3992588, at *6 n.5). But the cited footnote distinguished another case where a commissioner was found to be a proper defendant under *Ex parte Young* because he "himself had some degree of enforcement power regarding the granting of the relevant licenses in addition to mere rulemaking authority[,]" whereas "the Code Council does not have any power to enforce the relevant amendments to the Code[]." *Mulhern*, 2024 WL 3992588, at *6 n.5 (citing *Nassau & Suffolk Cnty. Taxi Owners Ass'n v. N.Y.*, 336 F. Supp. 3d 50 (E.D.N.Y. 2018)). By contrast, there was no dispute that the Eleventh Amendment did not bar claims against the Secretary of State in *Mulhern*, because the statute "affirmatively place[s] enforcement responsibility on the Secretary and local/county government, not the Code Council." *Id.* at *1, 4. Plaintiffs' attempt to analogize the Council here to the Secretary in *Mulhern* is thus entirely inapposite. Here, the statute affirmatively places enforcement responsibility on local officials, not the Council, and therefore the Council is not a proper defendant under *Ex parte Young*.

### 2.     The Attorney General has no role in enforcing the Energy Codes

Nor does the Attorney General have a "fairly direct," "relevant role that goes beyond a generalized duty to enforce state law or general supervisory power over the persons responsible

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    for enforcing the challenged provision[s]." *L.A. Cnty. Bar Ass'n*, 979 F.2d at 704. The Supreme

2    Court explained why such suits against attorney generals as general law enforcement officers are

3    improper in *Ex parte Young*:

> If, because they were law officers of the state, a case could be made for the
> purpose of testing the constitutionality of the statute, by an injunction suit brought
> against them, then the constitutionality of every act passed by the legislature
> could be tested by a suit against the governor and **the attorney general**, based
> upon the theory that the former, as the executive of the state, was, in a general
> sense, charged with the execution of all its laws, and the latter, **as attorney**
> **general, might represent the state in litigation involving the enforcement of**
> **its statutes**. That would be a very convenient way for obtaining a speedy judicial
> determination of questions of constitutional law which may be raised by
> individuals, but it is a mode which cannot be applied to the states of the Union
> consistently with the fundamental principle that they cannot, without their assent,
> be brought into any court at the suit of private persons.

*Ex parte Young*, 209 U.S. at 157 (emphasis added).

Here, the Attorney General has no direct connection to the enforcement of the Codes.

That enforcement is expressly committed to local officials by statute and is not supervised by

the State or any State official or entity. Dkt. # 48 at p. 9, 11, 13; RCW 19.27.050. Plaintiffs'

authorities do not state otherwise. Dkt. # 52 at p. 19. The statutes they cite, RCW 43.10.030(1)

and RCW 43.10.110, provide only that the Attorney General shall represent the State in court

and perform other duties as may be required by law. This is no more than a generalized duty to

represent the state as described in *Ex parte Young*. Nor does *State v. City of Sunnyside*, 3 Wn.3d

279, 550 P.3d 31 (2024), provide a "fairly direct" connection to enforcing the State Building

Codes. That case expanded on the Attorney General's *discretionary* authority to bring civil suits

on matters of public concern. *Id.* at 41. This generalized authority does not confer a direct

connection with the enforcement of building codes or other state laws where the Attorney

General has no statutory enforcement authority, such that litigants may hale the State into federal

court by naming the Attorney General when the case involves a matter of public concern. Such

generalized powers are not "sufficient to establish the connection with enforcement required by

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1    *Ex parte Young.*" *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (California Attorney

2    General's general supervisory power not sufficient under *Ex parte Young* absent "a real

3    likelihood" those powers will be used against plaintiffs' interests) (*citing S. Pac. Transp. Co. v.

4    Brown*, 651 F.2d 613, 614 (9th Cir.1980) (as amended) (Oregon Attorney General's non-binding

5    power to direct and advise was not sufficiently connected with enforcement). The Attorney

6    General is not a permissible defendant under *Ex parte Young*.

7    **B.      Plaintiffs Lack Article III Standing**

8           The same reasons why neither the Council nor the Attorney General are proper

9    defendants under *Ex parte Young* also underpin why Plaintiffs lack standing. "[W]hether there

10   is a requisite connection between the sued official and the challenged law implicates an analysis

11   that is closely related—indeed overlapping—with the traceability and redressability inquiry."

12   *Mecinas*, 30 F.4th at 903. Neither the Council nor the Attorney General are enforcing the Energy

13   Codes against Plaintiffs, nor do they have statutory authority to do so. *See e.g.,* RCW 19.27.050

14   (building codes enforced by counties and cities). Where there is no threatened enforcement by

15   the defendants or any indication of any intent to enforce specific law, "the 'case or controversy'

16   requirement of Article III is not satisfied." *Long*, 961 F.2d at 152.

17          Plaintiffs lack Article III standing because they have not articulated a concrete injury,

18   *see* Dkt. # 48 at pp. 15–19, and, where neither the Council nor the AG enforce the Energy Code,

19   Plaintiffs cannot show their alleged harms are traceable to the named defendants or redressable

20   in this lawsuit. Notably, in *CRA*, the plaintiff sued the enforcer of the challenged regulation: the

21   City of Berkeley, which was responsible for both passing regulations and enforcing them through

22   its permit process. *See Cal. Rest. Ass'n v. City of Berkeley*, 547 F. Supp. 3d 878, 882-83 (N.D.

23   Ca. July 6, 2021). To that end, the plaintiff requested an injunction prohibiting the City from

24   enforcing the regulation. *Id.* at 888. Because the plaintiff sought to "enjoin Berkeley from

25   *enforcing* the Ordinance[,]" the court had jurisdiction under Article III. *Id.* (emphasis added).

26   Indeed, federal courts acknowledge that "a person subject to a scheme of federal regulation may

REPLY IN SUPPORT OF DEFENDANTS'                         8                ATTORNEY GENERAL OF WASHINGTON
MOTION TO DISMISS                                                              Complex Litigation Division
NO. 2:24-cv-00677-KKE                                                              7141 Cleanwater Dr SW
                                                                                        P.O. Box 40111
                                                                                  Olympia, WA 98504-0111
                                                                                       (360) 709-6470

1    sue in federal court to enjoin *application to him* of conflicting state regulations[,]" *Franchise*

2    *Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal*, 463 U.S. 1, 20 n.20 (1983), and

3    thus, where a plaintiff seeks to "enjoin enforcement of an order it claimed to be preempted[,]"

4    federal jurisdiction is proper. *S. Pac. Transp. Co. v. Pub. Utilities Comm'n of State of Cal.*, 716

5    F.2d 1285, 1288 (9th Cir. 1983); *see also Pac. Merchant Shipping Ass'n v. Aubry*, 918 F.2d

6    1409, 1414-15 (9th Cir. 1990)

7            Here, however, Plaintiffs have sued the rulemakers, not the enforcers. To excuse this,

8    Plaintiffs again rely upon *Mecinas*, but mischaracterize that case as one in which "state-level

9    officials[] promulgated binding directives that local officials must carry out and 'have no

10   discretion to disregard.'" Dkt. # 52 at p. 23. Again, the Secretary of State did not promulgate the

11   Ballot Order Statute that "establishes the order in which candidates appear on the ballot"—the

12   Arizona Legislature did. *Mecinas*, 30 F.4th at 894–95. The Secretary enforced the Ballot Order

13   Statute via a manual requiring counties to "order candidates' names on ballots in accordance

14   with the Statute[.]" *Id*. at 900. But the plaintiffs did not challenge the manual, they challenged

15   the Statute. Here, the Council promulgated the challenged Codes, and neither the Council

16   members nor the Attorney General enforce them; local code officials do. Thus, any injury is

17   traceable to those local code officials who are not parties to this suit.

18           For a similar reason, Plaintiffs' requested remedies would not redress their alleged harms.

19   Enforcement of the codes is done by local code officials not before this Court. Plaintiffs cite

20   *Prakel v. Indiana*, 100 F. Supp. 3d 661, 674 (S.D. Ind. 2015), but that case itself states that a

21   plaintiff should sue the enforcer, "not the state officials and bodies who promulgated the rule,

22   because the act of promulgation was not the source of the injury." Dkt. # 52 at p. 24. The same

23   is true here. Along similar lines, *Marks v. U.S. Cong.*, 285 Fed. App'x 762 (D.C. Cir. 2008) (per

24   curiam), stands merely for the proposition that a person aggrieved must not sue Congress who

25   made the rule, but must sue in the context of an enforcement action; the fact that immigration

26   officers have discretion was not part of the analysis. As described in *Quinones v. City of*

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

*Evanston, Ill.*, 58 F.3d 275 (7th Cir. 1995)—the case *Marks* relies upon but which Plaintiffs dismiss as merely a situation where a State "was not necessary party," Dkt. # 52 at p. 16—the Court clarifies: "A person aggrieved by the application of a legal rule does not sue the rule maker—Congress, the President, the United States, a state, a state's legislature, the judge who announced the principle of common law. He sues the person whose acts hurt him." *Id.* at 277. Thus, the proper party in *Quinones* was the city that managed Quinones's pension, not the State that passed the law (and which had Eleventh Amendment immunity). *Id.*

Nor do either *Allen v. Wright*, 468 U.S. 737 (1984), *abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 (2014) or *Haaland v. Brackeen*, 599 U.S. 255 (2023), turn on the discretion of third parties. In *Allen*, the Supreme Court noted that there is "no standing to complain simply that [the] Government is violating the law." *Allen*, 468 U.S. at 755. But the case didn't turn on the discretion of any parties. *Haaland v. Brackeen* did not discuss or contemplate discretion in placement decisions, but rather analyzed whether the Indian Child Welfare Act (ICWA) was unconstitutional and whether the parties had standing when the relief would run against federal defendants and not state actors that implement ICWA. *Id.* at 292. Even if states "maintain significant latitude" in the area of "domestic relations," Dkt. # 52 at p. 24, they are still required to apply ICWA's placement preferences. *Haaland*, 599 U.S. at 286. The plaintiffs in *Haaland* sought an injunction preventing the federal parties from enforcing ICWA and a declaratory judgement that the provisions were unconstitutional. *Id.* at 292. The Court held that the state officials who implement ICWA would not be bound by an injunction against the federal parties. As to a declaration of unconstitutionally, the Court concluded such a declaration "would not be settled between [the] petitioners and the officials who matter—which would leave the declaratory judgment powerless to remedy the alleged harm." *Id.* at 293. The same is true here.

Finally, the relief Plaintiffs seek is barred by Tenth Amendment anti-commandeering principles. As Plaintiffs concede, "Congress may not directly compel a state to legislate in a

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

certain way" "or dictate what statutes a state legislature may or may not enact." Dkt. # 52 at p. 25. Plaintiffs ask this Court to do just that: to compel the Council to rewrite its rules by enjoining it from "maintaining or enforcing the Energy Code or substantially similar" codes. Dkt. # 47 at p. 31. Indeed, Plaintiffs state in their response brief that their requested injunction "would therefore require them to revert to the previous iteration of building regulations," Dkt. # 52 at p. 25—which would compel the State to adopt a specific Code. Administrative rules promulgated by agencies such as the Council are part of the laws of the State of Washington and are an exercise of the State's sovereign legislative power. *Matter of Cashaw*, 866 P.2d 8, 14 n. 6 (Wash. 1994) ("Because administrative [regulations] are adopted through delegated legislative powers to make law, they are given the force and effect of laws."). This Court cannot, consistent with the Tenth Amendment, force Washington State to have a different set of rules published in the Washington Administrative Code.

Plaintiffs are correct that the Court may enjoin "enforcement of a preempted regulation by a state official" (*see* Dkt. # 52 at p. 26) but as Plaintiffs concede, the Council does not enforce the challenged codes. *See supra*; *see also* Dkt. # 52 at p. 11 ("And cities and counties are then required to enforce [the Energy Code.]"). Plaintiffs seek an injunction requiring the Council to rewrite the codes, not to cease enforcing them. This is barred by the Tenth Amendment and by fundamental principles of state sovereign immunity and Article III jurisdiction.

### III.   CONCLUSION

This Court should dismiss the complaint because Plaintiffs have sued the wrong parties in the wrong court. The Council members and the Attorney General do not enforce the codes and have Eleventh Amendment immunity, and for similar reasons, Plaintiffs lack Article III standing.

DATED this 11th day of October 2024.

REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS NO. 2:24-cv-00677-KKE

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

ROBERT W. FERGUSON
Attorney General


*/s/ R. July Simpson*
R. JULY SIMPSON, WSBA #45869
WILLIAM MCGINTY, WSBA #41868
SARAH E. SMITH-LEVY, WSBA #55770
DIERK MEIERBACHTOL, WSBA #31010
Assistant Attorneys General
EMMA GRUNBERG, WSBA #54659
Deputy Solicitor General
July.Simpson@atg.wa.gov
William.McGinty@atg.wa.gov
Sarah.E.Smith-Levy@atg.wa.gov
Dierk.Meierbachtol@atg.wa.gov
Emma.Grunberg@atg.wa.gov
*Attorneys for Defendants*

I certify that this memorandum contains 3,885
words, in compliance with the Local Civil Rules.

REPLY IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS
NO. 2:24-cv-00677-KKE

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
7141 Cleanwater Dr SW
P.O. Box 40111
Olympia. WA 98504-0111
(360) 709-6470