1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JAMON RIVERA, et al., | CASE NO. C24-0677-KKE |
| Plaintiff(s), | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |
| v. | |
| KJELL ANDERSON, et al., | |
| Defendant(s). | |

In this lawsuit, Plaintiffs challenge the Washington State Building Code Councilmembers' adoption of the Washington State Energy Code, which sets forth minimum performance standards and requirements for construction and construction materials. Dkt. No. 47. Plaintiffs are a group of individuals, businesses, trade associations, and utility companies who prefer to use, install, or support natural gas appliances in new residential and commercial construction, and who argue that the Energy Code improperly restricts the use of such appliances. *Id*. ¶¶ 14–33. According to Plaintiffs' complaint, the Energy Code is preempted by the federal Energy Policy and Conservation Act, and should therefore be declared unenforceable. *Id*. ¶ 1.

Defendants filed a motion to dismiss, arguing that, as the individual Building Code Councilmembers and the Attorney General of Washington, the Eleventh Amendment to the United States Constitution protects them from suit in federal court. Dkt. No. 48. Because the Court agrees that Defendants are immune from suit here, the Court will grant Defendants' motion.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

## I.    BACKGROUND

After voluntarily dismissing a similar lawsuit filed in the United States District Court for the Eastern District of Washington in August 2023, Plaintiffs filed this action in May 2024 to request that the Court declare the Energy Code to be preempted by the Energy Policy and Conservation Act and to therefore enjoin its enforcement.  Dkt. No. 1 ¶ 124.

According to Plaintiffs' operative complaint, the Energy Code improperly encourages the use of electric appliances over gas appliances, either outright prohibiting the use of certain gas appliances or imposing energy efficiency standards that gas appliances cannot satisfy.  *See, e.g.*, Dkt. No. 47 ¶¶ 100–01, 103–04, 106–09.  Plaintiffs contend that by imposing efficiency standards that exceed federal requirements, and because the Energy Code provisions at issue would not be eligible for an exemption from preemption, the Energy Code is preempted by the Energy Policy and Conservation Act and cannot be enforced.  *Id*. ¶¶ 81–115, 119–25.  Plaintiffs further allege that the preempted portions of the Energy Code are so intertwined throughout the Energy Code that they cannot be severed.  *Id*. ¶¶ 116–17, 126.

Defendants filed a motion to dismiss, and the Court heard oral argument on that motion in December 2024.[1]  Dkt. Nos. 48, 62.  For the following reasons, the Court grants the motion.

## II.    ANALYSIS

### A.    Legal Standards

Defendants' motion requests dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction under the Eleventh Amendment.  Dkt. No. 48.  "The Eleventh Amendment erects a general bar against federal lawsuits brought against a state." *Porter v. Jones*,

---

[1] The Court also directed the parties to address the impact of the passage of Initiative 2066 on the issues presented in this lawsuit.  *See* Dkt. Nos. 55, 58–61.  The parties agree that because the effect of the initiative is as yet undetermined, this lawsuit is not yet moot.  *See* Dkt. Nos. 58, 59.

319 F.3d 483, 491 (9th Cir. 2003). "Sovereign immunity is quasi-jurisdictional in nature." *In re Bliemeister*, 296 F.3d 858, 861 (9th Cir. 2002). A Rule 12(b)(1) motion is the proper context in which to invoke sovereign immunity. *See Pistor v. Garcia*, 791 F.3d 1104, 1111 (9th Cir. 2015).

A Rule 12(b)(1) motion may raise a facial or factual challenge to the existence of jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Here, Defendants allege a factual challenge because they challenge the truth of certain allegations in the operative complaint, namely the suggestion that individual Councilmembers and the Attorney General enforce the Energy Code. *See* Dkt. No. 48 at 6 (referencing Dkt. No. 47 ¶¶ 37, 38). In resolving a factual attack, a court may review evidence beyond the complaint and need not accept Plaintiffs' allegations as true. *See Pistor*, 791 F.3d at 1111. The party asserting subject matter jurisdiction has the burden of proving that immunity does not bar the suit. *Id.*

**B.    The *Ex parte Young* Exception Does Not Apply to Any Defendant.**

In this case, Defendants contend that Plaintiffs sued people immune from suit under the Eleventh Amendment. Although Plaintiffs sued individual Defendants in their official capacity, Plaintiffs do not dispute Defendants' assertion that Washington State is the real party in interest (Dkt. No. 48 at 7–8), such that the Eleventh Amendment generally bars this suit. *See Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999) (holding that the Eleventh Amendment bars suits against a state's agency, and an action against an agency official in their official capacity is considered a suit against the state itself).

Plaintiffs do contend, however, that their suit falls into "an exception for actions for prospective declaratory or injunctive relief against state officers in their official capacities for their alleged violations of federal law so long as the state officer has some connection with enforcement

of the act[,]" known as the *Ex parte Young* exception.[2]  Dkt. No. 52 at 10 (quoting *Mecinas v. Hobbs*, 30 F.4th 890, 903 (9th Cir. 2022)).  "In *Ex parte Young*, the [Supreme] Court held that the Eleventh Amendment does not bar an action seeking prospective relief against a state official for a violation of federal law."  *R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1220 (9th Cir. 2023) (citing 209 U.S. 123, 159–60 (1908)).  "Because a state officer who violates federal law acts outside the scope of her authority, she is 'not the State for sovereign-immunity purposes' and is subject to a federal court's injunctive power."  *Id.* (quoting *Va. Off. For Prot. & Advoc. v. Stewart*, 563 U.S. 247, 254 (2011)).  Application of the exception requires only a "modest" connection: "merely that the implicated state official have a relevant role that goes beyond 'a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision.'"  *Mecinas*, 30 F.4th at 903–04 (quoting *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 919 (9th Cir. 2004)).

Plaintiffs readily acknowledge that the Revised Code of Washington tasks counties and cities with enforcing the Energy Code, rather than the Councilmembers.  *See* WASH. REV. CODE § 19.27.050 ("The state building code required by this chapter shall be enforced by the counties and cities.").  Plaintiffs nonetheless contend that because the counties and cities lack discretion to modify the Energy Code as promulgated by the Council, the mandatory nature of the Energy Code suggests that the Council retains a connection to the enforcement of the Energy Code.  Dkt. No. 52 at 10–12.  Plaintiffs argue that the Councilmembers' role in promulgating the Code and the Attorney General's role in overseeing enforcement of the Code "easily" satisfy the connection

---

[2] There are two other exceptions to Eleventh Amendment immunity, where Congress abrogates a state's immunity under its lawmaking powers or where a state waives its immunity by consenting to suit.  *See Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000); *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999).  Plaintiffs do not contend that either of these exceptions apply, and the Court thus focuses, along with the parties' briefing, on whether the *Ex parte Young* exception applies.

requirement, citing *Mecinas*. *Id*. at 12.    The Court disagrees, finding *Mecinas* readily distinguishable from this case.

In *Mecinas*, the plaintiffs brought suit to challenge an Arizona statute requiring that for general elections in Arizona, the candidates of the political party that received the most votes in the most recent gubernatorial election in that county appear first in all races and on all ballots in that county.  30 F.4th at 894–95.  Plaintiffs' suit, which was filed against Arizona's secretary of state, argued that the effect of this statute was to provide an unfair advantage of primacy based on a candidate's political affiliation, rather than something neutral (like alphabetical order or drawing from a hat). *Id*. at 894.  The secretary of state argued that she was entitled to Eleventh Amendment immunity, and that the *Ex parte Young* exception does not apply because she is merely Arizona's chief election officer, but not the person responsible for printing the ballots. *Id*. at 903.

The Ninth Circuit found that the secretary understated her connection to the ordering of candidates on the ballot.  It is true that she did not print the ballots (county supervisors did), but in doing so they were bound to follow a manual promulgated by the secretary, which instructed them to follow the challenged ballot order statute, among other requirements.  30 F.4th at 899–900, 903.  The *Mecinas* court explained that the secretary of state's role in promulgating the manual that led to the printing of the ballots in accordance with the challenged statute "far exceeded" the requisite level of connection to apply the *Ex parte Young* exception. *Id*. at 904.

Plaintiffs attempt to analogize the Councilmembers to the secretary of state in *Mecinas*.  They contend that just as the Ninth Circuit found that the *Mecinas* secretary of state promulgated a mandatory ballot manual to county supervisors, this Court should likewise invoke *Ex parte Young* based on the Councilmembers' promulgation of a mandatory Code on county and city officials.  Dkt. No. 52 at 12 ("The Ninth Circuit decision in *Mecinas* dictates [a finding that

Defendants are not immune under *Ex parte Young*], as it reached the same conclusion on analogous facts.").

The Court finds that *Mecinas* does not aid Plaintiffs' case. Rather, Plaintiffs' reading of *Mecinas* overlooks that it was the Arizona legislature that enacted the ballot order statute with the intent that it would be followed, and the secretary of state enforced it by requiring in the ballot manual that county supervisors comply with it. Thus, in *Mecinas*, the lawsuit was brought not against the promulgator (the legislature) but against the person bound to enforce what the legislature had promulgated.

But here, the suit is brought against the promulgators, who, notably, lack supervisory power over the city and county officials who are responsible for enforcing the Energy Code. The Councilmembers promulgated and approved the operative version of the Energy Code with the intent that city and county officials would be bound by it when they review specific building code applications. *See* Dkt. No. 43 ¶ 3. Under Washington's Constitution, cities and counties are treated as separate political subdivisions of the state, rather than as state agencies. *See* WASH. CONST. art. XI, §§ 4, 10; *see also Everett v. Perez*, 78 F. Supp. 2d 1134, 1138 (E.D. Wash. 1999) (explaining that the City of Wenatchee is not a division of the Washington state government); *Mochizuki v. King County*, 548 P.2d 578, 580 (Wash. Ct. App. 1976) ("Counties are considered separate political subdivisions with particular powers conferred by constitution and statute."). The city and county officials who enforce the Energy Code as applied to specific permit applications are therefore the proper analogue to the secretary of state in *Mecinas*, and they are not Defendants in this case. Therefore, the Court disagrees with Plaintiffs that "this case presents a direct analogue to *Mecinas* in all relevant respects." Dkt. No. 52 at 14.

That distinction—that the Council authors, amends, and promulgates the Code and others enforce it—distinguishes this case from not only *Mecinas* but the other cases relied upon by

Plaintiffs, and makes it more like the cases cited by Defendants, where courts have found that the *Ex parte Young* exception does not apply. *See, e.g.*, *Mi Familia Vota v. Abbott*, 977 F.3d 461, 467–68 (5th Cir. 2020) (finding that although the Texas governor has the authority to issue executive orders, Texas law gives the governor no power to enforce executive orders; and "[a]lthough a court can enjoin state officials from enforcing statutes, such an injunction must be directed to those who have the authority to enforce those statutes"); *NASD Dispute Resolution, Inc. v. Judicial Council of Calif.*, 232 F. Supp. 2d 1055, 1065 (N.D. Cal. 2002) (explaining that "the typical *Ex parte Young* case involves a suit against the agents who might enforce the law in those potentially unconstitutional circumstances rather than the policymakers responsible for its drafting; the policymaking stage simply does not involve the requisite unconstitutional act that allows an *Ex parte Young* suit to proceed"), *vacated on other grounds*, 488 F.3d 1065 (9th Cir. 2007); *Mulhern Gas Co., Inc. v. Rodriguez*, 1:23-CV-1267 (GTS/CFH), 2024 WL 3992588, at *6 (N.D.N.Y. Aug. 29, 2024) (finding that although promulgating a building code "is a step in the path of allowing eventual enforcement" of the code, "the act of codification itself does not enforce the terms of the statute against any individual and the members of the Code Council do not have the authority to enforce the Code it enacts"). Accordingly, the Court finds that Plaintiffs have not met their burden to show that the Eleventh Amendment does not bar this suit against the individual Councilmembers.

Plaintiffs' suit fares no better against the Attorney General. Plaintiffs again concede that the Attorney General has no specific enforcement authority with respect to the Energy Code, but argue the Attorney General's authority to file suit if cities or counties failed to follow the Energy Code in approving permits satisfies the "modest" connection requirement for *Ex parte Young* to apply. Dkt. No. 52 at 19. *Ex parte Young* itself, however, explains why precisely this type of generalized authority is insufficient to support a waiver of sovereign immunity:

> If, because they were law officers of the state, a case could be made for the purpose of testing the constitutionality of the statute, by an injunction suit brought against them, then the constitutionality of every act passed by the legislature could be tested by a suit against the governor and the attorney general, based upon the theory that the former, as the executive of the state, was, in a general sense, charged with the execution of all its laws, and the latter, as attorney general, might represent the state in litigation involving the enforcement of its statutes. That would be a very convenient way for obtaining a speedy judicial determination of questions of constitutional law which may be raised by individuals, but it is a mode which cannot be applied to the states of the Union consistently with the fundamental principle that they cannot, without their assent, be brought into any court at the suit of private persons.

209 U.S. at 157 (quoting *Fitts v. McGhee*, 172 U.S. 516, 530 (1899)).

Plaintiffs' other authority likewise fails to show that the Attorney General is not immune here. Plaintiffs cite *State v. City of Sunnyside*, which found that the Attorney General has the authority to bring an action challenging the constitutionality of a rental housing program, but is of little help here because it does not involve the Eleventh Amendment or the *Ex parte Young* exception. *See* 550 P.3d 31, 41–45 (Wash. 2024). It does not find or suggest that the Attorney General's power to bring an action involving matters of public concern over which the State has an interest is a sufficient enforcement connection to waive sovereign immunity. *Id*. Instead, it describes the Attorney General as having a "'broad and inclusive' authority to act in cases 'which may directly or indirectly impact upon state functions or administrative procedures and operations.'" *Id*. at 42 (quoting *Young Americans for Freedom v. Gorton*, 588 P.2d 195, 197 (1978)). This type of generalized authority is insufficient to invoke the *Ex parte Young* exception. *See, e.g.*, *Long v. Van de Kamp*, 961 F.2d 151, 152 (9th Cir. 1992) (finding California's attorney general's general supervisory power insufficient under *Ex parte Young* without "a real likelihood" those powers will be used against plaintiffs' interests). Plaintiffs have not shown that the Attorney General is likely to invoke his authority against their interests, and therefore has failed to show

that *Ex parte Young* would apply to him.  Accordingly, Plaintiffs have not met their burden to show that the Eleventh Amendment does not bar this suit against the Attorney General.

Because Plaintiffs have failed to show that any Defendant in this action is amenable to suit under the *Ex parte Young* exception, the Court will grant Defendants' motion to dismiss.[3]  Because "a suit dismissed on sovereign immunity grounds cannot be salvaged[,]" the Court will not grant Plaintiffs leave to amend.  *Daniel v. Nat'l Park Serv.*, 891 F.3d 762, 766 (9th Cir. 2018).

### III.    CONCLUSION

For these reasons, the Court GRANTS Defendants' motion to dismiss.  Dkt. No. 48. Plaintiffs' complaint is DISMISSED without prejudice, and the clerk is directed to administratively close this case.

Dated this 25th day of February, 2025.

Kymberly K. Evanson
United States District Judge

---

[3] As a result of this disposition, the Court need not address Defendants' alternative argument for dismissal based on Plaintiffs' lack of standing. Dkt. No. 48 at 15–23.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS - 9